IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RESURRECTION SCHOOL; CHRISTOPHER MIANECKI, individually and as next friend on behalf of his minor children C.M., Z.M., and N.M.; and STEPHANIE SMITH, individually and as next friend on behalf of her minor child F.S., Plaintiffs, <br><br> v. <br><br> ROBERT GORDON, in his official capacity as the Director of the Michigan Department of Health and Human Services; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan; LINDA S. VAIL, in her official capacity as the Health Officer of Ingham County; and CAROL A. SIEMON, in her official capacity as the Ingham County Prosecuting Attorney, Defendants. | **COMPLAINT** |

Plaintiffs Resurrection School, Christopher Mianecki, individually and as next friend on behalf of his minor children C.M., Z.M., and N.M., and Stephanie Smith, individually and as next friend on behalf of her minor child F.S. (collectively referred to as "Plaintiffs"), by and through undersigned counsel, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1.      Since the beginning of March, 2020, Michigan Governor Gretchen Whitmer has exercised control over almost all areas of life.  From March through the filing of this Complaint in October, the Governor has issued ***one hundred and ninety-two*** executive orders, citing the spread of COVID-19 as justification for this extraordinary exercise of authority.  The Michigan Supreme Court has since held the majority of the Governor's orders unconstitutional under the Michigan Constitution, noting the "sweeping scope" of her policies and that her actions "rest[ed] on an assertion

of power to reorder social life." *In re Certified Questions From U.S. Dist. Court, W. Dist. of Mich., S. Div.*, No. 161492, 2020 WL 5877599, at *15 (Mich. Oct. 2, 2020) (hereinafter "*In re Certified Questions*").

2.      The Michigan Supreme Court expressed hope that its "decision leaves open many avenues for the Governor and Legislature to work together to address this challenge and we hope that this will take place." *Id.* at *3, n.1; *see also House of Representatives & Senate v. Governor*, No. (Mich. Oct. 12, 2020) ("It should again be emphasized . . . that our decision today, like our decision in *In re Certified Questions*, leaves open many avenues for our Governor and Legislature to work together in a cooperative spirit and constitutional manner to respond to the COVID-19 pandemic."). Unfortunately, Governor Whitmer and the Defendants have ignored this direction and continue to mandate more unilateral and draconian orders that "reorder social life" and claim that an "emergency" requires their issuance. *See In re Certified Questions* at *15.

3.      Defendants have issued multiple orders over the past weeks, necessitating this lawsuit.

4.      Plaintiffs—like students and schools from across the state—have engaged in in-person classroom education since August of 2020, with extensive health and safety protocols in place. Pursuant to the Return to Learn legislation passed by both houses of the Michigan legislature and signed by the Governor, Plaintiffs operated under its approved plan for approximately two months, successfully deterring the spread of COVID-19 in their small, non-public school. Now, however, citing emergency authority, Defendants require elementary school children to wear masks throughout the entire school day, regardless of whether the children are safely distanced from one another and regardless of how the mandate affects the children's ability to learn or fully engage in religious education. Defendants' orders ***add up to seven additional hours of continuous masking for students as young as five years old.***

5.     This civil rights action is brought under the First, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the Michigan Constitution, challenging Defendants' orders mandating the wearing of masks, as set forth in this Complaint.

6.     Plaintiffs seek a declaration that the enactment and enforcement of the challenged orders violate their fundamental rights secured by the United States and Michigan Constitutions and an order enjoining the same.  Plaintiffs also seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable laws.

### JURISDICTION AND VENUE

7.     This action arises under the Constitution and laws of the United States.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

8.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by *Ex parte Young*, 209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

9.     Plaintiffs' claim for an award of their reasonable costs of litigation, including attorneys' fees and expenses, is authorized by 42 U.S.C. § 1988 and other applicable law.

10.    Plaintiffs' claim for nominal damages against Defendant Vail is authorized by 42 U.S.C. § 1983.

11.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and all Plaintiffs and Defendants reside or conduct business in this District.

### PARTIES

12.    Plaintiff Resurrection School is a small, Catholic, non-public school located in Lansing, Michigan.  Resurrection School is operated by Resurrection Parish Lansing, a non-profit

incorporated under Michigan law. Resurrection School serves elementary school-aged children, including students in grades kindergarten through fifth grade. Resurrection School is led by and is a ministry of the Church of the Resurrection, a Catholic church within the Diocese of Lansing, Michigan. Plaintiff Resurrection School follows and teaches according to the Catholic faith.

13. Plaintiffs C.M., Z.M., and N.M. are all students at Resurrection School. C.M. is a kindergartner, Z.M. is a third grader, and N.M. is a fifth grader. Plaintiff Christopher Mianecki is an adult citizen of the United States, a resident of Michigan, and the father of Plaintiffs C.M., Z.M., and N.M. Plaintiff Mianecki brings this action individually and on behalf of his minor children C.M., Z.M., and N.M., as their next friend.

14. Plaintiff F.S. is a fourth grader in the Diocese of Lansing. Plaintiff Stephanie Smith is an adult citizen of the United States, a resident of Michigan, and the mother of F.S. Plaintiff Smith brings this action individually and on behalf of her minor child F.S., as her next friend.

15. All Plaintiffs are located in Ingham County and would be protected by the injunctive relief sought herein.

16. Defendant Richard Gordon is the Director of the Michigan Department of Health and Human Services. In his official capacity, Defendant Gordon issued an emergency order on October 9, 2020 ("MDHHS Order"). A copy of the MDHHS Order, which serves as one of the bases for Plaintiffs' Complaint, is attached as Exhibit 1. Defendant Gordon is sued in his official capacity.

17. Defendant Dana Nessel is the Attorney General of Michigan. As the Attorney General, Defendant Nessel has the authority to enforce the challenged orders set forth in this Complaint. Defendant Nessel is sued in her official capacity.

18. Defendant Linda S. Vail is the Health Officer for the Ingham County Health Department. In her official capacity, Defendant Vail issued an emergency order on October 4, 2020

("County Order").  A copy of the County Order, which serves as one of the bases for Plaintiffs'

Complaint, is attached as Exhibit 2.  Defendant Vail is sued in her official capacity.

19.     Ingham County passed a resolution approving the County Order on October 13,

2020.  A copy of the resolution is attached as Exhibit 3.

20.     Defendant Carol A. Siemon is the Ingham County Prosecuting Attorney.  Defendant

Siemon is responsible for criminally prosecuting the challenged orders set forth in this Complaint.

Defendant Siemon is sued in her official capacity.

## STATEMENT OF FACTS

### Resurrection School

21.     Resurrection School is a Catholic school that has adopted a virtue curriculum and

disciplinary policies that honor the dignity of every student, and it provides an education based upon

the teachings of the Catholic faith.

22.     In accordance with the teachings of the Catholic faith, Resurrection School believes

that every human has dignity and is made in God's image and likeness.  Unfortunately, a mask shields

our humanity.  And because God created us in His image, we are masking that image.  Masks also

make us anti-social.  They interfere with relations.  As the Catholic faith teaches, we are relational

beings.  And our existence as relational beings points to the Holy Trinity.  A mask is disruptive to

this essential element of the Catholic faith, and it is disruptive to the teaching of young children for

these and other reasons.  Plaintiffs share these deeply held religious beliefs.

23.     Resurrection School seeks to instill confidence in its students and encourage social

interactions that replicate the life and teachings of Jesus Christ.

24.     For example, Resurrection School seeks to impart the virtue of mercy through

actions of forgiveness.  For example, when a student has wronged or hurt another student, a teacher

guides the student through the reconciliation process and facilitates a face to face apology with the

student who was harmed.  A mask interferes with this important human interaction—an interaction that is essential to the spiritual well-being of the students.

25.     Resurrection School sees moments of conflict, whether working on a difficult concept, struggling with reading or a complex math concept, or disagreement between students, as moments to evangelize.

26.     Resurrection School is devoted to helping all students, especially students who inspire others through persisting and learning with exceptionalities, such as learning disabilities, an extra twenty-first chromosome, or setbacks from a troubled childhood.

27.     Resurrection School is proud of instilling the love and wonder of a Catholic, classical curriculum and guiding its students in a multi-disciplinary approach that infuses the Catholic faith into every facet of the students' day.

28.     The students are the focus and reason for the existence of Resurrection School.  The faculty works for the betterment, education, and divinization of their students, as the ultimate goal of Catholic education is to prepare each child to become a Saint.

29.     Resurrection School partners with the students' parents, who are the first educators of their children according to the Catechism of the Catholic Church.  Accordingly, Resurrection School listens to parents in its school community, and it strives to give voice and the appropriate authority to them.

30.     The Resurrection School parent community, in large measure, deeply disagrees with and objects to Defendants' orders that require their children to cover their faces while engaged in the process of learning, even while socially distanced in the classroom.

31.     Plaintiffs seek to take responsible measures to ensure health and safety.  However, they also desire normalization, friendship, an enriching education, and a healthy spiritual life.

**Plaintiffs Mianecki and C.M., Z.M., and N.M., and Plaintiffs Smith and F.S.**

32.     Plaintiff C.M. is a kindergartner at Resurrection School.

33.     Plaintiff Z.M. is a third grader at Resurrection School.

34.     Plaintiff N.M. is a fifth grader at Resurrection School.

35.     Plaintiff F.S. is a fourth grader in the Diocese of Lansing.

36.     As part of their religious exercise, Plaintiffs Mianecki and Smith want their respective children, C.M., Z.M., N.M., and F.S., to receive a Catholic education.  As the persons who have the paramount right to direct the education of their children pursuant to the Catechism of the Catholic Church, including the religious education of her children, Plaintiffs Mianecki and Smith have chosen Catholic schools for their children.

37.     Plaintiff Smith has chosen to send her son to Catholic school where F.S. can receive the education Plaintiff Smith desires for her son.

38.     Plaintiff Mianecki has chosen Resurrection School as the place where C.M., Z.M., and N.M. can receive the Catholic education he sees as instrumental for his children's religious and educational formation.

39.     Plaintiff F.S. has suffered from breathing issues since he was an infant, in part due to severe allergies.

40.     Plaintiff F.S.'s parents, including Plaintiff Smith, have taken F.S. to receive medical care throughout his childhood.  Plaintiff F.S. is highly susceptible to respiratory infections that quickly turn into additional infections such as bronchitis.

41.     Plaintiff F.S.'s family moved into a home with radiant heat to help F.S. with his breathing and health issues.

42.     When the government began mandating the wearing of masks outside the home, Plaintiff Smith discussed with F.S.'s pediatrician whether F.S. qualified for a medical exemption.

His pediatrician determined, that while F.S. does suffer from breathing issues, allergies, and health complications, he did not satisfy the requirements to obtain a medical exemption.

43.     Plaintiff F.S. can only tolerate a mask for a short period of time.

44.     Upon wearing a mask for more than thirty minutes, Plaintiff F.S. has difficulty breathing.  Consequently, he constantly pulls at his mask, often removing it from his nose and mouth.

45.     Plaintiff F.S. cannot wear a mask beyond thirty minutes without being distracted by it.

46.     Plaintiff F.S.'s parents, including Plaintiff Smith, had to remove F.S. from the classroom due to the challenged orders because F.S. cannot tolerate wearing a mask.

47.     Wearing a mask in the classroom makes it impossible for Plaintiff F.S. to receive a religious education.

48.     Plaintiff F.S. wishes to return to the classroom with his classmates, and Plaintiff Smith wants F.S. to return.  However, the challenged orders mandating the wearing of masks make it impossible for F.S. to do so.

49.     Plaintiff F.S.'s parents, including Plaintiff Smith, paid tuition for the 2020-21 school year based upon the initial safety plan put in place by the Diocese of Lansing in accordance with the Return to Learn legislation.  Plaintiff Smith is currently paying for a religious education for her son that he cannot receive because he has to be educated at home where he is not required to wear a mask.  Also, Plaintiff Smith is unable to provide the religious education that attending a Catholic school provides.

50.     The challenged orders single out children who cannot tolerate masks, making them unable to participate in religious education.

- 8 -

51.     Plaintiff Mianecki moved his wife and family to Lansing, Michigan and specifically chose for his children, Plaintiffs C.M., Z.M., and N.M., to attend and receive their religious education and formation at Resurrection School.

52.     At the start of the school year in August 2020, Plaintiffs C.M., Z.M., and N.M. were beginning to engage in Catholic fellowship with their classmates and form relationships with other children based upon the teachings and example of Jesus Christ.  Mandating Plaintiff Mianecki's young children to wear facial coverings is hindering the formation of these bonds and prevents the body of Christ from freely associating.

53.     Kindergartner, Plaintiff C.M., is particularly shy and quiet around those she does not know well.  Wearing a facial covering impedes her ability to be heard, to socialize, to engage in religious fellowship, and it impedes her ability to acclimate to new surroundings and new people. Plaintiff C.M.'s teacher has voiced that Plaintiff C.M. is quiet in the classroom.

54.     Plaintiff C.M. experiences difficulty and concerning discomfort when wearing a facial covering.

55.     Plaintiff C.M. has large tonsils and a sensitive gag reflex which lowers her tolerance for wearing a facial covering for any extended period of time.

56.     Plaintiff C.M. does not possess the fine motor skills to handle a facial covering properly due to her age.  It is difficult for Plaintiff C.M., a kindergartner, to keep the facial covering clean or even from falling onto the floor.

57.     Plaintiff C.M.'s inability to properly handle a facial covering creates an increased likelihood that bacteria and viruses could present on the facial covering or on Plaintiff C.M.'s hands and skin.

58.     Plaintiff C.M. has difficulty with speech and has trouble pronouncing certain letters correctly.  Wearing a facial covering exacerbates her struggles with speech and impedes her teacher's

ability to see her mouth to determine if her mouth is in the proper position to say letters and sounds correctly.

59.     Plaintiff Z.M. also battles with speech problems.

60.     Plaintiff Z.M. has clinically recognized speech issues.  He has been monitored and aided by speech therapists for several years.

61.     Plaintiff Z.M.'s speech is difficult to understand, sometimes even for individuals who know him well.

62.     For Plaintiff Z.M., wearing a facial covering impedes his ability to be heard and to be understood by others in the classroom, including his teacher.

63.     Plaintiffs C.M., Z.M., and N.M. struggle with focus.  Facial coverings cause C.M., Z.M., and N.M. distraction, further causing them to touch their faces and their facial coverings frequently.

64.     Plaintiff Mianecki has observed Plaintiffs C.M., Z.M., and N.M. wearing facial coverings for short periods of time at Catholic Mass.

65.     When wearing facial coverings, Plaintiffs C.M., Z.M., and N.M struggle to engage in and celebrate the Mass.  Plaintiffs C.M., Z.M., and N.M. fiddle with their facial coverings, take them off and then put them back on improperly, and lose attention and focus on what is around them. Plaintiffs C.M., Z.M., and N.M. have more trouble than usual paying attention during Mass.  Indeed, the facial coverings make it practically impossible for them to do so.  The same is true in the classroom.  Wearing a mask diverts Plaintiffs C.M., Z.M., and N.M.'s attention away from the lesson taught in class.

66.     Plaintiffs C.M., Z.M., and N.M. suffer from seasonal allergies for which they take medication.  The medication, however, does not eliminate all of their symptoms.

67. Facial coverings negatively affect Plaintiffs C.M.'s, Z.M.'s, and N.M.'s ability to breathe effectively.

68. Plaintiff Mianecki has observed that after his children wear facial coverings, even on a very limited basis, the coverings have felt wet from saliva and allergy related sneezing or coughing.

69. The breadth and scope of the challenged orders are shocking. Indeed, the orders would make it a crime for F.S., C.M., Z.M., and N.M. to meet with a friend from a different household outside of school hours to play if they did not wear a mask and even if they were meeting in the privacy of their own homes.

70. The challenged orders similarly place burdens upon Plaintiff Smith's and Plaintiff Mianecki's ability to associate with others, whether for family gatherings, religious purposes, or other social reasons by limiting the size of these associations and by requiring the wearing of masks.

71. Catholic teaching supports the classroom being a special place for evangelization by providing a social atmosphere that is conducive to learning and personal growth.

72. Upon information and belief, no peer reviewed studies exist demonstrating the effectiveness of non-medical facial coverings for children.

73. There have been no peer reviewed studies concerning how sanitary it is for young children, given their motor skills development, to wear non-medical facial coverings.

74. There are known inter-personal, cognitive developmental, and pedagogical benefits to seeing a person's face and not having a student's face covered, especially while learning and communicating in a classroom setting.

75. Methods that strive to promote safety but have a deleterious effect on a child's social and emotional development do not promote the health and well-being of the whole child as Catholic social teaching strives to do.

76.     Defendants' orders mandating all students, even as young as kindergarten-age students, to uniformly wear masks communicates the message that COVID-19 continues to be a terrifying and deadly threat, even when sitting in a K-5th grade classroom while socially distanced. Plaintiffs oppose this message.  Moreover, science and data do not support this message or the mask mandate.

77.     For many individuals, including Plaintiffs, the excessive or unreasonable mandated wearing of a face mask has become a symbol of oppression and an attempt by the government to control the citizenry.  This view was recently expressed by the below political cartoon published in the Wall Street Journal:



78.     For many, including Plaintiffs, forcing them to wear a face mask is forcing them to convey a message with which they disagree even when socially distanced in private homes or non-public schools.  Wearing a mask conveys the message that the wearer has surrendered his or her freedom to the government, particularly in light of the facts of this current declared pandemic.  During this current political climate, a mask has become a symbol.  And because a mask has become a political symbol, the wearing of a mask is a form of symbolic speech.  Consequently, via the mask mandates, Defendants are compelling Plaintiffs to engage in a form of expression and to convey a message with which they disagree.

79.     The mask mandate presumes that all people are diseased and thus makes the wearer contribute to a false public statement that all people are in fact diseased.

80.     Plaintiffs also object to the mask mandate because it violates their privacy interests, including their right to bodily integrity and personal autonomy free from government interference.

81.     A mask is required for everyone, even though the vast majority of individuals required to wear one are healthy or are not in a group with a high risk of contracting COVID-19, such as kindergarten through fifth grade students.  And while science and data show that the vast majority of Americans are healthy, the mask mandate presumes that all citizens are diseased unless proven healthy.  The mask mandate forces every Michigander, including Plaintiffs, to become the government's patient without the citizen's consent.

82.     The mask mandate creates a false public impression that private citizens must rely on the government for their safety, thereby allowing Defendants to use the mandate as a tool for maintaining power and authority.

83.     Plaintiffs do not want to be compelled to articulate any messages by being forced to wear masks, particularly when the children are trying to learn in their classrooms.

**Defendants Criminalize Gatherings and Not Wearing Masks**

84.     From early March to October 2020, Governor Whitmer took unprecedented unilateral executive action by issuing more than 192 executive orders, the vast majority without the support of the legislature.

85.     On March 11, 2020, Governor Whitmer issued Executive Order 2020-04, which proclaimed a state of emergency under both the Emergency Management Act (EMA), Mich. Comp. Laws § 30.403, and the Emergency Powers of the Governor Act of 1945 (EPGA), Mich. Comp. Laws § 10.31.  The Executive Order identified the COVID-19 pandemic as the basis for the declaration of a state of emergency under both statutory schemes.

86.     On October 2, 2020, the Michigan Supreme Court answered two certified questions posed by this Court.  The Court clarified that the Governor no longer possessed authority under the

EMA and the EPGA to continue to issue "emergency" executive orders, and any order issued after April 30, 2020 was invalid. *In re Certified Questions From United States Dist. Court , W. Dist. of Michigan, S. Div.*, No. 161492, 2020 WL 5877599 (Mich. Oct. 2, 2020); *see also House of Representatives & Senate v. Governor*, No. (Mich. Oct. 12, 2020).

87.    In response to the Michigan Supreme Court's October 2, 2020 decision, Governor Whitmer publicly stated that she would re-issue her unlawful orders through other means, such as through the Michigan Department of Health and Human Services and local health departments, such as the Ingham County Health Department.

88.    Nonpublic Michigan schools, as well as many public schools, have been open in person since August 2020.  Since opening and to the date of this filing, circumstances have not substantiated any emergency action within the kindergarten through fifth grade student population.

89.    Despite this fact, the Governor issued Executive Order 2020-185 that would have gone into effect on October 5, 2020 and would have required that all kindergarten through fifth grade students wear masks for the entirety of the school day, even when the young children are socially distanced at their desks.  A copy of this order is attached at Exhibit 4.

90.    Executive Order 2020-185 was not reasonable or necessary.

91.    Executive Order 2020-185 falsely stated that "[i]t is now crystal clear that COVID-19 can be deadly to younger children."

92.    Despite this statement, data and science support that it is *extremely* rare for COVID-19 to be deadly to younger children.

93.    On a national level, the Centers for Disease Control and Prevention (CDC) reports that the death rate of COVID-19 for students in the five to seventeen years-old age range is less than 0.1%.    *See*        https://web.archive.org/web/20201020044548/https://covid.cdc.gov/covid-data-tracker/#demographics (last visited Oct. 20, 2020).

- 14 -

94.     The American Academy of Pediatrics' data supports and is consistent with that of the CDC, showing: "Mortality (42 states and NYC reported) - Children were 0%-0.26% of all COVID-19 deaths, and 17 states reported zero child deaths.  In states reporting, 0%-0.16% of all child COVID-19 cases resulted in death."  *See* https://services.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/children-and-covid-19-state-level-data-report/ (last visited Oct. 13, 2020).

95.     In Michigan, from January 1 to October 16, 2020, there has only been one death associated with COVID-19 in children ages five through fourteen.  *See* https://www.mdch.state.mi.us/osr/Provisional/CvdTable2.asp?fbclid=IwAR35plM6oxH3Cg6Tnwp_9uLKn82gHyfsgnNR7TMbIuMv-09uJdund7DVaNQ (last visited Oct. 20, 2020).

96.     Upon information and belief, the one fatal case in the five to fourteen age range was not contracted in school or from other children, and the child also suffered from meningitis and brain swelling at the time of the COVID-19 diagnosis.

97.     Executive Order 2020-185 also falsely claimed that "[g]iven the higher incidence of cases among children in recent months," the situation has amounted to an emergency requiring "the use of masks in the classroom even for younger students."  Data and science do not support this claim.

98.     Younger students in grades K-5 have not contracted COVID-19 at a higher rate. Children in grades pre-school through fifth grade, to date, account for only approximately 2% of all COVID-19 cases reported in the schools.  *See* https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173_102480---,00.html (last visited Oct. 20, 2020).

99.     Currently, the State of Michigan has documented 5,816 cases of COVID-19 as being associated with a school population.  Only 151 of those cases arose from pre-schools and elementary schools. *See* https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173_102480---,00.html (last visited Oct. 20, 2020).

100.    As of October 20, 2020, approximately 98% of documented COVID-19 cases associated with a school outbreak in the State of Michigan occurred in children in sixth grade through college. *See* https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173_102480---,00.html (last visited Oct. 20, 2020).

101.    Prior to the Michigan Department of Health and Human Services' October 5, 2020 mandate (MDHHS Order), there was no statewide requirement that children in grades kindergarten through fifth grade wear masks in the classroom.

102.    Yet, the kindergarten through fifth grade age group did not contract or spread COVID-19 at a higher rate than older children or adults.  In fact, the data and science consistently demonstrate that this age group is less likely to contract COVID-19 and significantly less likely to contract a serious case.

103.    Since the beginning of the 2020 school year, a statewide mandatory mask provision has been in place for all regions in Phase 4 for students in sixth grade through college in all areas of the school, at all times.

104.    Since the beginning of the 2020 school year, a statewide mandatory mask provision has required all teachers, staff, and administrators (not students) to wear facial coverings in Phase 4 regions.

105.    In Ingham County, only three schools have documented COVID-19 cases since the beginning of the 2020 school year.  And by far, the largest outbreak, consisting of 1,622 cases, occurred at Michigan State University, which requires facial coverings at all times and engages in virtual, ***off campus*** instruction. *See*  https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173_102480---,00.html (last visited Oct. 20, 2020.

106.    Particular to instruction of the youngest students in grades kindergarten through fifth grade, the CDC explains that facial masks present challenges, particularly for younger students in

- 16 -

early elementary school and students with special healthcare or educational needs, developmental or emotional disabilities, mental health conditions, or sensory concerns or tactile sensitivity.  *See* https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/cloth-face-cover.html (last visited Oct. 13, 2020).

107.    When children are socially distanced from one another while in the classroom, CDC guidelines do not even recommend facial coverings, and it only classifies the use of facial coverings as "may be considered."   *See*  https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/cloth-face-cover.html (last visited Oct. 13, 2020).

108.    Similarly, the World Health Organization (WHO) and the United Nations Children's Emergency Fund (UNICEF) advise a multi-faceted approach to the use of masks for children from six years of age to eleven, based upon factors such as: the potential impact of wearing the mask on learning and psychosocial development in consultation with the child's teachers, parents, caregivers, and/or medical providers; the transmission rate of COVID-19 where the child resides; the ability of the child to appropriately use a facial covering; and the cleanliness and laundering of the facial covering.  *See* https://www.who.int/news-room/q-a-detail/q-a-children-and-masks-related-to-covid-19 (last visited Oct. 13, 2020).

109.    The WHO and UNICEF do not recommend the use of masks on children who are five years of age.   *See*  https://www.who.int/news-room/q-a-detail/q-a-children-and-masks-related-to-covid-19 (last visited Oct. 13, 2020).

110.    On June 30, 2020, the Governor, the COVID-19 Task Force on Education, and the Return to School Advisory Council released the Michigan Return to School Roadmap, recommending but not requiring facial coverings for young children in grades K-5.   *See* https://www.michigan.gov/documents/whitmer/MI_Safe_Schools_Roadmap_FINAL_695392_7.pdf (last visited Oct. 13, 2020).

111.    The Michigan Return to School Roadmap described safety protocols and required schools and districts "to develop detailed district or building-level plans." *See* https://www.michigan.gov/documents/whitmer/MI_Safe_Schools_Roadmap_FINAL_695392_7.pdf (last visited Oct. 13, 2020).

112.    The Roadmap described when facial coverings were required to be worn, described safety protocol for sanitization, personal hygiene practice, and proper spacing and movement, among other health and safety protocol.

113.    The Roadmap stated that "[a]ll students in grades K-5 must wear facial coverings unless students remain with their classes throughout the school day and do not come into close contact with students in another class."  https://www.michigan.gov/documents/whitmer/MI_Safe_Schools _Roadmap_FINAL_695392_7.pdf (last visited Oct. 13, 2020).

114.    On August 20, 2020, the Michigan Legislature passed, and the Governor signed, Michigan's Return to Learn law that states:

> A requirement that the district, in consultation with a local health department, as that term is defined in section 1105 of the public health code, MCL 333.1105, and district employees, develop districtwide guidelines concerning methods for delivering pupil instruction for the 2020-21 school year that are based on local data that are based on key metrics.  However, regardless of the guidelines developed under this subdivision, a determination concerning the method for delivering pupil instruction remains with the district.  As used in this subdivision, "key metrics" means, at a minimum, all of the following:
> (i)     The trend of COVID-19 cases or positive COVID-19 tests, hospitalizations due to COVID-19, and the number of deaths resulting from COVID-19 over a 14-day period.
> (ii)    COVID-19 cases for each day for every 1 million individuals.
> (iii)   The percentage of positive COVID-19 tests over a 4-week period.
> (iv)    Health care capacity strength.
> (v)     Testing, tracing, and containment infrastructure with regard to COVID-19.

P.A. 149, § 98a(1)(g) (Mich. 2020).

115.    Plaintiff Resurrection School and the Diocese of Lansing submitted its COVID-19

Plan with appropriate methods for delivering pupil instruction for the 2020-21 school year, including protocols for when facial coverings would be required; how to increase personal hygiene and enhance sanitization; timing the movement of students; limiting guests; requiring teachers to exclusively teach at the school buildings; using cohorts and pods to minimize contact; gaining insight and help from the parent community to keep the school community safe outside of the school building; and establishing health screening protocol, all the while remaining devoted to providing a safe, healthy, and effective learning and faith-filled learning atmosphere.

116. Resurrection School's plan exceeded the standards set forth by the Roadmap. In addition to establishing personal hygiene, screening, social distancing, and sanitization protocol, Resurrection School took additional precautions such as creating a traffic schedule so no classes would interact in common areas throughout the day. Class cohorts were further broken down into pods, so students would only interact in a pod with three other students. UV-C lights and air filtration systems were installed in each room to kill airborne containments. And the school uses a commercial grade antimicrobial fogger to disinfect common areas at least three times a day.

117. To date, Resurrection School has avoided any outbreaks within its school due to following this strict protocol.

118. Nonetheless, on September 25, the Governor announced that she would be changing school protocols by issuing Executive Order 2020-185, requiring all kindergarten through fifth grade students to wear facial coverings in the classrooms.

119. Executive Order 2020-185 was set to go into effect on October 5, 2020. On October 2, 2020, however, the Michigan Supreme Court issued its opinion in *In re Certified Questions*, nullifying the Governor's authority to issue this order.

120. In response, the Governor did not seem deterred from the opinion and stated that she would carry out her executive orders through alternative avenues, such as through the Michigan

Department of Health and Human Services and local health departments, invoking ostensive authority from Michigan's Public Health Code.

121.    On October 4, 2020, Defendant Linda S. Vail signed an order on behalf of the Ingham County Health Department requiring, *inter alia*, that students wear facial coverings at all times. *See* Exhibit 2 ("County Order").  The order invokes MCL 333.2253 as its statutory basis and criminalizes the failure to follow the mandates of the County Order.  While there are some limited exceptions to the order, the order contains no exceptions for engaging in religious education or helping students learn to read, or otherwise engage in the learning process.

122.    On October 5, 2020, Defendant Gordon, the Director of the Michigan Department of Health and Human Services, created an order requiring all students and staff of schools to wear masks through the entirety of the school day, even when socially distanced in the classroom and trying to engage in the learning process.

123.    The October 5 Order was rescinded.  On October 9, 2020, Director Gordon issued a revised order on behalf on the Michigan Department of Health and Human Services, requiring all students to wear facial coverings throughout the entire school day.  See Exhibit 1 ("MDHHS Order").  The order contains exemptions for voting at a polling location, for engaging in a religion service for the purpose of religious worship, and other very limited exceptions.  There is not, however, any exemption in the order for engaging in religious education, helping students to learn to read, or otherwise for the learning process.

124.    Defendant Gordon noted in his Facts Sheet pertaining to his October 9, 2020 emergency order, attached at Exhibit 5, that his mandate to require facial coverings of all students in Michigan follows the Governors' unconstitutional executive orders "as much as possible" in order "[t]o reduce confusion."

125.    The Governor's first facial covering requirement stated that schools were to enforce

the facial covering mandate and their students through "disciplinary mechanisms." https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-535121--,00.html (last visited Oct. 13, 2020).

126.    Plaintiffs sincerely believe that it would not be virtuous, moral, or in line with Catholic teaching to punish and discipline young students for not having the fine motor skills to properly handle facial coverings, for needing to remove their facial coverings in order to engage in the educational process, for needing to remove their facial coverings because it is hurtful or distracting, or for removing their facial covering to better participate in religious formation.

127.    In order to enforce the challenged orders, Resurrection School would have to change its disciplinary policies based upon their faith, the pursuit of virtue, and reasons that are integral to the school's Catholic identity.

128.    The challenged orders require Plaintiffs to either violate their sincerely held religious beliefs or face criminal prosecution.

129.    The challenged orders provide numerous exceptions from their facial coverings requirement, such as being at a public gathering at a polling place or worshipping at a religious service.  However, Defendants fail to exempt Plaintiffs for engaging in religious education in a completely non-public classroom with extreme sanitization and social distancing policies in place. Consequently, this broadly enforced order is arbitrary in its application.

130.    Both Defendant Gordon and Defendant Vail asserted that a present emergency necessitated issuing the orders.  This assertion is not based on facts.  It is not based on science or data.

131.    There is no emergency within this age group, kindergarten through fifth grade that requires the challenged orders.

132.    In order for a matter affecting health to be considered an emergency, the WHO

requires an emergency threshold. WHO defines emergency threshold as the "[m]ortality rate above which an emergency is said to be occurring. Usually taken as a crude mortality rate of 1 per 10,000 per day, or as an under-five mortality rate of 2 per 10,000 per day (ODI/HPN paper 52, 2005, Checchi and Roberts)." *See* https://www.who.int/hac/about/definitions/en/ (last visited Oct. 13, 2020).

133. The average daily mortality rate for deaths associated with COVID-19 in the State of Michigan the week immediately prior to Defendants' orders was 11 per an estimated 9,986,857 or 0.01 per 10,000. Furthermore, the mortality rate was zero for children in the age range of kindergarten through fifth grade. The mortality rate in Michigan for children ages five to fourteen since the beginning of January 1, 2020 until today is 0.008 per 10,000. *See* https://www.mdch.state.mi.us/osr/Provisional/CvdTable2.asp?fbclid=IwAR35plM6oxH3Cg6Tnwp _9uLKn82gHyfsgnNR7TMbIuMv-09uJdund7DVaNQ (last visited Oct. 20, 2020).

134. The challenged orders are arbitrary and capricious, and they are causing Plaintiffs irreparable harm.

## FIRST CLAIM FOR RELIEF

### (Freedom of Religious Exercise – First Amendment & Mich. Const. Art. I, § 4)

135. Plaintiffs hereby incorporate by reference all stated paragraphs.

136. By reason of the aforementioned orders, acts, policies, practices, customs, and/or procedures created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to free exercise of religion in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 and the Michigan Constitution, Article I, § 4 (1963).

137. The challenged orders alter the curriculum and disciplinary policies set forth by Plaintiff Resurrection School as a means of religious education in the non-public classroom; the orders punish and impose discipline on schools and students for exercising their religious beliefs;

and the orders interfere with and thwart religious education in the classroom. Defendants' actions injure Plaintiffs by chilling their religious activity through the threat of discipline and sanctions for failure to comply with the challenged orders. Indeed, Defendants' orders force Resurrection school to implement a disciplinary policy to enforce the wearing of facial coverings that is hostile to the sincerely held religious beliefs upon which the school was founded. Defendants' orders require that Resurrection School ignore the well-being of the whole child and diminish parental authority, contravening the Catechism of the Catholic Church, or face sanctions and penalties for failure to comply with the challenged orders. The Hobson's choice posed by Defendants' orders is unconstitutional and prohibits Resurrection School from freely exercising its Catholic faith and achieving its mission of providing a Catholic education for the parents and students it serves.

138.    The challenged orders prevent Plaintiff Smith from providing the religious education she wants for her minor child, F.S., and from F.S. receiving this religious education, in violation of their rights to the free exercise of religion protected by the United States and Michigan Constitutions.

139.    The challenged orders prevent Plaintiff Mianecki from providing the religious education he wants for his minor children, C.M., Z.M., and N.M., and the orders prevent C.M., Z.M., and N.M. from receiving this religious education in violation of their rights to the free exercise of religion protected by the United States and Michigan Constitutions.

140.    Because the challenged orders provide for certain secular exemptions, they are not neutral laws of general applicability, and the orders do not satisfy strict scrutiny.

141.    As a direct and proximate result of Defendants' violation of the First Amendment and Article I, § 4 of the Michigan Constitution, Plaintiffs have suffered, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages for the past loss of their constitutional rights as against Defendant Vail.

**SECOND CLAIM FOR RELIEF**

**(Unlawful Exercise of Authority under Michigan Law)**

142.   Plaintiffs hereby incorporate by reference all stated paragraphs.

143.   The MDHHS Order and the County Order are unenforceable because Defendants lack the authority to issue them under the Michigan Public Health Code.

144.   MCL 333.2453 authorizes a local health officer to issue an emergency order only upon finding that doing so is necessary.

145.   MCL 333.2453 provides a local health officer authority to (1) prohibit a public gathering or (2) establish procedures "to insure continuation of essential public health services and enforcement of public health laws."

146.   Defendants' orders requiring masks for young children in kindergarten through fifth grade are unauthorized by state law.  Defendants' orders are not orders prohibiting gatherings nor are they procedures to insure public health services.  Instead, the challenged orders are orders requiring the general public to wear masks or face criminal prosecution.  Defendants are not authorized to issue orders for this purpose, or to place such conditions on public life, or to determine how instruction must be delivered and received within the classrooms of religious schools.

147.   Michigan Public Health Laws "shall not be construed to vest authority in the department for programs or activities otherwise delegated by state or federal law or rules to another department of state government."  MCL 333.1114.

148.   Return to Learn legislation, passed by both houses and signed by the Governor, set forth a requirement for schools to submit its learning plan for the 2020-21 school year that included its safety protocols and methods for in person instruction.  Resurrection School submitted its plans in accordance with the law, and their plans were approved.

149.   The Return to Learn legislation delegates the ultimate decision for how instruction

will be received, including how facial coverings will or will not be used in the classroom during the educational process, with the school districts.

150.    Defendants' orders constitute an attempt to undo and negate the legislature's delegation of authority to the educators over how safety protocols will be observed and implemented while achieving the pedagogical goals of the school.  This authority was not delegated to health department officials.  Defendants' orders have no legal force or effect and cannot void the Return to Learn legislation or the school plans submitted and approved under this legislation.

151.    There is no emergency upon which Defendants may act to enforce their orders, and the Defendants' orders do not comport with and are not authorized under the Michigan Public Health Code.

152.    Defendants' orders are unreasonable and arbitrary.

153.    Plaintiffs have no adequate remedy at law for the continuing unlawful action by the Defendants.

**THIRD CLAIM FOR RELIEF**

**(Separation of Powers & Non-delegation Clauses – Mich. Const. Art. III, § 2 & Art. IV, § 1)**

154.    Plaintiffs hereby incorporate by reference all stated paragraphs.

155.    Defendants' orders are unconstitutional and unenforceable against Plaintiffs because they are based on impermissible delegations of legislative authority in violation of the Michigan Constitution.

156.    The Separation of Powers Clause in the Michigan Constitution provides that "[t]he powers of the government are divided into three branches: legislative, executive, and judicial.  No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."  Mich. Const. art. III, § 2 (1963).

157.    Article IV § 1 of the Michigan Constitution prohibits delegation of legislative power

to protect the public from the misuse of power ostensibly delegated under a Michigan statute.

158.    A delegation of power through legislation cannot be lawful if it permits executive lawmaking.  If a delegation of authority to the executive branch is not sufficiently specific or fails to establish prescribed boundaries, or if the executive branch acts beyond specific boundaries in the legislation, the executive's actions are constitutionally invalid.

159.    Defendants' orders violate the Separation of Powers and the Non-delegation Clauses of the Michigan Constitution.  The provisions of the Michigan Public Health Code that Defendants rely upon to issue their emergency orders fail to provide proper standards to guide or allow a proper delegation of legislative authority to the executive branch.  This delegation of authority is completely open-ended and overly broad; it permits unbridled law making by the executive branch.  The statute has no temporal, durational, substantive, or legislative checks.

160.    As interpreted by Defendants in the challenged orders, the Michigan Public Health Code gives them carte blanche authority to regulate, condition, and restrict all manners of interactions in the non-public classroom, all methods and modes of religious education, and all human interaction between students.  Accordingly, Defendants' orders are unenforceable.  Defendants have failed to follow the Return to Learn legislation and the Michigan Public Health Code.

161.    Defendants' orders are also unreasonable and arbitrary, and in violation of the Separation of Powers Clause as applied to Plaintiffs.

162.    Plaintiffs have no adequate remedy at law for this continuing unlawful action by Defendants.

## FOURTH CLAIM FOR RELIEF

### (Due Process – Fourteenth Amendment & Mich. Const. Art. I, § 17)

163.   Plaintiffs hereby incorporate by reference all stated paragraphs.

164.   The challenged orders violate Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 and the Mich. Const. Art. I, § 17.

165.   The right to privacy protects the personal autonomy and bodily integrity of Plaintiffs Mianecki, C.M., Z.M., N.M., Smith, and F.S. from intrusion by the government.  The mask mandates of the challenged orders violate these Plaintiffs' right to privacy in violation of the Fourteenth Amendment and the Michigan Constitution.

166.   The challenged orders unreasonably interfere with the liberty of parents and guardians, including Plaintiffs, to direct the upbringing and education of their children in violation of the Fourteenth Amendment and the Michigan Constitution.

167.   Because Defendants' executive orders impinge upon Plaintiffs' fundamental rights and impose arbitrary distinctions and prohibitions on Plaintiffs' conduct, they violate substantive due process as applied to Plaintiffs.

168.   Defendants arbitrarily exempt public voting gatherings and public religious worship services from their orders but fail to exempt non-public schools that disallow guests and follow strict safety plans

169.   Defendants' orders are not narrowly tailored and do not serve a compelling state interest.

170.   As a direct and proximate result of Defendants' violation of the Fourteenth Amendment and the Michigan Constitution as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to

declaratory and injunctive relief.  Plaintiffs are also entitled to nominal damages against Defendant Vail.

**FIFTH CLAIM FOR RELIEF**

**(Equal Protection – Fourteenth Amendment)**

171.    Plaintiffs hereby incorporate by reference all stated paragraphs.

172.    By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of State law, Defendants have deprived Plaintiffs of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

173.    As set forth in this Complaint, the challenged orders deprive Plaintiffs of their fundamental rights and freedom.  The orders provide exceptions for other activity and conduct that is similar in its impact and effects, but not for Plaintiffs' constitutionally protected activities.  The challenged measures lack any rational basis, are arbitrary and capricious, have no real or substantial relation to the objectives of the order, and are a palpable invasion of rights secured by fundamental law in violation of the Equal Protection Clause.

174.    When the government treats an individual disparately as compared to similarly situated persons and that disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis, such treatment violates the equal protection guarantee of the Fourteenth Amendment.  As set forth in this Complaint, the challenged orders violate the equal protection guarantee of the Fourteenth Amendment.

175.    As a direct and proximate result of Defendants' violation of the equal protection guarantee of the Fourteenth Amendment as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.  Plaintiffs are also entitled to nominal damages against Defendant Vail.

## SIXTH CLAIM FOR RELIEF

### (First Amendment—Freedom of Speech)

176.     Plaintiffs hereby incorporate by reference all stated paragraphs.

177.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

178.     The freedom of speech is not confined to verbal expression but includes conduct that is sufficiently imbued with elements of communication.  That is because the Constitution looks beyond written or spoken words as mediums of expression and recognizes that symbolism is an effective way of communicating ideas.  Conduct, such as the wearing of a face mask during this politicized pandemic, is sufficiently communicative because it conveys a particularized message and the likelihood is great that the message will be understood by those who view it.

179.     Wearing a face mask during this current and highly politicized pandemic has become a form of expression.  The wearing of a face mask, when socially distanced or when the situation and condition make doing so extreme or unreasonable, is for many, including Plaintiffs, a symbol of oppression and government tyranny.  It is a sign that the wearer is willing to surrender his or her freedoms to the government.  Plaintiffs oppose this message and thus they oppose the requirement to wear a face mask because it conveys this message.  Moreover, Plaintiffs oppose the mask mandate because science and data have shown that wearing a face mask pursuant to the mandate is not medically required or necessary, and it is harmful to the wearer.

180.     The mask mandate, as set forth in this Complaint, is compelling Plaintiffs to express a message with which they disagree in violation of their rights protected by the First Amendment.

181.     As a direct and proximate result of Defendants' violation of the right to freedom of speech under the First Amendment as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.  Plaintiffs are also entitled to nominal damages against Defendant Vail.

## SEVENTH CLAIM FOR RELIEF

### (Right to Freedom of Association—First Amendment)

182.     Plaintiffs hereby incorporate by reference all stated paragraphs.

183.     By reason of the aforementioned orders, acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to freely associate secured by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

184.     Defendants' orders hinder, prevent, inhibit, and interfere with Plaintiffs' right to associate by engaging in religious education, religious fellowship, religious practice and worship, and protected speech.

185.     As a direct and proximate result of Defendants' violation of Plaintiffs' First Amendment right to freedom of association as set forth in this Complaint, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief.  Plaintiffs are also entitled to nominal damages against Defendant Vail.

WHEREFORE, Plaintiffs ask this Court:

A)     to declare that Defendants orders violate Plaintiffs' fundamental constitutional rights and Michigan law as set forth in this Complaint;

B)     to enjoin Defendants' enforcement of the challenged orders as set forth in this Complaint;

C)      to award Plaintiffs nominal damages as against Defendant Vail;

D)      to award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to 42

U.S.C. § 1988 and other applicable law; and

E)      to grant such other and further relief as this Court should find just and proper.

Respectfully submitted,

GREAT LAKES JUSTICE CENTER

*/s/ Erin Elizabeth Mersino*
Erin Elizabeth Mersino (P70886)
David Kallman (P34200)
Allison Lucas (P73331)
5600 W. Mt. Hope Highway
Lansing, Michigan 48917
Tel: (517) 322-3207; Fax: (517) 322-3208
erin@greatlakesjc.org

*Counsel for Plaintiffs Resurrection School,*
*Christopher Mianecki, C.M., Z.M., N.M.,*
*Stephanie Smith, and F.S.*

AMERICAN FREEDOM LAW CENTER

*/s/ Robert J. Muise*
Robert J. Muise, Esq. (P62849)
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@americanfreedomlawcenter.org

*Counsel for Plaintiffs Resurrection School,*
*Stephanie Smith, and F.S.*