IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

RESURRECTION SCHOOL; CHRISTOPHER MIANECKI, individually and as next friend on behalf of his minor children C.M., Z.M., and N.M.; and STEPHANIE SMITH, individually and as next friend on behalf of her minor child F.S.,

Plaintiffs,

v.

ROBERT GORDON, in his official capacity as the Director of the Michigan Department of Health and Human Services; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan; LINDA S. VAIL, in her official capacity as the Health Officer of Ingham County; and CAROL A. SIEMON, in her official capacity as the Ingham County Prosecuting Attorney,

Defendants.

Case No. 1:20-cv-01016

Hon. Paul L. Maloney

**BRIEF IN SUPPORT OF INGHAM COUNTY DEFENDANTS LINDA S. VAIL AND CAROL A. SEIMON'S MOTION TO DISMISS**

**\* ORAL ARGUMENT REQUESTED \***

Erin Elizabeth Mersino (P70886)
GREAT LAKES JUSTICE CENTER
Counsel for Plaintiffs
5600 W. Mt. Hope Highway
Lansing, MI 48917
(517) 322-3207

Bonnie G. Toskey (P30601)
Sarah K. Osburn (P55539)
COHL, STOKER & TOSKEY, P.C.
Attorneys for Ingham County Defendants
Linda Vail and Carol Siemon
601 N. Capitol Ave.
Lansing, MI 48933
(517) 372-9000

Robert J. Muise, Esq. (P62849)
AMERICAN FREEDOM LAW CENTER
Counsel for Plaintiffs Resurrection School, Stephanie Smith, and F.S.
PO Box 131098
Ann Arbor, MI 48113
(734) 635-3756

Joseph T. Froehlich (P71887)
Raymond O. Howd (P37681)
Daniel John Ping (P81482)
Michigan Attorney General Office
Attorney for Defendant Robert Gordon
525 W. Ottawa St.
PO Box 30736
Lansing, MI 48933
(517) 335-7573

**BRIEF IN SUPPORT OF INGHAM COUNTY DEFENDANTS
LINDA S. VAIL AND CAROL A. SEIMON'S MOTION TO DISMISS**

### TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS .................................................................................. 3
   A.   Plaintiffs' factual allegations regarding the mask mandate ................................... 3
   B.   Plaintiffs "Scientific" Reasons for Why Masks Are Not Necessary....................... 5
   C.   Plaintiffs' Factual Allegations Pertaining to Defendants Vail and Siemon............ 8

STANDARD OF REVIEW ................................................................................. 9

ARGUMENT ................................................................................................... 12

I.   Plaintiffs Lack Standing to Pursue Their Claims Against Defendants Vail and Siemon .............................................................................................. 12

II.   Any Claim for Damages Against Defendant Vail Fails as Defendant Vail is Entitled to Immunity Pursuant to MCL 333.2465 ................................ 14

III.   Plaintiffs' Claims Against Defendant Siemon Fail as Defendant Siemon is Entitled to Absolute Immunity ................................................................ 15

IV.   Plaintiffs Have Failed to State a Claim Against Defendants Vail and Siemon for Violation of Their First Amendment Right to Free Exercise of Religion ......... 17

V.   Plaintiffs Have Failed to State a Claim for Unlawful Exercise of Authority Under Michigan Law ............................................................................... 21

VI.   The Orders at Issue are not Based on an Impermissible Delegation of Legislative Authority and Therefore Plaintiffs' Claims Fail .................................. 23

VII.   Alternatively, this Court Should Decline Supplemental Jurisdiction or Should Abstain from Exercising Jurisdiction over Counts II and III ................................. 27

     1.   This Court should decline supplemental jurisdiction over Counts II and III because the claims raise novel and complex issues of state law; the claims substantially predominate over the federal claims; and there are other compelling reasons for declining jurisdiction. ....................................... 27

        a.   This Court should decline supplemental jurisdiction over Counts II and III under 28 U.S.C. § 1367(c)(1) ....................................................... 28

        b.   This Court should decline supplemental jurisdiction over Counts II and III under 28 U.S.C. § 1367(c)(2) ...................................................... 29

       c.  This Court should decline supplemental jurisdiction over Counts II and III under 28 U.S.C. § 1367(c)(4) ..................................................... 30

    2.  In the alternative to declining supplemental jurisdiction over Counts II and III, this Court should abstain from exercising jurisdiction over Counts II and III ........................................................................................... 31

VIII.  Plaintiffs' Due Process Claims Fail as to Defendants Vail and Siemon ............. 32

IX.  Plaintiffs Have Failed to State a Claim for Violation of Their Equal Protection Rights ............................................................................................... 37

X.  Plaintiffs Have Not Stated a Claim for Violation of Their First Amendment Right of Freedom of Speech ................................................................. 38

XI.  Plaintiffs Have Failed to State a Claim for Violation of Their Right to Freedom of Association ........................................................................ 40

CONCLUSION ............................................................................................ 41

CERTIFICATE OF COMPLIANCE ................................................................. 41

## <u>INDEX OF AUTHORITIES</u>

**Cases:**

*Argo Oil Corp v. Atwood*, 274 Mich. 47; 264 N.W. 285 (1935) ...................................... 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).................................... 10-11

*Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974 (6th Cir. 2012) ........................ 38

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) .................................................... 34

*Braunfeld v. Brown*, 366 U.S. 599 (1961)...................................................... 18

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985) .............................................. 31

*Brown v. Tidwell*, 169 F.3d 330 (6th Cir. 1999) ................................................ 31

*Bruley v. City of Birmingham*, 259 Mich.App. 619; 675 N.W.2d 910 (2003) .................. 24

*Burns v. Reed*, 500 U.S. 478 (1991) ........................................................ 15-16

*Cantwell v. Connecticut*, 310 U.S. 296 (1940)................................................ 18

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).................................... 30

*Church of the Lukumi Babalu Aye, Inc. v City of Hialeh*, 508 U.S. 520 (1993).............. 18

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) .............. 37

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) .................................. 33, 36

*Coffman v. State Bd. of Examiners in Optometry*, 331 Mich. 582; 50 N.W.2d 322 (1951) ............................................................................. 26

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992)............................... 33-35

*Daniels v. Williams*, 474 U.S. 327 (1986) ...................................................... 34

*DirectTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007).................................... 10

*District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)........................... 36

*Doe v. Sundquist*, 106 F.3d 702 (6th Cir. 1997) ............................................ 29

*Does v. Munoz*, 507 F.3d 961 (6th Cir. 2007) ............................................................... 35

*Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545 (9th Cir. 1994) .. 30-31

*Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678
 (D. Md. 2001) .............................................................................................. 10, 12

*Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462
 (4th Cir. 1991) .............................................................................................. 10, 12

*Fellows v. Michigan Com'n for the Blind*, 305 Mich.App. 289; 854 N.W.2d 482
 (2014) ................................................................................................................ 26

*Fowler v. Rhode Island*, 345 U.S. 67 (1953) ............................................................... 18

*Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955 (6th Cir. 2009) ...... 13

*Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019) .................................................. 33-35

*Hankins v. The Gap, Inc.*, 84 F.3d 797 (6th Cir. 1996) ................................................. 29

*Hartmann v. Stone*, 68 F.3d 973 (6th Cir. 1995) .......................................................... 19

*Herrick Dist. Library v. Library of Michigan*, 293 Mich.App. 571; 810 N.W.2d 110
 (2011) ................................................................................................................ 27

*Hill v. Snyder*, 900 F.3d 260 (6th Cir. 2018) ................................................................ 32

*Hosack v. Utopian Wireless Corp.*, No. 11-0420, 2011 WL 1743297 (D. Md.
 May 6, 2011) ................................................................................................. 10, 12

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557
 (1995) ................................................................................................................ 39

*Imbler v. Pachtman*, 424 U.S. 409 (1976) .................................................................... 15

*IME v. DBS*, 306 Mich.App. 426; 857 N.W.2d 667 (2014) ........................................... 24

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014) ....................................... 11

*Jacobson v Commonwealth of Massachusetts,* 197 U.S. 11 (1905) ............................. 20

*John Doe No. 1 v. Reed*, 561 U.S. 186 (2010) .............................................................. 25

*Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014) ................................................................. 13

*League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, _ F. Supp. 3d _,
No. 1:20-CV-458, 2020 WL 3421229 (W.D. Mich. June 19, 2020) .............. 20, 36

*Libertas Classical Assn. v. Gretchen Whitmer et al*, Case No. 1:20-cv-997,
2020 WL 6498761 (W.D. Mich. 2020) .................................................... 25-26, 32

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)........................................... 12-13

*Michigan Alliance for Retired American v. Sec'y of State* , —N.W.2d—,
2020 6122745 (Mich. Ct. App. Oct. 16, 2020) .................................... 24

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) ............... 19

*Moore v. City of East Cleveland, Ohio*, 431 U.S. 494 (1977) ........................................ 35

*National Institute of Family and Life Advocates, dba NIFLA v. Xavier Becerra,
Attorney General of California*, 138 S.Ct. 2361 (2018) ........................................ 39

*Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559 (11th Cir. 1994) ................. 31

*Paragon Props. Co. v. City of Novi*, 452 Mich. 568; 550 N.W.2d 772 (1996) ............... 24

*Paul v. Davis*, 424 U.S. 693 (1976) ............................................................... 33

*Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992) .................................... 34

*Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016)............................................ 12

*People v. Babcock*, 343 Mich. 671; 73 N.W.2d 521 (1955) ........................................... 26

*Peters v. Cars to Go, Inc.*, 184 F.R.D. 270 (W.D. Mich. Nov. 16, 1998)........................ 29

*Prince v. Massachusetts*, 321 U.S. 158 (1944) ............................................................. 21

*Puett v. City of Detroit, Dept. of Police*, 323 F.2d 591 (6th Cir. 1963),
*cert. den.,* 376 U.S. 957 (1964) ......................................................... 16

*Ranke v. Michigan Corp. & Sec. Comm.*, 317 Mich. 304; 26 N.W.2d 898 (1947) ......... 26

*Reed v. Town of Gilbert*, —— U.S. ——, 135 S.Ct. 2218 (2015)................................... 39

*Reno v. Flores*, 507 U.S. 292 (1993)........................................................................ 35-36

*Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F.Supp.2d 371
(S.D. N.Y. 2001) ............................................................................... 10

*Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020)........................................................ 19-20

*Scott v. Long Island Sav. Bank, FSB,* 937 F.2d 738 (2d Cir.1991)............................... 29

*Semlow Peak Performance Chiropractic v. Whitmer, et al*, Michigan Court of
    Claims Case No. 20-206-MZ ................................................................................ 29

*Senra v. Smithfield*, 715 F.3d 34 (1st Cir. 2013) ........................................................ 28

*Spokeo Inc. v. Robins*, 136 S.Ct. 1540 (2016) ............................................................ 12

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .................................................. 12

*Sumpter v. Wayne Cty.*, 868 F.3d 473 (6th Cir. 2017)................................................. 12

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)............................................ 12

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) ........................................................ 15

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) .............................. 27-28, 30

*Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008) (en banc)............................. 13

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ................................................... 34-36

*West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943) ................... 39

*Whalen v. Roe*, 429 U.S. 589 (1977)........................................................................... 33

*Whitney v. California*, 274 U.S. 357 (1927) ................................................................ 34

*Wooley v. Maynard*, 430 U.S. 705 (1977) ................................................................... 39

*Wright v. Bartz*, 339 Mich. 55; 62 N.W.2d 458 (1954) ................................................ 26

**Statutes:**

28 U.S.C. §1367.......................................................................................................... 28

28 U.S.C. §1367(c)(1) ............................................................................................. 28-29

28 U.S.C. §1367(c)(2) ............................................................................................. 29-30

28 U.S.C. §1367(c)(4) ............................................................................................. 30-31

42 U.S.C. §1983 ................................................................................................... 15, 30, 37

MCL 333.1111(2) ................................................................................................................... 15

MCL 333.1114 ....................................................................................................................... 22

MCL 333.2221 ....................................................................................................................... 26

MCL 333.2253 .................................................................................................................. 23-25

MCL 333.2453 ............................................................................................................. 21, 23-25

MCL 333.2453(1) ................................................................................................................... 21

MCL 333.2465 ....................................................................................................................... 14

MCL 333.2465(2) ................................................................................................................... 15

MCL 388.1698a ..................................................................................................................... 22

## Court Rules:

F.R.Civ.P. 8(a)(2) .............................................................................................................. 10-11

F.R.Civ.P. 12(b)(6) ........................................................................................................ 9, 11-12

## Other Authorities:

MI Const. art. III, § 2 ............................................................................................................. 24

MI Const. art IV, § 51 ........................................................................................................... 23

Michigan Administrative Rule 325.171 ................................................................................ 23

## INTRODUCTION

Michigan is currently experiencing a surge in COVID-19 infections and its hospitals are nearing capacity limits and soon will not have beds available to treat those with the virus. According to the most recent MDHHS Emergency Order, issued on November 15, 2020 (See Exhibit A, November 15, 2020 Order.) The seven day average of 512 cases per million people is five times higher than the October 1, 2020 seven-day average. Test positivity has increased fourfold from 3.2% in early October to 12% on November 13, 2020. Testing has increased 78% since October 1, 2020 but positivity has increased by 225% during the same time frame. (Exhibit A) This is putting extreme pressure on emergency and hospital systems. COVID-19 hospitalizations have doubled in the last two weeks averaging 363 daily admissions in the last week alone. (Exhibit A)

As there is no vaccine currently available for COVID-19, mitigation measures must be relied upon to contain the rate of spread of the virus so that medical resources, including hospital beds and ventilators are available for those who need inpatient care. These mitigation measures include (1) limiting human gathering sizes, (2) social distancing, and (3) wearing of masks.  The Michigan Department of Health and Human Services (MDHHS) and local Health Departments including Ingham County have issued emergency orders limiting gathering sizes, requiring social distancing and requiring the use of masks.

Plaintiffs, blatantly disregarding the dangers of COVID-19 global pandemic, file this lawsuit claiming that the mask mandate set forth in the October 9, 2020 Michigan Department of Human Services (MDHHS) Emergency Order and the October 4 Emergency Order issued by Defendant Linda Vail violate their constitutional rights. This

lawsuit is a wrongheaded, misguided and dangerous political attack on the ability of the State and its local subdivisions to adequately combat the COVID-19 global pandemic. Plaintiff argues that the Order issued by the MDHHS is unlawful under the United States and Michigan Constitutions.[1]  Similarly, Plaintiffs also claim that the emergency order issued on October 4, 2020 by Defendant Linda S. Vail in her capacity as Health Officer violates their rights. The Order issued by Defendant Vail was rescinded on October 23, 2020 with no enforcement action ever being taken against Plaintiffs, but Plaintiffs refuses to dismiss Vail and Siemon from this case. Their reasoning, as set forth in their Motion for a Preliminary Injunction (ECF No. 7, PageID 68 n. 2) is that even though the local Order has been rescinded, Vail and Siemon are charged with enforcing the MDHHS Order. It is important to note that no enforcement action pursuant to the MDHHS Emergency Order has been taken by Defendants Vail or Siemon.

Plaintiffs assert that the mask requirements set forth in the MDHHS Order violates their First Amendment rights to religious exercise, freedom of speech and association; their Fourteenth Amendment rights to provide a religious education, equal protection under the law and right to privacy; is an unconstitutional delegation of legislative authority in violation of the Michigan Constitution and violates Michigan law. Plaintiffs claims fail for the reasons set forth below.

---

[1] The October 9, 2020 Order expired by its terms on October 30, 2020.  On October 29, 2020 MDHHS Director Robert Gordon issued a new Order with substantially similar mask requirements. On November 15, 2020, a new Emergency Order was issued regarding gatherings and face masks in response to the continued surge in COVID-19 cases. This Order, which tightens the restrictions for gatherings, took effect on November 18, 2020 and rescinded the October 29, 2020 Order.

## STATEMENT OF FACTS

**A.     Plaintiffs' Factual Allegations Regarding the Mask Mandate.**

Plaintiffs in this case include Resurrection School, a Catholic School located in Ingham County, five minor students who attend the school and their parents. Plaintiffs claim that the mask order which requires students to wear masks throughout the school day is:

1)     a violation of their Freedom of Religious Exercise;

2)     an unlawful exercise of authority under Michigan Law;

3)     a violation of the Separation of Powers and Non-delegation Clauses of the Michigan Constitution;

4)     a violation of their substantive due process rights;

5)     a violation of their right to equal protection guaranteed by the Fourteenth Amendment;

6)     a violation of their freedom of speech; and

7)     a violation of their right to freedom of association.

To support their claims Plaintiffs allege that in accordance with the teachings of the Catholic faith, Resurrection School believes that "every human has dignity and in made in God's image and likeness. Unfortunately, a mask shields our humanity. And because God creates us in his image, we are masking that image." (ECF No. 1, PageID 5, ¶22.) Further, Plaintiffs claim that:

> Masks also make us anti-social. They interfere with relations. As the Catholic faith teaches, we are relational beings. And our existence as relational beings points to the Holy Trinity. A mask is disruptive to the essential elements of the Catholic faith and is disruptive to the teaching of young children for these and other reasons." *Id.*

Plaintiffs do not cite to any sources to support their position that the Catholic faith or Catholic theology is in any way opposed to the use of prophylactic masks during a global pandemic. Plaintiffs do not explain why wearing a face covering, covering the mouth and nostrils, shields humanity and masks the image of God's likeness any more than veils, eyeglasses, hats, scarves, shirts, pants or other items of clothing do.  Plaintiffs do not appear to have an objection to any other type of covering that staff and students wear to school to protect against cold weather.

Plaintiffs also allege that the masks interfere with the goal of seeking to "impart the virtue of mercy through acts of forgiveness" using the reconciliation process and facilitating a face to face apology. Plaintiff claims that masks interfere with this important interaction. (ECF No. 1, PageID 5-6, ¶24.) Plaintiffs do not explain why the students cannot engage in any of these activities while wearing a mask.  The students can obviously still work face to face to resolve their issues while wearing masks (and hopefully social distancing), with the benefit that while they do so they will seriously decrease the likelihood of transmitting the virus.  Plaintiffs also do not explain why the same goals cannot be accomplished while wearing a transparent mask.  Clearly, wearing a mask does not burden the practice of spiritual forgiveness and reconciliation.

Plaintiffs then assert specific mask related challenges for each of the student Plaintiffs:

- F.S. has severe allergies which makes wearing a mask difficult. (ECF No.1, PageID 7, ¶39.) However, Plaintiffs Complaint acknowledges that F.S.'s condition does not qualify for a "medical exemption" according to his own pediatrician. (ECF No.1 PageID 8, ¶42.) As a result of the mask mandate, and the fact that he does

not qualify for a medical condition, F.S. is no longer able to attend classes at Resurrection School. (ECF No.1, PageID 8, ¶46.)

- C.M., Z.M. and N.M. were beginning to engage in the Catholic Faith with their classmates and form relationships with other children based on the teachings and examples of Jesus Christ. Plaintiffs claim without explanation that mandating these children to wear facial coverings is hindering "the formation of these bonds and prevents the body of Christ from freely associating." (ECF No. 1, PageID 9, ¶52.)

- C.M. is very shy and quiet and masks impede her ability to socialize. (ECF No.1, PageID 9, ¶53.) She also experiences discomfort while wearing a mask, exacerbates her speech impediment and lacks fine motor skills to handle the mask. (ECF No. 1, PageID 9, ¶¶54-58.) Plaintiffs do not state what steps have been taken to help C.M. acclimate to wearing a mask.

- Z.M. has clinically recognized speech issues. (ECF No.1, PageID 10, ¶60.) Plaintiffs do not discuss measures that have been taken to help Z.M.

- C.M. Z.M. and N.M. suffer from seasonal allergies. (ECF No. 1, PageID 10, ¶66.)

- Plaintiffs do not state whether a medical exemption has been sought for C.M., Z.M. or N.M.

**B.  Plaintiffs "Scientific" Reasons for Why Masks Are Not Necessary.**

Plaintiffs make numerous "factual" assertions to support their claim that masks are not necessary for students at Resurrection School. Plaintiffs assert that no peer-reviewed study exists demonstrating the effectiveness of non-medical facial coverings for children or demonstrating whether use of masks by children is sanitary. (ECF No.1, PageID 11,

¶¶72-73.) Likewise, Plaintiffs do not identify any peer review studies demonstrating that masks are not effective or that they are unsanitary. The paucity of peer reviewed studies is almost certainly a result of the fact that this global pandemic arose suddenly, and while it may seem like the pandemic has lasted forever, in reality it has been less than a year. The science relating to the virus is constantly evolving.  However, all credible experts now agree that one of the best means to contain the spread of the disease is through wearing masks. (See Exhibit B, Affidavit of Linda Vail.) Contrary to Plaintiffs' claims, studies continue to demonstrate the efficacy of mask usage in stopping the spread of the virus, and recently the CDC announced that use of masks protect from both contracting the virus and from spreading the virus. (See Exhibit B, Affidavit of Linda Vail, ¶8.)

Plaintiffs claim that ordering all students to wear masks communicates the message that COVID-19 continues to be a terrifying and deadly threat, and that Plaintiffs and science do not support or subscribe to this message or the mask mandate. (ECF No. 1, PageID 12, ¶76.) Plaintiffs claim that the mandated wearing of a mask has become a symbol of oppression and an attempt by the government to control the citizenry.[2] The inclusion of a political editorial cartoon in the Complaint speaks to the fact that Plaintiffs are raising anti-mask political arguments rather than the efficacy of the practice of requiring masks to reduce transmission of a highly contagious disease. Plaintiffs argue that a mask mandate presumes that all people are diseased and thus makes the wearer

---

[2] Plaintiffs have inserted into their Complaint an editorial cartoon that is purported to be taken from the Wall Street Journal in support of their claim that masks are governmental tools for oppressing its citizens. The artist is not named, and no publication date is provided.  Additionally, it is unclear how this editorial cartoon in any way proves that masks are not a scientifically proven method of controlling the virus. Plaintiffs also do not explain what government would hope to achieve by "oppressing" its citizens into wearing masks, beyond possibly preserving lives and resources.

contribute to a false public statement that all people are in fact diseased. It is unclear on what basis Plaintiffs make this argument. Individuals who are asymptomatic or pre-symptomatic are carriers and spreaders of the virus are contagious.  Wearing a mask protects against transmission of the virus from those individuals to others. As set forth in the Introduction Section of this Brief, the positivity rate of the virus in Michigan is escalating quickly, hospital beds are filling up and the death rate is climbing.  Wearing a mask is not a political ploy or statement, it is a public health necessity.

To support their claim that masks are not necessary, especially for students, Plaintiffs cite to CDC resources that indicate a low mortality rate for children. However, the numbers cited in Plaintiffs' Complaint represent only a snapshot in time.  Since the filing of the Complaint, conditions in Michigan and across this Country have deteriorated rapidly.  As of the week of November 5, cases among children represent 11.3 percent of total cases. 927,000 children have been infected with 14,000 cases in the week of November 5, 2020, alone. This represents a 17% increase. (See Exhibit 1, recent data from website link cited by Plaintiffs.)  Additionally, the infection rate among students has increased locally and across the state. (See Exhibit B, Affidavit of Linda Vail, ¶¶10 and 12, along with supporting attachments.) Plaintiffs correctly argue that at this time the death rate from COVID-19 among children is low, but ignore the fact that the infection rate is increasing rapidly, and that the long-term impact on children who have recovered from the virus is unknown.  (See Exhibit B, Affidavit of Linda Vail, ¶7.)

**C.      Plaintiffs' Factual Allegations Pertaining to Defendants Vail and Siemon.**

The list of claims against Defendants Vail and Siemon is long but the list of allegations of actual wrongdoing by these Defendants is extremely short. As to Defendant Vail, Plaintiffs' allege that on October 4, 2020, Defendant Vail signed an Executive Order on behalf of the Ingham County Health Department requiring that students wear facial coverings at all times. Defendant Vail agrees that this Order was signed invoking the authority of MCL 333.2453 as the statutory source for the Order and that there are criminal penalties for violating an Order adopted under MCL 333.2453. However, this Order was rescinded on October 23, 2020 as Defendant Vail determined that it was duplicative of the State's October 9, 2020 MDHHS Order. Plaintiffs acknowledge in their Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 7 PageID 68, n. 2) that they learned prior to service of this lawsuit that the Order had been rescinded, but nevertheless refuse to dismiss Defendants Vail and Siemon from this case. Plaintiffs' reasoning is that even though the local Order has been rescinded, Vail and Siemon are charged with enforcing the MDHHS Order. It is important to note that no enforcement action pursuant to the MDHHS Emergency Order has been threatened or taken by either Defendant Vail or Siemon. (ECF No. 7 PageID 68, n. 2.)

Plaintiffs claim that Ingham's October 4, 2020 Order (which was rescinded on October 23, 2020) requires them to punish and discipline students for not wearing a mask, or for removing their masks. The Order has no such requirement.  In fact, there have been no complaints submitted regarding Resurrection School to the Ingham County Health Department and no enforcement action was threatened or taken under the local Order.

8

Plaintiffs claim that there is no emergency necessitating this Order. This is a patently spurious claim in light of the current facts and global pandemic. It is undeniable that we are in a global pandemic and that all reasonable prevention measures must be taken until such time as the COVID-19 virus is under control. Plaintiffs have strained to turn the simple precautionary measure of wearing a mask into a political argument. Plaintiffs also inexplicably seek monetary damages against Defendant Vail despite the fact that she has taken no enforcement action against Plaintiffs and rescinded of her own volition the referenced local Order on October 23, 2020.

Defendant Siemon is referenced only in Paragraph 20 of Plaintiffs' Complaint, wherein she is identified as "the Ingham County Prosecuting Attorney. Defendant is responsible for prosecuting the challenged orders set forth in this Complaint. Defendant Siemon is sued in her official capacity." This is the only reference made to Siemon. No allegations of any wrongdoing are asserted against Defendant Siemon. Defendant Siemon did not threaten or prosecute Plaintiffs for any alleged violations of the October 4, 2020.

Defendant Vail has not investigated or taken any enforcement action against Plaintiffs under the October 9, 2020 MDHHS Order. Defendant Siemon has not received a request to issue and has not prosecuted Plaintiffs for any violations of the October 9, 2020 MDHHS Order.

## STANDARD OF REVIEW

F.R.Civ.P. 12(b)(6) provides for dismissal where the complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6), the Complaint must offer sufficient factual allegations that make the asserted

claims plausible on their face, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)—more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555 (citations omitted).

F.R.Civ.P. 8(a)(2) requires a Complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct."  *Id.* at 8(d)(1).  However, Rule 8 "does not countenance pleadings that are conclusory".  *Bell Atlantic* at 555.  And "[w]hen the bare allegations of the complaint conflict with any exhibits or other documents * * * the exhibits or documents prevail."  *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678, 683 (D. Md. 2001) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).  Likewise, "when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim."  *Hosack v. Utopian Wireless Corp.*, No. 11-0420, 2011 WL 1743297 at *5 (D. Md. May 6, 2011).[3]

Although the Court must construe the complaint in the light most favorable to the plaintiff and accept well-pleaded factual allegations as true, *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.,*

---

[3] In *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.*), 151 F.Supp.2d 371, 406 (S.D. N.Y. 2001), the court explained that Fed.R.Civ.P. 8(e)(2), which allows alternative claims regardless of consistency, "cannot be construed as an invitation to incoherent, self-contradictory pleadings." Thus, factual assertions "must be sufficient to state all the requisite elements of a given theory of liability," even if they are insufficient to support a different theory. *Id.* " That is not to say, however, that Rule 8(e) grants plaintiffs license to plead inconsistent assertions of facts within the allegations that serve as the factual predicates for an independent, unitary claim." *Id.*

550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp*, 550 U.S. at 570. The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557.  The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." F.R.Civ.P. 8(a)(2).  *Ashcroft,* 556 U.S. at 679.

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). However, "we have recognized that if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Id.*

Importantly, it is well-established that "[w]hen the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference,

the exhibits or documents prevail." *Fare Deals Ltd.*, 180 F.Supp.2d at 683 (citing *Fayetteville Investors*, 936 F.2d at 1465). Likewise, "when a complaint contains inconsistent and self-contradictory statements, it fails to state a claim." *Hosack, supra,* at *5.

Dismissal under F.R.Civ.P. 12(b)(6) is "appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity."  *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016).

## ARGUMENT

I.    **Plaintiffs Lack Standing to Pursue Their Claims Against Defendants Vail and Siemon.**

To establish standing under Article III, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "In the context of claims for injunctive or declaratory relief," the threatened injury in fact must be "concrete and particularized," as well as "actual and imminent, not conjectural or hypothetical[.]" *Sumpter v. Wayne Cty.*, 868 F.3d 473, 491 (6th Cir. 2017) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

"Although the Constitution does not fully explain what is meant by '[t]he judicial Power of the United States,' Art. III, § 1, it does specify that this power extends only to 'Cases' and "Controversies,' Art. III, § 2." *Spokeo Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). The doctrine of standing is "rooted in the traditional understanding of a case or controversy" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* Three elements comprise the

"irreducible constitutional minimum" of standing: (1) an injury in fact to the plaintiff; (2) that is fairly traceable to the challenged conduct of the defendant; (3) that a favorable judicial decision will likely redress. *Lujan v. Defs of Wildlife*, 504 U.S. at 560. An "injury in fact" is a "concrete harm suffered by the plaintiff that is actual or imminent, rather than conjectural or hypothetical." *Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 966 (6th Cir. 2009).

Courts in the Sixth Circuit address ripeness under the constitutional standing framework. *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014). "The ripeness doctrine serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract debates that may turn out differently in different settings." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (quotation omitted). A claim is not justiciable "when it is filed too early (making it unripe), when it is filed too late (making it moot), or when the claimant lacks a sufficiently concrete and redressable interest in the dispute (depriving the plaintiff of standing)." *Id*.

Here, Plaintiffs' claims are not justiciable. Plaintiffs have not suffered any concrete injury. Their allegations are conjectural and hypothetical. Neither Vail nor Siemon have threatened or taken any enforcement action against Plaintiffs pursuant to the October 4, 2020 Order. To the contrary, Defendant Vail rescinded the local Order referenced in Plaintiffs' Complaint without having received any complaints against Plaintiffs for noncompliance with the Order, without investigating Plaintiffs for noncompliance with the Order, or without taking any enforcement action against Plaintiffs for noncompliance with the Order. Likewise, Defendant Siemon has not prosecuted Plaintiffs for any alleged failure to comply with the local Order. Plaintiffs' claims for violations of their constitutional

13

rights based on the October 4, 2020 local Order are moot. The Order was rescinded by Defendant Vail of her own volition on October 23, 2020, and as such there will be no enforcement of this Order.

Conversely, Plaintiffs' claims regarding the October 9, 2020 MDHHS Emergency Order are not ripe. Vail has not acted to enforce the MDHHS Order against Plaintiffs and Siemon has not prosecuted Plaintiffs for any violation of the MDHHS Order.  Any allegations of future enforcement of this order are merely speculative and do not rise to the level of justiciable claims. Therefore, Defendants Vail and Siemon are entitled to dismissal of all claims asserted against them in Plaintiffs' Complaint.

## II.    Any Claim for Damages Against Defendant Vail Fails as Defendant Vail is Entitled to Immunity Pursuant to MCL 333.2465.

Plaintiffs purport to file this lawsuit against Defendant Vail in her official capacity. However, throughout the Complaint Plaintiffs assert that they are entitled to damages against Defendant Vail without legal support or explanation for this position.  Therefore, to the extent that any claim for damages as to Defendant Vail can be interpreted as a claim that Defendant Vail is personally liable, that claim fails as Defendant Vail is personally immune from suit in her role as the Ingham County Health Officer.

Employees and representatives of local health departments in Michigan are afforded immunity independently under §2465(2) of the Public Health Code:

> A local health officer or an employee or representative of a local health department is not personally liable for damages sustained in the performance of local health department functions, except for wanton and willful misconduct.

MCL 333.2465(2). Moreover, provisions of the Public Health Code are to be liberally construed for the protection of the health, safety and welfare of the people of this state. MCL 333.1111(2).

Defendant Vail is statutorily immune from liability, as provided in MCL 333.2465(2). She is the Health Officer who at all times was engaged in official Ingham County Health Department functions. Defendant Vail has taken no action against Plaintiffs, much less engaged in any wanton or willful misconduct.

Therefore, to the extent that Plaintiffs' claims for damages against Defendant Vail can be interpreted as claims against Ingham County Health Officer Vail in her personal, rather than official capacity, she is entitled to dismissal pursuant to MCL 333.2465(2).

### III. Plaintiffs' Claims Against Defendant Siemon Fail as Defendant Siemon is Entitled to Absolute Immunity.

As the duly elected Prosecuting Attorney for Ingham County, Defendant Siemon is entitled to absolute immunity under 42 U.S.C. §1983 in accordance with *Imbler v. Pachtman*, 424 U.S. 409, 422-28 (1976) ("We hold only that, in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under §1983."). Absolute immunity applies to the prosecutor's role as advocate for the state, which encompasses anything "intimately associated with the judicial phase of the criminal process". *Burns v. Reed*, 500 U.S. 478, 492 (1991), quoting *Imbler*, 424 U.S. at 430. Absolute immunity extends to claims of failure to train or supervise staff or to establish appropriate systems in regard to the advocacy function of a prosecutor. *Van de Kamp v. Goldstein*, 555 U.S. 335, 345 (2009).

*Imbler* applies equally to suits brought under 42 U.S.C. §1985 as those under §1983. The two provisions, originally Sections 1 and 2 of the Civil Rights Act of 1871, c.

22, 17 Stat. 13, have been treated identically in this context—including by the Sixth Circuit in *Puett v. City of Detroit, Dept. of Police*, 323 F.2d 591 (6th Cir. 1963), *cert. den.,* 376 U.S. 957 (1964).

The **only** allegation against Defendant Siemon is found in Paragraph 20 of Plaintiffs' Complaint wherein Plaintiffs state that "Defendant Carol A. Siemon is the Ingham County Prosecuting Attorney. Defendant Siemon is responsible for criminally prosecuting the challenged orders set forth in this Complaint. Defendant Siemon is sued in her official capacity." (ECF No.1, PageID 5, ¶20.)  This is the only reference to Defendant Siemon's name in the Complaint.  There are no allegations of any action planned, considered or taken by Siemon that in any way deprived Plaintiffs of any of their constitutional rights.

Defendant Siemon has not prosecuted Plaintiffs for a violation of the local October 4, 2020 Order, rescinded on October 23, 2020, or the October 9, 2020 MDHHS Order. Plaintiffs have apparently solely named Siemon in this lawsuit because there is a possibility that she could prosecute Plaintiffs for noncompliance.  As set forth in section I above, this potential is not justiciable. Additionally, had Defendant Siemon decided to pursue charges against Plaintiffs for violating either of the Orders, she be entitled to absolute immunity as that decision falls within the prosecutor's role as advocate for the state, which encompasses anything "intimately associated with the judicial phase of the criminal process".  *Burns v. Reed*, *supra.*

Defendant Siemon is entitled to dismissal of all claims asserted against her in Plaintiffs' Complaint.

## IV. Plaintiffs Have Failed to State a Claim Against Defendants Vail and Siemon for Violation of Their First Amendment Right to Free Exercise of Religion.

Plaintiffs' claim that the October 4 Ingham County and October 9 State Orders violate their First Amendment Right to free exercise of religion for the following reasons:

- Plaintiffs claim that both the October 4 and October 9 Orders alter the curriculum and disciplinary policies set forth by Resurrection School;

- Plaintiff claim that the Orders punish and impose discipline on the school and students for exercising their religious beliefs;

- Plaintiffs claim that the Orders interfere with and thwart religious education in the classroom by requiring them to implement a disciplinary policy to enforce the wearing of facial coverings that is hostile to the sincerely held religious beliefs upon which the school was founded;

- Plaintiffs claim that the Orders require that Resurrection School "ignore the well-being of the whole child and diminish parental authority, contravening the Catechism of the Catholic Church, or face sanctions and penalties for failure" to do so; and

- Plaintiffs allege that because the challenged orders provide for certain secular exemptions, they are not neutral laws.

Plaintiffs do not specify which portion of the Order requires them to implement a disciplinary policy to specifically address masks. Plaintiffs do not offer an explanation as to how wearing a mask interferes with religious education. Plaintiffs do not acknowledge the reality of the global pandemic and masks are one of the simplest and most effective measures that can be employed to stem the spread of the virus. (See Exhibit B, Affidavit of Linda Vail, ¶8.) Inexplicably, Plaintiffs also claim that they are entitled to nominal

damages as against Defendant Vail for past loss of their constitutional rights even though there has been no enforcement action threatened or taken against them pursuant to either Order, and the local Order was rescinded prior to service of this lawsuit.

The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment, see *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." *Church of the Lukumi Babalu Aye, Inc. v City of Hialeh*, 508 U.S. 520, 531 (1993). "In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* Neutrality and general applicability are interrelated. A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest. *Id.,* at 532. At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons. See, e.g., *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961) (plurality opinion); *Fowler v. Rhode Island*, 345 U.S. 67, 69-70 (1953). "There are, of course, many ways of demonstrating that the object or purpose of a law is the suppression of religion or religious conduct. To determine the object of a law, we must begin with its text, for the minimum requirement of neutrality is that a law not discriminate on its face. A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id.*

Plaintiffs do not allege that either of the Orders are not facially neutral.  Instead, Plaintiffs claim that the Orders are not neutral laws of general applicability, and that they do not satisfy strict scrutiny. (ECF No.1, PageID 23, ¶140.) The only support that Plaintiffs provide for this assertion is that the Orders provide for "certain secular exemptions." *Id.* "A law is not neutral and generally applicable unless there is "neutrality between religion and non-religion." *Hartmann v. Stone*, 68 F.3d 973, 978 (6th Cir. 1995). And a law can reveal a lack of neutrality by protecting secular activities more than comparable religious ones. See *Id.*, at 979; *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1233-35, 1234 n.16 (11th Cir. 2004); *Roberts v. Neace*, 958 F.3d 409, 415 (6th Cir. 2020).

Plaintiffs have failed to state a claim for violation of their right to free exercise of religion. Plaintiffs acknowledge that the mask mandate contained in both Orders applies to all public and private schools. The Orders are neutral and of general applicability to all schools and do not favor public school over private schools, or secular over religious schools. Therefore, exceptions to the mask rule do not reveal a lack of neutrality by protecting secular activities more than comparable religious activities.  The only exceptions to the mask requirements that apply to a classroom setting are available to all schools equally, like (1) the medical exception, (2) the exception for eating or drinking, and (3) the exception for communicating with someone who is deaf, hard of hearing and whose ability to see the mouth is necessary to communicate. These exceptions do <u>not</u> burden religious activities more than secular activities as they apply equally, regardless of whether the activity is religious or secular in nature.

Further, Defendants have a compelling public interest in the mask requirement. Even in the recent 6th Circuit Cases striking down a complete ban on religious worship, the Court noted that it was only doing so because the state was allowing other gatherings:

> Keep in mind that the Church and its congregants just want to be treated equally. They don't seek to insulate themselves from the Commonwealth's general public health guidelines. They simply wish to incorporate them into their worship services. They are willing to practice social distancing. They are willing to follow any hygiene requirements. They do not ask to share a chalice. The Governor has offered no good reason for refusing to trust the congregants who promise to use care in worship in just the same way it trusts accountants, lawyers, and laundromat workers to do the same. *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020).

In this case, the mask requirement is necessary to protect public health. There is no serious argument that the public interest is not supported by curtailing this pandemic in any reasonable way possible.   As this Court has already found In *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*: "When state actors are faced with 'great dangers' like a pandemic, they may use their police power with great latitude to protect the health and safety of the general public." ___ F. Supp. 3d ___, No. 1:20-CV-458, 2020 WL 3421229, at *4 (W.D. Mich. June 19, 2020) (citing *Jacobson v Commonwealth of Massachusetts,* 197 U.S. 11, 29 (1905)).

Even if Plaintiffs can establish somehow that the two Orders are not neutral and of general applicability, Defendant Vail had a compelling governmental interest in issuing the Order and requiring that masks be worn in <u>all</u> schools. Masks are a simple but effective way to contain or slow the spread of the virus. (See Exhibit B, Affidavit of Linda Vail.) Further, requiring the use of masks in all schools is a narrowly tailored, least restrictive way to control the spread of the virus.   The use of masks allows schools to operate during the pandemic with a significantly reduced risk of spreading the virus.

Contrary to Plaintiffs allegations, children are <u>not immune</u> to COVID and as the school year progresses the infection rate among children has risen significantly. (See Exhibit B, Affidavit of Linda Vail, ¶¶9-12, including supporting attachments.)

Plaintiffs ask this Court to ignore the danger posed by COVID-19 and allow them to operate without the simple precaution of wearing masks in disregard of the health of the students, staff and surrounding community including the most vulnerable. "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 167 (1944).  Defendants Vail and Siemon are entitled to dismissal of Plaintiffs' claim for violation of their right to free exercise of religion.

## V.     Plaintiffs Have Failed to State a Claim for Unlawful Exercise of Authority Under Michigan Law.

Plaintiffs assert that the orders requiring masks for students in Kindergarten through fifth grade are unauthorized by state law.  (ECF No. 1, PageID 24, ¶146.)  The October 4, 2020 local Ingham County Order was issued pursuant to MCL 333.2453. MCL 333.2453(1) provides that:

> If a local health officer determines that control of an epidemic is necessary to protect the public health, the local health officer may issue an emergency order to prohibit the gathering of people for any purpose and may establish procedures to be followed by persons, including a local governmental entity, during the epidemic to insure continuation of essential public health services and enforcement of health laws. Emergency procedures shall not be limited to this code.

Defendant Vail determined that controlling the COVID-19 pandemic is necessary to protect the public health and issued the October 4, 2020 Order. As authorized by statute, she placed restrictions on gatherings and required the use of masks. This Order was found to be necessary by Vail to slow the spread of the virus.  (See Exhibit B, affidavit

21

of Linda Vail.)  Infection rates are rising rapidly and hospitals are at capacity with patients. Preserving the resources needed to treat the sick is necessary to insure the continuation of essential public health services. (See Exhibit B, Affidavit of Linda Vail.)

Plaintiffs cite to MCL 333.1114 and the Michigan Return to Learn Legislation to argue that the Order was unauthorized by law. According to Plaintiffs the Orders constitute an attempt to undo and negate the legislature's delegation of authority to educators over how safety protocols will be observed and implemented.

MCL 333.1114 provides that the Health Code "shall not be construed to vest authority in the department for programs or activities otherwise delegated by state or federal law or rules to another department of state government." In this case, the Orders in question pertain to a public health emergency, and the authority to deal with public health emergencies rests squarely with MDHHS and with local health officers, one of whom is Defendant Vail.

Plaintiffs also rely on the "Return to Learn" legislation to support their position but do not provide a citation for the source they reference. It appears they may be referring to MCL 388.1698a which requires that a learning plan be submitted and approved by the state. It does not address masks or face coverings or other public health or safety protocols.  It also does not delegate to the schools any authority to address public health emergencies.  Plaintiffs reliance on this statute is sorely misplaced.

Plaintiffs also deny that there is an emergency upon which Defendants may act to enforce their Orders.  This argument is completely wrongheaded and wholly without merit. To argue that the COVID-19 pandemic and the deaths and impact on our health care

system and our economy is not a public health emergency is disingenuous and defies reality. (See Exhibit B, Affidavit of Linda Vail.)

Protection of public health is one of the primary purposes of state government. Mich. Constitution, preamble. "The legislature shall pass suitable laws for the protection and promotion of public health." MI Const. art IV, § 51. In compliance with the Michigan Constitution, the Michigan legislature adopted the Public Health Code. The Public Health Code gives authority to and places responsibility squarely on MDHHS, and local Health Departments to take appropriate emergency action to control epidemics. MCL 333.2253 and 333.2453.

Michigan Administrative Rule 325.171 defines an epidemic as "any increase in the number of cases, above and beyond the number of expected cases of any disease, infection or other condition in a specific time period, area or demographic segment of the population." Clearly, the COVID-19 pandemic meets Michigan's definition of an epidemic. The number of cases in Michigan continue to increase dramatically. (See Exhibit A, current MDHHS Order with most recent data, and Exhibit B, Affidavit of Linda Vail.) The Orders are within the scope of both the authority and responsibility of MDHHS and the local health department to take emergency action to control an epidemic.

Plaintiffs have failed to state a claim for unlawful exercise of authority under Michigan Law as to Defendants Vail and Siemon. The Orders were lawfully issued pursuant to the Public Health Code in response to a global pandemic.

## VI. The Orders at Issue are not Based on an Impermissible Delegation of Legislative Authority and Therefore Plaintiffs' Claims Fail.

Plaintiffs claim that the local Ingham County Order and MDHHS Order both violate the Separation of Powers and the Non-delegation Clauses of the Michigan Constitution.

Plaintiffs argue that the Orders are unconstitutional and unenforceable because they are based on an impermissible delegation of legislative authority in violation of the Michigan Constitution. This claim fails as a matter of law.

The Separation of Powers Clause in the Michigan Constitution provides that "the powers of the government are divided into three branches: legislative, executive, and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as provided in this constitution." MI Const. art. III, § 2. Plaintiffs claim that the provisions of the Health Code that Defendants relied upon to issue their Orders, MCL 333.2453 and 333.2253, fail to provide proper standards to properly delegate legislative authority to the executive branch.

A facial challenge to a statute asserts that the law is incapable of any valid application while an as-applied challenge alleges the infringement or denial of a specific right or a particular injury resulting from the government act. *Michigan Alliance for Retired American v. Sec'y of State* , —N.W.2d—, 2020 6122745, at *4 (Mich. Ct. App. Oct. 16, 2020); *see Bruley v. City of Birmingham*, 259 Mich.App. 619, 624-625; 675 N.W.2d 910 (2003) ("An 'as applied' challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution.") (quoting *Paragon Props. Co. v. City of Novi*, 452 Mich. 568, 576-77; 550 N.W.2d 772 (1996)); *IME v. DBS*, 306 Mich.App. 426, 439-40; 857 N.W.2d 667 (2014) (holding that for a facial challenge the moving party must show that there are no set of circumstances under which the statute would be valid). When distinguishing between the two types of challenges, courts consider the relief sought when determining whether the challenge is facial or as-applied. *Id.,* at *5 ("The *Reed* Court declared that the label attached to the claim was not

dispositive; rather, the Court held that the deciding factor was that the relief sought by the plaintiffs would 'reach beyond the particular circumstances of these plaintiffs.'") (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186, 914 (2010)).

The injuries Plaintiffs allegedly suffer, i.e. being forced to require students to wear masks and being required to wear masks, arise not from the statute itself, but from the October 4 and 9 Emergency Orders. This Court in *Libertas Classical Assn. v. Gretchen Whitmer et al*, Case No. 1:20-cv-997, 2020 WL 6498761 (W.D. Mich. 2020), recently considered this very same argument in denying *Libertas*' Motion for a Preliminary Injunction. As this Court reasoned in its Order denying injunctive relief:

> The Michigan Supreme Court summarized the concerns and considerations for a non-delegation challenge in *In re Certified Questions*. *In re Certified Questions*, 2020 WL 5877599, at *12-*18. In that case, the Court considered whether the EPGA violated the separation of powers doctrine. The Court did not consider an as-applied challenge to the statute. Nevertheless, the discussion is helpful. For separation of powers questions, courts consider (1) scope or subject matter, (2) duration, and (3) standards. Id. at *15. **Section 333.2253 authorizes the director of the Michigan Department of Health and Human Services, upon determining that control of an epidemic is necessary to protect public health, (1) to prohibit the gathering of people for any purpose and (2) establish procedures to be followed during the epidemic to insure continuation of essential public health services and enforcement of health laws. Mich. Comp. Laws § 333.2253(1).** (Emphasis added)

Under the Public Health Code, MCL 333.2253 and 333.2453, the Michigan legislature set sufficient limits; namely the prohibition of gatherings "for any purpose" to control an epidemic and "protect public health." The prohibition may have broad implications and effect on normal societal operation, but the prohibition itself is simple to understand. The fact that the legislation also confers authority to the Director to "establish procedures to be followed during the epidemic to insure continuation of essential public health services and enforcement of public health laws" is also not

vulnerable to a constitutional delegation attack, since "[t]he leaving of details of operation and administration" to the executive "is not an objectionable delegation of legislative power." *People v. Babcock*, 343 Mich. 671, 680; 73 N.W.2d 521 (1955); *see also Argo Oil Corp v. Atwood*, 274 Mich. 47, 52; 264 N.W. 285 (1935).

In addressing the Director's powers under MCL 333.2221, the Michigan Supreme Court recognized the connection between the statute and all of the tasks of the state department and its local agencies:

> "See, e.g., MCL 333.2221(1) (charging the Department of Public Health with the responsibility to "continually and diligently endeavor to prevent disease"); see also MCL 333.2221(2)(a) and (d) (giving the department "general supervision of the interests of the health and life of the people of this state" and making it responsible for investigating "[t]he causes of disease and especially of epidemics"); MCL 333.5115 (the department must establish standards for "the discovery and care of an individual having or suspected of having a communicable disease or a serious communicable disease or infection"); MCL 333.5203(1) (the department must issue warnings to individuals with communicable diseases deemed to be "health threat[s] to others"); MCL 333.5205 (those warnings can be enforced in court); MCL 333.5207 (the individuals can be temporarily detained, tested, and treated); MCL 333.9621 (allowing local health departments, state institutions, and physicians to require microbiological examinations in locations "where there is an outbreak of a communicable disease or epidemic requiring the examination or analysis to protect the public health"); MCL 331.202 (allowing counties with a certain population to construct and maintain hospitals for individuals with "contagious and infectious diseases")."
> Justice Viviano Opinion, In re Certified Question, Slip Op. p. 40, fn 15.

The delegation of authority by statute to State Administrative Agency or County also confers "implied powers and duties as are incident and necessary in the performance of their express powers and duties." *Wright v. Bartz*, 339 Mich. 55, 59; 62 N.W.2d 458 (1954); *Fellows v. Michigan Com'n for the Blind*, 305 Mich.App. 289, 298; 854 N.W.2d 482 (2014); see also *Coffman v. State Bd. of Examiners in Optometry*, 331 Mich. 582, 589; 50 N.W.2d 322 (1951); *Ranke v. Michigan Corp. & Sec. Comm.*, 317 Mich. 304, 308;

26 N.W.2d 898 (1947); *Herrick Dist. Library v. Library of Michigan*, 293 Mich.App. 571, 586; 810 N.W.2d 110 (2011).

As set forth in Section IV of this Brief, the legislature has conferred authority to MDHHS and Michigan's local health departments to issue orders to control an epidemic. This authority only exists during an epidemic and expires once the epidemic ceases. This delegation of authority is not open-ended or overly-broad. The mask requirement is not unreasonable or arbitrary as masks have been found to be a very efficient device in slowing the spread of the virus. (See Exhibit B, Affidavit of Linda Vail.) Defendants Vail and Siemon are entitled to dismissal of Plaintiffs' claim of impermissible delegation of legislative authority.

**VII.    Alternatively, this Court Should Decline Supplemental Jurisdiction or Should Abstain from Exercising Jurisdiction over Counts II and III.**

**1.    This Court should decline supplemental jurisdiction over Counts II and III because the claims raise novel and complex issues of state law; the claims substantially predominate over the federal claims; and there are other compelling reasons for declining jurisdiction.**

As discussed above, Plaintiffs allege that the Orders are not authorized by the Michigan Public Health Code and that the Public Health Code is an impermissible delegation of legislative authority. Exercising supplemental jurisdiction over these state law claims would not promote judicial economy, the convenience of the parties, fairness, or comity.  As a result, this Court should dismiss Counts II and III of the Complaint without prejudice.

Although a federal court may exercise supplemental jurisdiction over each claim in an action that shares a "common nucleus of operative facts" with a claim that invokes the court's original jurisdiction, it is discretionary. *United Mine Workers of Am. v. Gibbs*, 383

U.S. 715, 725 (1966).  The federal court need not exercise its authority to invoke supplemental jurisdiction in every case in which it is possible to do so.  *Id.*, at 726. Justification for this doctrine "lies in considerations of judicial economy, convenience, and fairness to litigants."  *Id.*

Therefore, "[i]n deciding whether to exercise supplemental jurisdiction . . . a judge must take into account concerns of comity, judicial economy, convenience, fairness, and the like."  *Senra v. Smithfield*, 715 F.3d 34, 41 (1st Cir. 2013).  If these considerations are not present, "a federal court should hesitate to exercise jurisdiction over state claims." *Gibbs*, 383 U.S. at 726.  Additionally, supplemental jurisdiction may be denied "if the federal claims are dismissed before trial," if "it appears that the state issues subsequently predominate," or "if the likelihood of jury confusion" would be strong without separation of the claims.  *Id.*, at 726-27.

Title 28 U.S.C. §1367 authorizes federal courts to exercise supplemental jurisdiction. A court has the discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. §1367(c) if:

> **(1) the claim raises a novel or complex issue of state law,**
> **(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,**
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> **(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.** (Emphasis added)

Subsections one, two and four are relevant to the present action.

### a.    This Court should decline supplemental jurisdiction over Counts II and III under 28 U.S.C. § 1367(c)(1).

A district court may decline to exercise supplemental jurisdiction pursuant to §1367(c)(1) if "the [state] claim raises a novel or complex issue of state law." 28 U.S.C.

§1367(c)(1).  In deciding whether to exercise supplemental jurisdiction, the "obscurity and the paucity of pertinent state judicial precedent [ ] argue[s] in favor of deferring in favor of the state courts." *Peters v. Cars to Go, Inc.*, 184 F.R.D. 270, 275 (W.D. Mich. Nov. 16, 1998) (quoting *Scott v. Long Island Sav. Bank*, FSB, 937 F.2d 738, 742 (2d Cir.1991)). In this case, there is a paucity of Michigan authority interpreting or applying the Michigan statute challenged by Plaintiffs in Counts II and III of the Complaint.  In fact, it is difficult to find any applicable Michigan precedent regarding the scope or constitutionality of the challenged sections of the Public Health Code.  Additionally, there are no Michigan appellate cases considering whether the Public Health Code is an impermissible delegation of legislative authority.  Moreover, the precise question raised in Count II is currently being litigated in a Michigan Court.  An identical question about the scope of the Public Health Code is being litigated in *Semlow Peak Performance Chiropractic v. Whitmer, et al*, Michigan Court of Claims Case No. 20-206-MZ.  Accordingly, comity considerations favor declining supplemental jurisdiction here.

Clearly, Counts II and III present novel but critical questions of state law which will affect the State far into the future, and federal courts have an "interest in avoiding the unnecessary resolution of state law issues," *Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir. 1996), *see also Doe v. Sundquist*, 106 F.3d 702, 708 (6th Cir. 1997), and this Court should decline supplemental jurisdiction.

**b**.     **This Court should decline supplemental jurisdiction over Counts II and III under 28 U.S.C. § 1367(c)(2).**

A district court may decline to exercise supplemental jurisdiction pursuant to §1367(c)(2) if "the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. §1367(c)(2). Where "the state

issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726-27.  In this case the state law claims present disparate legal theories as to both claims and defenses that are wholly unrelated to the federal claims.

Count II presents pure questions of statutory interpretation under state law, and Count III presents a pure question of constitutionality under the Michigan Constitution. These claims are completely independent from and unrelated to the federal claims.  For these reasons, the state claims would predominate over the §1983 federal claims over which this Court has original jurisdiction. Under the considerations of 28 U.S.C. §1367(c)(2), this Court should not exercise supplemental jurisdiction over Counts I and II and should dismiss without prejudice the state claims.

> c. **This Court should decline supplemental jurisdiction over Counts II and III under 28 U.S.C. § 1367(c)(4).**

Section 1367(c)(4) allows a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a)(4) if, in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. §1367(c)(4). "Congress's use of the word 'other' to modify 'compelling reasons' indicates that what ought to qualify as 'compelling reasons' for declining jurisdiction under subsection (c) (4) should be of the same nature as the reasons that gave rise to the categories listed in subsections (c)(1)-(3)." *Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Once the court decides that there are compelling reasons to decline jurisdiction, the factors that inform this decision usually will demonstrate how the circumstances

confronted are "exceptional." *Id.*, at 1558.  Courts generally accept that "compelling reasons for the purposes of [§ 1367](c)(4) ... should be those that lead a court to conclude that declining jurisdiction best accommodates the values of economy, convenience, fairness and comity." *Id.*, at 1557 (internal citations omitted); see also *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994).

This is not a case where one relatively minor state law claim is brought along with federal causes of action that dominate the matter, nor is it a case where the federal and state causes of action parallel in terms of both elements and expected proofs.  Any advantage that may have been gained by considering all the claims together are outweighed by the novel nature of the questions of the state law presented, the considerations of comity, and deference to the state courts in allowing these monumental questions of state law to be resolved elsewhere.

This Court should not exercise supplemental jurisdiction over Counts II and III and should dismiss without prejudice the state claims.

**2.** **In the alternative to declining supplemental jurisdiction over Counts II and III, this Court should abstain from exercising jurisdiction over Counts II and III.**

This Court should abstain from exercising jurisdiction over Counts II and III.  The Pullman abstention doctrine "acknowledges that federal courts should avoid the unnecessary resolution of federal constitutional issues and that state courts provide the authoritative adjudication questions of state law."  *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 508 (1985) (O'Connor, J. concurring)).  "The equitable considerations of *Pullman* abstention are

typically applied when an unsettled state-law question is best decided by or already pending in state courts." *Hill v. Snyder*, 900 F.3d 260, 265 (6th Cir. 2018).

This Court recently considered the issue of abstention in the case of *Libertas Classical Assn. v. Gretchen Whitmer*, *supra,* in the context of similar, if not identical claims, regarding the Public Health Code and the Michigan Constitution.  After denying Plaintiff's Motion for a Preliminary Injunction this Court determined that abstention from the state law claims was proper.

> The Court also finds that a state court interpretation of the disputed statute generally, and Director Gordon's emergency measures specifically, will avoid the need for a federal constitutional ruling or at least substantially narrow the federal claims in this case.  See *Harris Cty. Comm'rs Court v. Moore* , 420 U.S. 77, 84 (1975).  The Court is aware of at least one challenge to Director Gordon's mandates currently pending in the State courts.  *Semlow Peak Performance Chiropractic v. Whitmer* , No. 20-206-MZ (Mich. Ct. Claims).  In addition, abstention is proper when the dispute involves matters "peculiarly within the province of the local courts."  *Harris Cty.* , 420 U.S. at 83-84.  Under Michigan's Public Health Code, local health departments may bring enforcement actions in the State circuit courts.  See, e.g., Mich. Comp. Laws § 333.5205.  At the enforcement hearing, the State court might conclude that the social distancing requirements and the occupancy limitation standards do not apply to school classrooms, which would obviate the need for this Court to make a constitutional determination.  *Id.*

The same rationale applies to this case.  The sections of the Public Health Code at issue in this case are unsettled areas of Michigan law which are currently being litigated in the Michigan Court of Claims. As such, abstention is proper in this case.

## VIII.  Plaintiffs' Due Process Claims Fail as to Defendants Vail and Siemon.

Plaintiffs claim that their substantive due process rights have been violated by the challenged Orders. According to Plaintiffs, the mask mandates violate their right to privacy in violation of the Fourteenth Amendment and the Michigan Constitution. Plaintiffs argue that the Orders interfere with the liberty of parents to direct the education of their children

by impinging on their fundamental rights and imposing arbitrary distinctions and prohibitions on Plaintiffs. Plaintiffs take issue with the fact that there are certain exemptions to the mask requirements including voting and public worship. As such, Plaintiffs claim that the Orders are not narrowly tailored and do not serve a compelling state interest.

Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment. One is the interest in "independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599–600 & n. 26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education" (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976)). The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters." *Id.,* at 599, 603-04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures).

The touchstone or core of the Due Process Clause is the protection of the individual against arbitrary government action. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). The clause "significantly restricts government action—its core is 'prevent[ing] government from abusing its power, or employing it as an instrument of oppression.' " *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992)). The Due Process Clause thus guarantees procedural fairness and also "protects individual liberty against 'certain

government actions regardless of the fairness of the procedures used to implement them.'" *Collins*, 503 U.S. at 125 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)); see *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). The latter protection has become known as substantive due process. See *Whitney v. California*, 274 U.S. 357, 373 (1927) ("Despite arguments to the contrary which had seemed to me persuasive, it is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure. Thus, all fundamental rights comprised within the term liberty are protected by the federal Constitution from invasion by the states.") (Brandeis, J. concurring) overruled in part by *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

The substantive provision of the Fourteenth Amendment's Due Process Clause "'specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Guertin*, 912 F.3d at 918 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). Over the years, the Supreme Court has struggled to identify the limits of the substantive due process clause. The Court has recognized the consequences of finding violations of substantive due process. "By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action." *Glucksberg*, 521 U.S. at 720. "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are

asked to break new ground in this field." *Collins*, 503 U.S. at 125 (internal citation omitted); see *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 502 (1977) ("Substantive due process has at times been a treacherous field for this Court. There are risks when the judicial branch gives enhanced protection to certain substantive liberties without the guidance of the more specific provisions of the Bill of Rights. As this history of the Lochner era demonstrates, there is reason for concern lest the only limits to such judicial intervention become the predilections of those who happen at the time to be Members of this Court."). The Sixth Circuit has also cautioned that "the list of fundamental rights 'is short'" and that "identifying a new fundamental right subject to the protections of substantive due process is often an 'uphill battle." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (citations omitted).

With this precaution in mind, in *Glucksberg*, Chief Justice William Rehnquist described two considerations in the "established method" for analyzing substantive due process claims. *Glucksberg*, 521 U.S. at 720-21. First, the court must carefully describe the plaintiff's asserted liberty interest. *Id.*; see *Reno v. Flores*, 507 U.S. 292, 302 (1993); *Guertin*, 912 F.3d at 918. Courts accomplish this task by focusing on the allegations in the complaint to determine how plaintiffs describes the interest at stake and how the government allegedly deprived them of that interest. *Collins*, 503 U.S at 125; *Guertin*, 912 F.3d at 918. Second, courts must consider whether the asserted liberty interest is fundamental such that it is "objectively, 'deeply rooted in this Nation's history and tradition.' " *Glucksberg*, 521 U.S. at 721 (quoting *Moore*, 431 U.S. at 503). "Our Nation's history, legal traditions, and practices thus provide the crucial 'guideposts for responsible decision making,' that direct and restrain our exposition of the Due Process Clause." *Id.*

(internal citation omitted). If the government's action deprived the plaintiff of a fundamental liberty interest, courts consider whether the government's action was narrowly tailored to serve a compelling state interest. *Glucksberg*, 521 U.S. at 721 (quoting *Flores*, 507 U.S. at 302). The Supreme Court further requires that any analysis of a substantive due process claim be context specific, distinguishing between legislative and executive acts, *Lewis*, 523 U.S. at 846, as well as administrative, ministerial, and judicial acts, *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476-79 (1983).

As this Court held on page 11 of its June 19, 2020 Opinion in *League of Independent Fitness v. Whitmer*, Case No. 1:20-cv-458, the substantive due process standard is deferential to enforcement of COVID orders:

> Taking this framework and applying it to the case at hand: the Court must uphold Governor Whitmer's orders unless they have "no real or substantial relation" to the public health crisis, or the challenged order is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law.". As evidenced by South Bay, this standard of review is highly deferential to the executive branch. It is not this Court's place to second-guess the executive's pandemic plan, to apply its own policy judgments to that plan, or to use hindsight to craft a "better" plan. Case 1:20-cv-00458-PLM-PJG ECF No. 42 filed 06/19/20 PageID.1116 Page 11 of 17 12 Rather, this Court must uphold the Governor's Executive Orders as long as they are supported by some relation to the public health.

The Affidavit of Linda Vail establishes that the wearing of masks is critical and the uniform mask requirement and gathering limitations are correlated with stopping or at least slowing the spread of the COVID-19 virus. (See Exhibit B.) Further, where students in particular do not social distance and use masks, the contagion spreads. Clearly, the mask requirement is "supported by some relation to the public health."

In this case, neither Defendants Vail or Siemon took any action against Plaintiffs to enforce the Orders. However, requiring students at Resurrection School to wear a

mask cannot be seriously argued to deprive Plaintiffs of a fundamental liberty interest. Further, the distinctions contained in the Orders are not arbitrary, as the same masking requirements apply to <u>all</u> schools and <u>all</u> students equally. Further, stopping the spread of COVID-19 is a compelling governmental interest and requiring the use of masks is a nonintrusive way of doing so. Thus, substantive due process violations cannot be established, and Defendants Vail and Siemon are entitled to dismissal.

## IX. Plaintiffs Have Failed to State a Claim for Violation of Their Equal Protection Rights.

Plaintiffs also claim that Defendants have deprived them of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment and 42 USC §1983. Plaintiffs claim that the Orders deprive them of their fundamental rights and freedoms. Plaintiffs base their claim on the fact that the Orders provide exceptions for other activity and conduct that is similar but not for Plaintiffs' constitutionally protected activities. Plaintiffs claim that the mask requirements "lacks any rational basis, are arbitrary and capricious, have no real or substantial relation to the objectives of the order and are a palpable invasion of rights secured by fundamental law in violation of Equal Protection Clause." (ECF No.1, PageID 28, ¶173.)

Plaintiffs cannot establish a violation of the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall ... deny to any person within its jurisdiction the equal protection of the laws. To state an equal protection claim, a plaintiff must adequately plead that the government <u>treated the plaintiff disparately as compared to similarly situated persons</u> and that such disparate treatment ... burdens a fundamental right, targets a suspect class, or has no rational basis. (Emphasis added.)

*Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir.2011).

"In determining whether individuals are 'similarly situated,' a court should not demand exact correlation, but should instead seek relevant similarity." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) (internal quotation marks omitted).

Plaintiffs have not established that they have been treated disparately from similarly situated persons. Plaintiffs are similarly situated with other schools, students and parents of students. All schools and students are treated the same. They are all required to wear a mask. There is no disparate treatment and Plaintiffs claim for an Equal Protection Clause Violation fails a to Defendants Vail and Siemon.

Plaintiffs also inexplicably claim to be entitled to "nominal damages against Defendant Vail." (ECF No.1 PageID 28, ¶175.) Plaintiffs do not offer any explanation or support for this position. Defendant Vail issued an Order on October 4, 2020 which required the wearing of Masks. Defendant Vail did not receive complaints, investigate or take any form of enforcement action against any Plaintiff before rescinding this Order of her own volition on October 23, 2020. There is no merit to Plaintiffs' claim that they experienced a loss or suffered damages, much less that they are entitled to damages against Defendant Vail.

## X.    Plaintiffs Have Not Stated a Claim for Violation of Their First Amendment Right of Freedom of Speech.

Plaintiffs claim that wearing a mask during this pandemic has become a form of expression. Plaintiffs argue that wearing a mask is a symbol of oppression and governmental tyranny and is "a sign that the wearer is willing to surrender his or her freedom to the government. Plaintiffs oppose this message and thus oppose the requirement to wear a face mask because it conveys this message." (ECF No.1, PageID

29, ¶179.) Plaintiffs additionally argue that they oppose the mask mandate because they claim without source or citation that science and data have shown that wearing a face mask pursuant to the mandate is not medically required or necessary and moreover is actually harmful to the wearer.

Plaintiffs liken the wearing of a mask to compelled speech. The Supreme Court has held, that the constitutional protections of the First Amendment apply not only when government restricts speech, see, e.g., *Reed v. Town of Gilbert*, – U.S. –, 135 S.Ct. 2218, 2226 (2015), but also when it compels speech, see, e.g., *National Institute of Family and Life Advocates, dba NIFLA v. Xavier Becerra, Attorney General of California*, 138 S.Ct. 2361, 2371 (2018). When laws, whether restrictive or compulsive, "target speech based on its communicative content," they generally "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *NIFLA*, 138 S.Ct. at 2371 (quoting *Reed*, 135 S.Ct. at 2226). Such content-based restrictions have been declared unconstitutional in compelled-speech cases such as *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), which struck down a requirement that students salute the United States flag; *Wooley v. Maynard*, 430 U.S. 705 (1977), which invalidated a law requiring a state motto "Live Free or Die" on license plates; and *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), which held that a State could not force parade organizers to include a group that would convey a message contrary to the organizers' views.

Unlike, requiring the display of a state motto, requiring the recitation of the pledge of allegiance or requiring inclusion of a group that would convey a message contrary to

the parade organizers' views, the Orders at issue do <u>not</u> compel any speech at all. Wearing a mask is not a political statement, or any sort of statement or message or symbol at all. It is a safety measure and a simple way to stop the spread of COVID-19. (See Exhibit B, Affidavit of Linda Vail.)  Masks protect the wearer from catching and spreading the virus. (Exhibit B.) Plaintiffs' claim as to Defendants Vail and Siemon fail as a matter of law.

Plaintiffs again claim that they are entitled to nominal damages against Defendant Vail, and again fail to set forth the basis on which they are entitled to damages against Defendant Vail. There is simply put no merit whatsoever to this claim.

## XI.     Plaintiffs Have Failed to State a Claim for Violation of Their Right to Freedom of Association.

Plaintiffs claim that the subject Orders "hinder, prevent, inhibit and interfere with Plaintiffs' right to associate by engaging in religious education, religious fellowship, religious practice and worship and protected speech."

The Orders simply require that masks be worn to prevent the spread of COVID-19.  Plaintiffs are free to engage in all of the above listed things while at Resurrection School, they just need to engage in them while wearing a mask to protect themselves and others.  Defendants Vail and Siemon are entitled to dismissal of the Plaintiffs claim for violation of their right to freedom of association.

Plaintiffs again claim to be entitled to damages as to Defendant Linda Vail without providing any support for this claim.  It is wholly without merit as well.

**CONCLUSION**

Plaintiffs have failed to state a claim against Defendants Vail and Siemon and as a result, Defendants Vail and Siemon are entitled to dismissal of this Complaint.

Respectfully Submitted,

COHL, STOKER & TOSKEY, P.C.

Dated: November 18, 2020          By: /s/ Bonnie G. Toskey
                                      Bonnie G. Toskey (P30601)
                                      Sarah K. Osburn (P55539)
                                      Attorneys for Ingham County Defendants
                                      Linda Vail and Carol Siemon
                                      601 N. Capitol Ave.
                                      Lansing, MI 48933
                                      (517) 372-9000

**CERTIFICATE OF COMPLIANCE**

Bonnie G. Toskey (P30601) certifies, under L.Civ.R. 7.2(b)(1), that this Brief contains 12,062 words, inclusive of headings, footnotes, citations and quotations, as counted by Microsoft Word 365, the word processing software used to create this Brief.

Date:  November 18, 2020          By: /s/ Bonnie G. Toskey
                                      Bonnie G. Toskey  (P30601)