IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RESURRECTION SCHOOL; CHRISTOPHER MIANECKI, individually and as next friend on behalf of his minor children C.M., Z.M., and N.M.; and STEPHANIE SMITH, individually and as next friend on behalf of her minor child F.S., Plaintiffs,<br><br>v.<br><br>ROBERT GORDON, in his official capacity as the Director of the Michigan Department of Health and Human Services; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan; LINDA S. VAIL, in her official capacity as the Health Officer of Ingham County; and CAROL A. SIEMON, in her official capacity as the Ingham County Prosecuting Attorney, Defendants. | No. 20-cv-1016<br><br>Hon. Paul L. Maloney |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) & (6)**

GREAT LAKES JUSTICE CENTER
Erin Elizabeth Mersino (P70886)
5600 W. Mt. Hope Highway
Lansing, Michigan 48917
Tel: (517) 322-3207; Fax: (517) 322-3208
erin@greatlakesjc.org

AMERICAN FREEDOM LAW CENTER
Robert J. Muise, Esq. (P62849)
P.O. Box 131098
Ann Arbor, Michigan 48113
(734) 635-3756
rmuise@americanfreedomlawcenter.org
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

ARGUMENT .........................................................................................................4

I.    Plaintiff's First Amended Complaint States Claims for Relief
that Are Plausible on Their Face..........................................................................4

    A.   Standard of Review ...................................................................................4

    B.   Neither *Twombly* nor *Iqbal* Compels Dismissal of *this* Case...........................5

    C.   *Twombly* Does Not Compel Dismissal of this Case.........................................6

    D.   *Iqbal* Does Not Compel Dismissal of this Case.............................................7

II.    The First Amended Complaint Alleges Plausible Constitutional Violations....... ..8

    A.   Defendants' Order Violates Plaintiffs' Free Exercise of Religion ...............11

        a.   Defendants Show Animus toward Plaintiffs'
Sincerely Held Religious Beliefs ........................................................13

        b.   Defendants' Order is Not Generally Applicable....................................15

        c.   Defendants' Order Fails Strict Scrutiny…………………………………15

    B.   Defendants' Order Violates Substantive Due Process Because
It is Arbitrary and Capricious .......................................................................16

    C.   Defendants' Order Violates the Equal Protection Clause .............................17

    D.   The Pandemic Does Not Empower Defendants to Infringe
upon Fundamental Rights nor Does It Deprive this Court of
Its Duty to Say So…………………………………………………….. ..18

III.    Plaintiffs Sufficiently Pled Their Claims Under Michigan Law ..........................21

    A.  Defendants' Order is Invalid Because Michigan Compiled Laws
§ 333.2253 Does Not Authorize the MDHHS Director to
Control How Children Learn in a Private, Religious Classroom…………….21

i

      B.  To the Extent Michigan Compiled Laws § 333.2253 Authorizes Defendant Gordon to Broadly Reorder Citizens' Daily Lives, It Violates the Nondelegation Clause of the Michigan Constitution ..................23

IV.     The Court Should Hear and Decide this Case .......................................................25

      A.   Standard of Review .........................................................................25

      C.   The Eleventh Amendment Does Not Bar Plaintiffs' Claims.........................25

      D.  The Court Should Not Abstain from Resolving Plaintiffs' Claims................26

      E.  The Court Has Jurisdiction to Hear and Decide this Case .............................27

      F.   Plaintiffs Have Standing....................................................................28

      F.   The Case Is Ripe ..............................................................................29

CONCLUSION.............................................................................................................30

# TABLE OF AUTHORITY

<u>**Cases**</u>

*46th Cir. Trial Ct. v. Crawford Cty.*,
719 N.W.2d 553, 559 (Mich. 2006)……………………………………………….……..22

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)………………………………………………………………….…..29

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937)…………………………………………………………….…………27

*Allen v. Wright*,
468 U.S. 737 (1984)………………………………...…………………………………….29

*Am. Freedom Law Ctr., Inc. v. Nessel*,
No. 1:19-cv-153, 2020 U.S. Dist. LEXIS 60622 (W.D. Mich. Jan. 15, 2020)…………………..25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)……………………………………………...………………….....5, 6

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*,
502 F.3d 545 (6th Cir. 2007)………………………………………………………….....16

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)……………………………………………………………............5, 6

*Belcher v. Ford Motor Co.*,
-- N.W. 2d --, 2020 WL 5580155 (Mich. Ct. App. Sept. 17, 2020)………….……………...21

*Bench Billboard Co. v. City of Cincinnati*,
675 F.3d 974 (6th Cir. 2012)…………………………………………….……………17

*Bible Believers v. Wayne County*,
805 F.3d 228 (6th Cir. 2015)………………………………………………...11, 15, 17

*Bivens v. Six Unknown Federal Narcotics Agents*,
403 U.S. 388 (1971)……………………………………………………..……………….7

*Brang, Inc. v. Liquor Control Comm.*,
320 Mich. App. 652 (2017)……….…………………………………...……………....25

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014)……………………………………………………………...12

*Cady v. Arenac Cty.*,
574 F.3d 334 (6th Cir. 2009)………………………………………………………………………26

*Calvary Chapel Dayton Valley v. Sisolak*,
140 S. Ct. 2603 (2020)…………………………………………………………….….............2

*Cantwell v. Conn.*,
310 U.S. 296 (1940)…………………………………………………………………………...20

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993)…………………………………………………………………......3, 11, 15

*Ctr. for Bio- Ethical Reform, Inc. v. Napolitano*,
648 F.3d 365 (6th Cir. 2011)……………………………………………........................................5

*Danville Christian Acad., Inc. v. Beshear*,
No. 20A96, 2020 WL 7395433 (U.S. Dec. 17, 2020)……………………………………3, 15

*Detroit Pub. Sch. v. Conn*,
308 Mich. App. 234 (2014)…………………………………………………………………21

*Elrod v. Burns*,
427 U.S. 347 (1976)………………………………..……………………………………....26

*Emp't Div., Dep't of Human Resources of Oregon v. Smith*,
494 U.S. 872 (1990)…………………………..…………………………………………........15

*Erickson v. Pardus*,
551 U.S. 89 (2007)…………………………..…………………………………………........5

*Ex parte Young*,
209 U.S. 123 (1908)…………………………………………………………………...…25

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)……………………………………….…………………………...16

*Hoover Investments, Inc. v. City of Charlotte*,
No. 1:04-CV-689, 2005 WL 8172520 (W.D. Mich. Apr. 26, 2005)…………………………26

*Howell v. Sanders*,
668 F.3d 344 (6th Cir. 2012)………………………………………………………………...26

*In re Certified Questions From U.S. District Court, Western District of Michigan, Southern Division*, No. 161492, 2020 WL 5877599 (Mich. Oct. 2, 2020)………………………………...22

*In re Implementing Section 6w of 2016 PA 341 for Cloverland Elec. Coop.*,
329 Mich. App. 163 (2019)…………………………………………………………………21

*In re Reliability Plans of Elec. Utilities for 2017-2021*,
949 N.W.2d 73 (Mich. 2020)…………………………..………………………………21

*Jacobson v. Commonwealth of Massachusetts*,
197 U.S. 11 (1905) …………………………………………………….…..………..*passim*

*Jones v. City of Cincinnati*,
521 F.3d 555 (6th Cir. 2008)……………………………………………………………...8

*Libertas Classical Association v. Whitmer*,
No. 1:20-CV-997, 2020 WL 6498761 (W.D. Mich. Nov. 3, 2020)……………...………………26

*Louisiana Power & Light Co. v. City of Thibodaux*,
360 U.S. 25 (1959)…………………………………………………………………………27

*Meyer v. Nebraska*,
262 U.S. 390 (1923)…………………………..…………………………………………16

*Mich. Rest. & Lodging Ass'n v. Gordon*,
No. 1:20-CV-1104, 2020 WL 7053230 (W.D. Mich. Dec. 2, 2020)…..………………….….…...27

*Mills v. Barnard*,
869 F.3d 473 (6th Cir. 2017)………………………………………………………………4

*Nat'l Rifle Assoc. of Am. v. Magaw*,
132 F.3d 272 (6th Cir. 1997)……………………………………………………………...29

*Nietzke v. Williams*,
490 U.S. 319 (1989)…………………………………………………………………….6

*Ohio Nat'l Life Ins. Co. v. United States*,
922 F.2d 320 (6th Cir. 1990)…………………………………………………………...25

*Opinion of the Justices*,
52 N.E. 2d 974 (1944)……………………………………………………...……………24

*People v. Nyx*,
734 N.W.2d 548 (Mich. 2007)………………………………………………...……22

*People v. Vanderpool*,
-- N.W.2d --, 2020 WL 3967817 (Mich. July 13, 2020) ……………………………...……21

*Phillips v. City of New York*,
775 F.3d 538 (2d Cir. 2015) …………………………………………………………………20

*Pierce v. Society of Sisters*,
268 U. S. 510 (1925)…………………………………………………………………………15

*Roberts v. Neace*,
457 F. Supp. 3d 595 (E.D. Ky. May 4, 2020)……………………..………………………18

*Roberts v. Neace*,
958 F.3d 409 (6th Cir. May 9, 2020)…………………………………………………………..18

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
No. 20A87, 2020 WL 6948354 (U.S. Nov. 25, 2020)………………………..……………..*passim*

*R.R. Comm'n of Tex. v. Pullman Co.*,
312 U.S. 496 (1941)…………………………………………………….……………………26

*Scheuer v. Rhodes*,
416 U.S. 232 (1974)………………………………………………………………………….6

*Semlow Peak Performance Chiropractic v. Whitmer*,
No. 20-206-MZ (Mich. Ct. Claims)……………………………………………………....27

*Soos v. Cuomo*,
470 F. Supp. 3d 268 (N.D.N.Y. June 26, 2020)…………………..…………………………20

*Steffel v. Thompson*,
415 U.S. 452 (1974)…………………………..……………………………………….....29

*Susan B. Anthony List v. Driehaus*,
134 S. Ct. 2334 (2014)………...…………………………………………….……………28

*Thomas v. Review Bd. of Indiana Employment Security Div.*,
450 U.S. 707 (1981)……………………………………………………………..…………12

*Thomas v. Union Carbide Agric. Prod. Co.*,
473 U.S. 568 (1985)…………………………………………………………………...29

*Warth v. Seldin*,
422 U.S. 490 (1975)………………………...……………………………………..………28

*Wayne Cty. v. AFSCME Local 3317*,
325 Mich. App. 614 (2018)…………………………...……………………………………21

*Wisconsin v. Yoder*,
406 U. S. 205 (1972)……………………..……………………………………………….....15

## **Constitutions and Statutes**

U.S. Const. art. III, § 2……………………………………………………………………27

42 U.S.C. § 1983……………………………………………………………………………26

Fed. R. Civ. P. 12(b)…...………………………………………………………*passim*

Fed. R. Civ. P. 15…...…...………………………………………………………………….3

MCL § 333.2253……………………………………………………………..…. *passim*

## INTRODUCTION

Defendants' Motions to Dismiss confirm their disregard for the constitutional rights and religious autonomy of Plaintiffs and affirm their desire to control every aspect of life, even within the private walls of religious institutions.  With apparent resentment, Defendants complain that Plaintiffs "ask to override the judgment of the State's public health experts."  ECF No. 14, Page ID 232.  Defendants ignore that the relief Plaintiffs seek is entirely consistent with CDC and WHO guidelines and would do no harm to public health.  Defendants bang the gong of "science," but then offer none to explain why masks are needed at all times in the classroom, especially when children are distanced from each other, seated at their desks, in a room with state-of-the-art air filtration and robust sanitation and screening measures.[1]  Defendants argue that "[e]xperts agree that being anywhere within six feet of an infected person put[s] an individual at a high risk of contracting the disease." ECF No. 14, Page ID 235.  Plaintiffs, however, do not seek for students to be unmasked in close contact; rather, their request is narrow and poses no danger to public health—and certainly no more than existing exemptions in the MDHHS order.

Defendants argue that ordering all school children to wear masks for the duration of the school day is necessary to combat the spread of COVID-19, and in their next breath say that Michigan's numbers have only risen since altering its kindergarten through fifth grade mask order. Defendants seem to lack the humility to assess whether their "mitigation effort" in this regard is working.  It is not.  In reality, it accomplishes little to nothing.[2]  Defendants' exhibits, *see* ECF

---

[1] Defendants have never offered any explanation for changing their kindergarten through fifth grade mask policy.  In late September, when Defendants decided it was "necessary" to change their previous order case counts in schools, particularly in the younger grades remained extremely low.

[2] The numbers, if anything, suggest the opposite of Defendants' assertions: case counts were steadily low both in schools and in the community in August and September and only began to rise after the MDHHS order was expanded to require masks of kindergartners through fifth graders.

No. 14, Exs. 1-23, show that this measure is not actually supported by science.  Defendants should not be permitted to violate Plaintiffs' constitutional rights of religious freedom or to direct the education of their children on such flimsy grounds.  It is imperative to both actually hold Defendants to their burden of proof and to ask: at what cost must Defendants' order be implemented?  Surely, the loss of our constitutional freedoms is too high a cost.  As Justice Alito recently explained, "As more medical and scientific evidence becomes available, and as States have time to craft policies in light of that evidence, courts should expect policies that more carefully account for constitutional rights." *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2605 (2020) (J. Alito, dissenting).

Contrary to the swell of Defendants' urgings, it is the proper role of the Court to fully adjudicate claims where, as here, Plaintiffs have sufficiently pled legally cognizable claims questioning the overreach of the executive branch.  Plaintiffs respectfully submit this opposition to Defendants motion to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  For the reasons that follow, and those also argued in Plaintiff's Motion and Reply in Support of their Motion for Temporary Restraining Order and Preliminary Injunction, this Court should deny the motion.

## BACKGROUND

Plaintiffs filed their complaint on October 22, 2020.  ECF No. 1.  On October 27, 2020, Plaintiffs motioned for an emergency temporary restraining order and preliminary injunction to protect their constitutional rights while in the classroom of their religious school.  ECF No. 7 & 8. This Court denied Plaintiffs' motion for a temporary restraining order on October 30, 2020.  ECF No. 11.  On November 18, 2020, Defendants Gordon and Nessel filed a motion to dismiss, and Defendants Vail and Siemon filed a separate motion to dismiss.  ECF Nos. 13, 14, 15, & 16.  On

November 25, 2020, Defendants filed separate responses to Plaintiffs motions for preliminary injunction. ECF Nos. 18, 19, & 20. In those filings, Defendants largely relied on their Motions to Dismiss for its factual basis, exhibits, and primary legal arguments. *See* ECF Nos. 18, 19, & 20.

Pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiffs responded to this motion by amending their complaint. ECF No. 21. This Court ordered for a response to the Defendants' motions to dismiss pursuant to Rule 15(a)(3). ECF No. 23. This Court denied Plaintiffs' Motion for a Preliminary Injunction on December 16, 2020, and Plaintiffs appealed to the United States Sixth Circuit Court of Appeals on December 18, 2020. ECF Nos. 24 & 25. Due to the repetitive nature of the arguments in Defendants' Motions to Dismiss and Response to Plaintiffs' Motion for Preliminary Injunction, Plaintiffs incorporate by reference the arguments contained in ECF Nos. 7, 8, & 22 and largely repeat the same opposition.

Plaintiffs, however, highlight two relevant matters. First, Plaintiffs' First Amended Complaint challenges Defendants' enforcement and enactment of orders requiring young children in grades kindergarten through fifth grade to wear a mask while socially distanced from one another and while seated in the classroom. Defendants have routinely issued order after order. The most current order is attached as Exhibit 1 to this Opposition. It is expected Defendants will continue to issue orders every few weeks for the next several months and that the issuance of the orders by Director Gordon will not moot Plaintiffs' claims because the infringement on Plaintiffs' constitutional freedom, given Defendants' position, will remain the same without court intervention. *See, e.g.*, *Danville Christian Acad., Inc. v. Beshear*, No. 20A96, 2020 WL 7395433, at *2 (U.S. Dec. 17, 2020) (Gorsuch, J., dissenting) ("the Constitution cannot be evaded merely by multiplying the decrees.") (citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 539–540 (1993)); *see also Roman Catholic Diocese v. Cuomo*, 208 L.Ed.2d 206, 210 (U.S. 2020)

(concluding that the challenge to the COVID-19 order was not moot despite reclassification of areas and thus a change in the restrictions, stating that "injunctive relief is still called for because the applicants remain under a constant threat that the area in question will be reclassified as red or orange" and thus again be subject to restrictions).

Second, the standard for a sufficient pleading under Rule 12 (b)(6) is low and dissimilar from the preliminary injunction standard.  So while this Court denied Plaintiffs' Motion for Preliminary Injunction, it should not dismiss Plaintiffs' entire case for failure to state plausible and sufficient claims.

## ARGUMENT

Defendants ask this Court to dismiss Plaintiff's First Amended Complaint.  Defendants challenge this Court's jurisdiction to hear this case pursuant to Rule 12(b)(1) and test the legal sufficiency of the complaint under Rule 12(b)(6).  This Court should reject Defendants' arguments and deny their motions.

While jurisdiction is a threshold issue that must be resolved before reaching the merits on any claim, Plaintiffs will first address Defendants' arguments under Rule 12(b)(6) since these arguments will further demonstrate and establish the appropriate context for why this Court has jurisdiction to resolve this case and why declaratory and injunctive relief are the appropriate remedies.  We turn now to Defendants' arguments under Rule 12(b)(6).

**I.    Plaintiff's First Amended Complaint States Claims for Relief that Are Plausible on Their Face.**

**A.  Standard of Review.**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a claim for relief that is "plausible on its face" and, when accepted as true, are sufficient to "raise a right to relief above the speculative level." *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017)

(citation omitted).  "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Ctr. for Bio- Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007)).  When reviewing Defendants' motions under Rule 12(b)(6), the Court must construe the First Amended Complaint in the light most favorable to Plaintiffs, accept its factual allegations as true, and draw all reasonable inferences in Plaintiffs' favor.  *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008).

### B.  Neither *Twombly* nor *Iqbal* Compels Dismissal of *this* Case.

In their motions, Defendants rely on *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), but this reliance is unavailing.  These cases, individually or in combination, do not bury every constitutional violation that comes their way.

And more fundamentally, they do not create a "heightened" pleading standard under the Federal Rules since that "can only be accomplished by the process of amending the Federal Rules, and not by judicial interpretation."  *Twombly*, 550 U.S. at 569, n. 14 (internal quotations omitted).  Indeed, the Court in *Twombly* stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

In *Erickson v. Pardus*, 551 U.S. 89 (2007), a case decided shortly after *Twombly*, the Supreme Court reversed a dismissal granted under Rule 12(b)(6).  In doing so, the Court reemphasized the liberal Rule 8 pleading standard, which "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Id*. at 93.  Furthermore, the Court stated, "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Id.*  (quoting *Twombly*, 550

U.S. at 555).  Upon application of this standard, the Court held that it was error for the Court of Appeals to conclude that the allegations were "too conclusory" for pleading purposes.  *Id*. at 94.

In sum, the liberal Rule 8 pleading standard described in *Erickson* is the standard that governs in this case.

### C.  *Twombly* Does Not Compel Dismissal of this Case.

*Twombly* presented "the antecedent question of what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act."  *Twombly*, 550 U.S. at 554-55.  Thus, in the context of a Rule 12(b)(6) motion to dismiss, the Court was deciding what a plaintiff must plead to properly state a claim under the Sherman Act's restraint of trade provision.  In doing so, the Court reemphasized the liberal Rule 8 pleading standard and noted that while a complaint challenged under Rule 12(b)(6):

> does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly,* 550 U.S. at 555 (internal punctuation and citations omitted).  The Court cited with approval *Nietzke v. Williams*, 490 U.S. 319, 327 (1989), which stated that "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations," and *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), which stated that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely."

As the Court noted in *Twombly*, stating a claim under the restraint of trade provision of the Sherman Act requires a complaint with enough factual matter, taken as true, to suggest that an *agreement* was made.  *Twombly,* 550 U.S. at 556.  An allegation of parallel business conduct and a bald assertion of conspiracy are not sufficient to state a claim under this provision of the Act.  *Id*.

The Court observed that parallel business conduct, without more, does not suggest a conspiracy, and a conclusory allegation of agreement at some unidentified point in time does not supply facts adequate to show illegality.  *Id*. at 556-57.

Needless to say, Plaintiffs have not advanced a restraint of trade claim under the Sherman Act, nor have they advanced a conspiracy claim requiring some factual evidence of an agreement. *Twombly* does not compel a dismissal of the First Amended Complaint in this case.

### D. *Iqbal* **Does Not Compel Dismissal of this Case.**

In *Iqbal*, the plaintiff sought *damages* against high-ranking officials in their *individual* capacities pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), which creates an implied private cause of action for *damages* against federal officers.  As the Court noted, "The factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue." *Iqbal,* 556 U.S. at 676.

The constitutional claim at issue in *Iqbal* was for discrimination based on the suspect classifications of race, religion, and national origin.  *Id*. at 677.  As the Court noted, in order to recover *damages* for a claim based on *invidious discrimination*, the plaintiff must plead and prove that *each* individual defendant acted with a discriminatory purpose.  *Id*. at 676-77.  The plaintiff's claim for civil *damages* against former Attorney General John Ashcroft and FBI Director Robert Mueller, however, was based on conclusory allegations devoid of any factual basis demonstrating that it was even remotely plausible that these high-ranking officials were *personally* liable for the alleged discrimination.  *Id*. at 680-84.  Consequently, the Court dismissed the complaint, stating, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Accordingly, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.  Because the plaintiff only provided conclusory allegations with no facts demonstrating that either the former Attorney General or the FBI Director, *as individuals*, acted with a discriminatory purpose, the complaint failed to meet the minimal pleading standard of Rule 8 to support a claim for *damages* against these high-ranking government officials.

Unlike *Iqbal*, Plaintiffs are not seeking to hold any government official personally liable for damages under a *Bivens* cause of action.  Rather, Plaintiffs are seeking declaratory and injunctive relief against certain government officials who are responsible in their *official capacities* for creating, implementing, and/or enforcing the challenged policy.  More fundamentally, Plaintiffs do not rely on "threadbare recitals" and "mere conclusory statements" to support their claims.  Rather, the First Amended Complaint alleges many detailed and specific facts, which must be accepted as true, *along with every reasonable inference*, even if the Court or Defendants do not believe them to be true.  *See Nietzke,* 490 U.S. at 327.

In the final analysis, the pleading sets forth sufficient facts to give Defendants fair notice of what the claims are and the grounds upon which they rest, as required by the Federal Rules.  We turn now to the substantive claims.

## II.  The First Amended Complaint Alleges Plausible Constitutional Violations.

Petitioners' factual assertions and legal arguments are well supported in their First Amended Complaint and should not be dismissed.

Defendants attached exhibits and ask this Court to take judicial notice of disputed facts.  This is incorrect for at least two reasons.  First, it is an improper use of Rule 12(b)(6)—a rule which requires the Court to draw all reasonable inferences in favor of Plaintiffs.  *Jones*, 521 F.3d.

at 559.  Second, Defendants' exhibits do not reasonably provide a proper factual or scientific basis for why kindergarten through fifth grade students should wear masks at all times while socially distanced at their desks in the classroom.  In other words, the exhibits are not relevant to the specific issues of this case.

Defendants Gordon and Nessel claim to provide scientific support for their order, but what Defendants provide is surprisingly unconvincing and inapplicable.  Exhibit 1 references two adult masking studies, one of health care workers who work in a health care system and the other pertaining to hairstylists and the use of masks during close contact.  Exhibit 3 references the WHO, but the WHO does not support forced masking on children.  Exhibit 4 promotes social distancing and states "[m]asks are especially important in times when physical distancing is difficult." Exhibit 4 does not explain the scientific need for masks when physical distancing is possible. Exhibit 5 discusses asymptomatic versus symptomatic cases and is not helpful.  Exhibit 6 does not discuss masks but promotes social distancing as effective mitigation.  Exhibit 7 generally discusses social distancing and masks but provides no elucidation regarding a private classroom setting or the scientific benefit of masks for children or the need for them when the children are socially distanced.  Exhibit 8 explores long-range aerosol transmission in crowded or poorly ventilated spaced.  This is unhelpful as the classrooms at Resurrection School are not crowded nor poorly ventilated.  The school is equipped with UV-C lights and air filtration that kill airborne contaminants.  Exhibit 9 is a partial abstract with no study attached.  From the partial abstract, there is nothing to indicate that this study relates to the efficacy of masking children who are socially distanced.  Exhibit 10 is a repeat of the hairstylist study contained in Exhibit 1 and discusses masking at close range.  The exhibit repeats a quotation of CDC Director Dr. Robert Redfield.  The CDC does not force children who are socially distanced in the classroom to wear

masks.  Exhibit 11 is the CDC website, and it states, "Masks should not be worn by Children younger than 2 years old, anyone who has trouble breathing, anyone who is unconscious, incapacitated or otherwise unable to remove the mask without assistance.  Wearing masks may be difficult for some people with sensory, cognitive, or behavioral issues.  If they are unable to wear a mask properly or cannot tolerate a mask, *they should not wear one*, and adaptations and alternatives should be considered." (emphasis added).  Exhibit 12 addresses public settings and fails to provide any scientific support for requiring masks when social distancing is possible.  Exhibit 13 contains the beginning of an article and the option to sign in or sign up to the news outlet.  However, from the one sentence included in the exhibit, it suggests that the article discusses the use of masks when in close contact with others, not when social distancing is possible.

Exhibit 14 discusses many variables, but nothing about children or the need for masking outside of close contact.  Exhibit 14 also states "[m]asks alone . . . may have only a small effect."  Exhibit 15 discusses studies concluding that "evidence is not sufficiently strong to support the widespread use of facemasks as a protective measure against covid-19."  Exhibit 15 sets forth the "precautionary principle" that "sometimes [we should] act without definitive evidence, just in case."  The author then advocates for the use of face masks without evidence that they are "just in case."

Exhibit 16 reports conflicting studies, including several studies that found masks provided no difference in the prevention of flu-like illnesses.  Exhibit 16 ends with the conclusion: "More evidences are still needed to better clarify the effectiveness of masking in various circumstances."  Exhibit 17 recognizes that "appropriate and consistent use of masks may be challenging for some students. . . including: Younger students, such as those in early elementary school."

Exhibit 17 also reflects the CDC's position that students seated six feet apart in the classroom are not required to wear masks, but that "masks may be considered."  Exhibit 18 is again from the CDC, discussing children and masks, but again the CDC does not require children to wear masks in the classroom when socially distanced.  Exhibit 19 discusses the long-term effect of COVID but does not address a scientific basis for a children's mask mandate for socially distanced children.

In short, Defendants prove in nineteen exhibits what could be said in one sentence: Defendants do not have a scientific basis for the challenged aspect of the order.

The data provided by Defendant Vail is similarly inapposite to the facts of this case.  Many of the hyperlinks provided by Defendant Vail no longer work.  Of the hyperlinks that do work, the information is scant.  Defendant Vail points to an article containing a tweet from Dr. Redfield. https://www.cbsnews.com/news/covid-face-mask-protection-vaccine-cdc-director/  (last visited Dec. 9, 2020).  The tweet appears to be a repeat of a quote from Exhibit 10 with no supporting evidence.  A couple of the studies address masking in the healthcare setting "when social distancing is not possible."   https://jamanetwork.com/journals/jama/fullarticle/2768532 (last visited Dec. 9, 2020).   The scant evidence submitted by Defendants fails to provide the necessary basis for imposing the restrictions at issue here.  Further, none of these ultra vires exhibits, attached to Defendants' motions to dismiss, may properly be considered by the Court when asking for a dismissal on the pleadings for failure to state a claim.

### A.   Defendants' Order Violates Plaintiffs' Free Exercise of Religion.

"The principle that government may not enact laws that suppress religious belief or practice is . . . well understood."  *Lukumi*, 508 U.S. at 523.  In *Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015), the en banc court stated:

> The right to free exercise of religion includes the right to engage in conduct that is motivated by the religious beliefs held by the individual asserting the claim. . . . The government cannot prohibit an individual from engaging in religious conduct that is protected by the First Amendment. . . .

*Id*. at 255-56.  Here, the challenged order interferes with Plaintiffs' religious conduct of receiving a Catholic Education, enriched with Plaintiff Resurrection School's disciplinary policies and virtue curriculum.  The order interferes with the school's lessons, requiring Plaintiffs to reorder what they must teach (mandated masking requirements) and the value to which it should place on those lessons (a high value as it is criminal not to wear the masks).  Defendants argue that their order does not violate Plaintiffs' sincerely held religious beliefs.  But Plaintiffs, not Defendants, are the judges of that.

In *Thomas v. Review Board of Indiana Employment Security Division,* 450 U.S. 707 (1981), the Supreme Court considered the conscientious objection of a young Jehovah Witness who worked in a foundry.  *Id*. at 710.  Thomas' employers transferred him to work making turrets that would eventually become part of a tank.  *Id*.  Thomas refused to be complicit in work he found morally objectionable and lost his job.  *Id*.  Thomas was denied unemployment benefits and sued.  The Court held that Thomas's right to free exercise of religion was violated.  The Court held that "it is not for us to say that the line he drew was an unreasonable one."  *Id*. at 715.  And the Court further noted: "Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith.  Courts are not arbiters of scriptural interpretation."  *Id.* at 716.

A few terms ago, the Supreme Court examined whether the government's interest in ensuring public health allowed it to mandate that employers provide and facilitate access to "emergency contraception" for its employee, when doing so violated the employers' religious beliefs.  *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682, 726 (2014).  The Court found that

requiring the employer to violate his religious conscience or face penalties and fines from the government imposed a substantial burden on the employer's free exercise of religion.  *Id.* at 728.

Here, Plaintiffs' sincerely held religious beliefs call them to provide and to receive religious educations in accordance with their Catholic beliefs.  Plaintiffs cannot achieve this goal by re-focusing the goals of the classroom, navigating the disruptions caused to the young children caused by masks, or by being complicit in forcing young children to wear masks when it is negatively affecting their ability to receive their education or otherwise flourish in the classroom. Plaintiff Resurrection school objects to forcing young children to wear masks when the child is socially distanced, seated at his/her desk, and not posing harm to anyone.  *See, e.g.*, ECF No. 21, Page ID 642-44 at ¶¶ 24-35.  Plaintiffs Smith and Mianecki object to the order and its infringement of their rights as parents.  *See, e.g.*, ECF No. 21, Page ID 642, 644 at ¶¶ 25, 33-35, 40-42. Defendants' order penalizes and criminalizes this exercise of conscience.  *See, e.g.*, ECF No. 21, Page ID 650-59 at ¶¶ 84-132.  Indeed, as a direct result of the mask mandate, Plaintiff Smith is unable to send her child to Catholic school and is thus being deprived of her rights guaranteed by the First Amendment.  ECF No. 21, Page ID 644-45 at ¶¶ 43-54.

### a. Defendants Show Animus toward Plaintiffs' Sincerely Held Religious Beliefs.

Defendants express a comprehensive misunderstanding and prejudice for Plaintiffs' religious beliefs.  Defendants' motions to dismiss notably begin with an attempt to tar Plaintiffs' reputations.  Defendants Gordon and Nessel villainize and misrepresent Plaintiffs' religious beliefs, characterizing their sincerely held Catholic faith as "a worldview—thoroughly rebutted by scientific study" that "turns a blind eye to the immeasurable suffering imposed on all of our friends, family, and neighbors, particularly the elderly and the vulnerable."  ECF No. 14, Page ID 231. And while those two Defendants condemn Plaintiffs, the next two Defendants, Vail and Siemon,

mock them, commenting that Plaintiffs do not seem to have objections to using eyeglasses to see or to wearing hats or scarves in cold weather.  ECF No. 16, Page ID 488.  Of course, Defendants are not presently forcing Plaintiffs to wear eye glasses under threat of criminal and civil penalties, nor are they presently requiring Plaintiffs to wear hats and scarves at all times regardless of temperature (which would be the equivalent to forcing children to wear masks at all times during the school day regardless of socially distancing).[3]

Defendants' order expresses animus toward religious schools.  The order allows religious worship amongst the general population without masks and without social distancing but would penalize Plaintiffs for the same.  The order allows athletes to play sports without masks but would penalize Plaintiffs for the same.  The order allows speakers to present to an audience six feet away but disallows school children the ability to learn and participate in the classroom without a mask at the same distance.  The order may address public venues, but Plaintiff Resurrection School is private.  It disallows any visitors to the school, and it operates under strict screening and sanitation protocol.  The school uses a state-of-the-art air purifier and UV-C lights, and it fogs with a microbial fogger three times a day.  The classroom is a controlled and private setting.  There is no reason to require these children, seated at their desks and socially distanced, to wear masks for the entire duration of the school day.  Defendants fail to articulate a basis for disrupting Catholic education under the facts pled by Plaintiffs in their First Amended Complaint but allowing the children and members of the public to engage with each other for purposes other than religious education.

---

[3] The CDC reports that thousands of people die each year due to cold-related deaths, including 0.2 children per 1 million in the five to fourteen-year-old age range, making the mortality rate of cold weather close to the mortality rate of school-aged children from COVID-19. https://www.cdc.gov/nchs/data/nhsr/nhsr076.pdf, *last visited* Dec. 23, 2020; ECF No. 21, Page ID 651-52 ¶ 94.

### b. Defendants' Order is Not Generally Applicable.

Due to the numerous exceptions, the challenged restriction fails this highest level of scrutiny. *See Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 547 ("It is established in our strict scrutiny jurisprudence that a law cannot be regarded as protecting an interest 'of the highest order' . . . when it leaves appreciable damage to that supposedly vital interest unprohibited.") (internal quotations and citation omitted). As pled in Plaintiffs' First Amended Complaint, Defendants' order provides numerous exemptions from the mask mandate, such as giving a secular speech six feet away from the audience, participating in school sports, engaging in religious worship at a house of worship, voting, etc. Participating in Catholic education is at least as important and furthers no greater harm. Indeed, due to Plaintiffs' vigilant safety precautions, the relief Plaintiffs' seek is far safer than the exemptions allowed by Defendants.

### c. Defendants' Order Fails Strict Scrutiny.

Even if this Court were to deem Defendants' order generally applicable, Plaintiffs' free exercise claim as pled in their First Amended Complaint requires heightened scrutiny because "'application of a neutral, generally applicable law to religiously motivated action" also implicates 'the right of parents' 'to direct the education of their children.'" *Danville Christian Acad., Inc. v. Beshear*, No. 20A96, 2020 WL 7395433, at *1 (U.S. Dec. 17, 2020) (citing *Emp't Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 881 (1990); *Pierce v. Society of Sisters*, 268 U. S. 510 (1925); *Wisconsin v. Yoder*, 406 U. S. 205 (1972)). Plaintiffs' Amended Complaint sufficiently pleads this hybrid claim. *See* ECF No. 21, Page ID 642, 644, 651 at ¶¶ 25, 33-35, 40-42, 144-47. Defendants' order is not narrowly tailored, it does not use the least restrictive means, and, therefore, it violates Plaintiffs' right to religious exercise. For this reason and those previously

- 15 -

addressed in Plaintiffs' Motion, Brief, and Reply in Support of a Preliminary Injunction, ECF Nos.

7, 8, and 22, Plaintiffs' free exercise claim should not be dismissed.

**B.   Defendants' Order Violates Substantive Due Process Because It Is Arbitrary and Irrational.**

In *Meyer v. Nebraska*, 262 U.S. 390 (1923), the Court addressed the question of "whether

the statute as construed and applied unreasonably infringes the liberty guaranteed to the plaintiff

in error by the Fourteenth Amendment." *Id.* at 399. As stated by the Court:

> While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. . . . *established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect. Determination by the legislature of what constitutes proper exercise of police power is not final or conclusive but is subject to supervision by the courts.*

*Id.* at 399-400 (emphasis added).

The Supreme Court has warned that "if arbitrary and discriminatory enforcement is to be

prevented, laws must provide explicit standards for those who apply them." *Grayned v. City of*

*Rockford*, 408 U.S. 104, 108-09 (1972). Otherwise, the law "impermissibly delegates basic policy

matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis." *Id.*

Furthermore, if the law at issue interferes with constitutional rights, the court will apply a more

stringent test. *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir.

2007). Defendants' order lacks any rational basis and, in fact, is arbitrary and capricious.

Defendants assert that this order is needed because their "scientific data" proves that k-5 students

should be masked at all times in school, even when socially distanced. But the data upon which

they rely has no rational or substantive relationship to this overburdensome order drawn with arbitrary lines. And worse, the challenged order carries with it criminal penalties. Defendants' order is constitutionally unsound and violates Plaintiffs' fundamental right to due process. Plaintiff's substantive due process claim should not be dismissed.

### C. Defendants' Order Violates the Equal Protection Clause.

When the government treats an individual disparately "as compared to similarly situated persons and that such disparate treatment . . . *burdens a fundamental right*, targets a suspect class, or *has no rational basis*," such treatment violates the equal protection guarantee of the Fourteenth Amendment. *Bible Believer,* 805 F.3d at 256 (internal quotations and citation omitted) (emphasis added). "In determining whether individuals are 'similarly situated,' a court should not demand exact correlation, but should instead seek relevant similarity." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) (internal quotation marks omitted).

As set forth above, the challenged measures burden fundamental rights under the First Amendment (free exercise of religion) in violation of the equal protection guarantee of the Fourteenth Amendment. The challenged order disallows religious students from removing masks while six feet from another person, but allows a person giving a speech to an audience to remove his/her mask. The order carries no penalty for removing a mask to engage in religious worship in a house of worship but disallows the same removal of a mask to engage in religious worship or religious education in the classroom. The order allows for people to remove their masks at voting poll sites, many located at schools, but disallows Plaintiffs from removing their masks, also at a school, for religious purposes. The Equal Protection Clause does not permit such disparate and irrational treatment that burdens Plaintiffs' fundamental rights. The challenged order lacks any

rational basis and harm  Plaintiffs' protected interests in violation of the Equal Protection Clause of the Fourteenth Amendment.  The Court should not dismiss this claim.

### D.  The Pandemic Does Not Empower Defendants to Infringe upon Fundamental Rights nor Does It Deprive this Court of Its Duty to Say So.

Neither *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), nor this current pandemic prevents this Court from declaring the challenged measures unlawful and enjoining their enforcement—now and in the future.  As recently stated by the Sixth Circuit, "While the law may take periodic naps during a pandemic, we will not let it sleep through one."  *Roberts v. Neace*, 958 F.3d 409, 414-15 (6th Cir. May 9, 2020) (granting a preliminary injunction under the First Amendment and enjoining the enforcement of Kentucky's ban on "mass gatherings" during the current pandemic as applied to in-person church attendances).

"[T]he pandemic now pervading the nation must be dealt with."  *Roberts v. Neace*, 457 F. Supp. 3d 595, 603 (E.D. Ky. May 4, 2020).  This, however, must only be accomplished, "without violating the public's constitutional rights."  *Id*.  The fundamental liberties guaranteed by the Constitution contain no pandemic exception.  *Jacobson* does not provide one.  The Sixth Circuit has affirmed this point.  *See Roberts*, 958 F.3d at 409 (granting injunction to enjoin the Kentucky governor's restriction on the free exercise of religion during the current pandemic).  Indeed, *Jacobson* affirms the crucially important role of the judiciary (this Court) to ensure that such an exception *never* exits.  Per the Supreme Court: "[I]f a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."  *Jacobson*, 197 U.S. at 31.

Moreover, Justice Gorsuch put to rest the overreliance on *Jacobson* during this current pandemic, stating, "*Jacobson* didn't seek to depart from normal legal rules during a pandemic, and it supplies no precedent for doing so." *Roman Catholic Diocese v. Cuomo*, 208 L.Ed.2d 206, 213 (U.S. 2020) (Gorsuch, J., concurring).  He concludes with a sober warning:

> Why have some mistaken this Court's modest decision in *Jacobson* for a towering authority that overshadows the Constitution during a pandemic?  In the end, I can only surmise that much of the answer lies in a particular judicial impulse to stay out of the way in times of crisis.  But if that impulse may be understandable or even admirable in other circumstances, we may not shelter in place when the Constitution is under attack.  Things never go well when we do.

*Id.* at 214.

In *Jacobson*, amid a smallpox outbreak, a city (acting pursuant to a state statute) mandated the vaccination of all of its citizens.  The Supreme Court upheld the statute against a Fourteenth Amendment challenge, clarifying that the State's action was a lawful exercise of its police powers and noting that, "[u]pon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27.  While the Court in *Jacobson* urges deferential review in times of emergency, it clearly demands that the courts enforce the Constitution. *See id.* at 28. Indeed, the Court explicitly contemplates an important and essential backstop role for the judiciary. *See id.* at 30 (acknowledging that during a public health crisis the courts have the "duty" to "give effect to the Constitution").

Under *Jacobson*, therefore, a State's emergency response can still be unlawful if it impinges on a fundamental right in a "plain, palpable" way or has "no real or substantial relation" to the public safety concerns at issue. *Id.* at 31.  Accordingly, per *Jacobson*, requiring a vaccination for a disease that is the *source* of the public emergency is directly related to the government's public safety concerns.  The same is not true of the challenged order at issue here.

Moreover, nothing in *Jacobson* supports the view that an emergency *displaces* normal constitutional standards.  This was recently confirmed by the Supreme Court.  *See Roman Catholic Diocese*, 208 L.Ed.2d at 213 ("*Jacobson* didn't seek to depart from normal legal rules during a pandemic, and it supplies no precedent for doing so.  Instead, *Jacobson* applied what would become the traditional legal test associated with the right at issue—exactly what the Court does today.") (Gorsuch, J., concurring).  Rather, *Jacobson* provides that an emergency may justify temporary constraints *within* those standards.  As the Second Circuit observed, *Jacobson* merely rejected what would now be called a "substantive due process" challenge to a compulsory vaccination requirement, holding that such a mandate "was within the State's police power." *Phillips v. City of New York*, 775 F.3d 538, 542-43 (2d Cir. 2015) (observing that "*Jacobson* did not address the free exercise of religion because, at the time it was decided, the Free Exercise Clause of the First Amendment had not yet been held to bind the states") (citing *Cantwell v. Conn.*, 310 U.S. 296, 303 (1940)).  *Jacobson* does not give license to government officials to broadly suspend the Constitution during a public health crisis.  The Sixth Circuit affirms this point.  *See Roberts*, 958 F.3d at 414 (acknowledging *Jacobson*, applying a traditional free exercise analysis in a challenge to the Kentucky governor's executive order issued during the pandemic, and enjoining the challenged provision); *see generally Soos v. Cuomo*, 470 F. Supp. 3d 268, 290 (N.D.N.Y. June 26, 2020) ("As the Chief Justice recognized in *Newsom*, it is not the judiciary's role to second guess the likes of Governor Cuomo or Mayor de Blasio when it comes to decisions they make in such troubling times, that is, *until those decisions result in the curtailment of fundamental rights without compelling justification*.") (emphasis added).

Defendants have not narrowly limited their K-5 mask mandate based on a real threat. Instead, Defendants impose overly broad and universal restrictions that are *not* tied to the facts.

III.   **Plaintiffs Sufficiently Pled Their Claims Under Michigan Law.**

A.   **Defendants' Order is Invalid Because Michigan Compiled Laws § 333.2253 Does Not Authorize the MDHHS Director to Control How Children Learn in a Private, Religious Classroom.**

Defendants' order exceeds the MDHHS Director's authority under MCL § 333.2253. "Administrative agencies are creatures of the Legislature, and their authority is governed by statute; there are no common-law agency powers." *Wayne Cty. v. AFSCME Local 3317*, 325 Mich. App. 614, 636 (2018).  For an agency to have power to act, the Legislature must have granted the agency that authority with "clear and unmistakable statutory language." *Detroit Pub. Sch. v. Conn*, 308 Mich. App. 234, 243 (2014) (citation omitted).  "[P]owers specifically conferred on an agency cannot be extended by inference; no other or greater power was given than that specified." *In re Implementing Section 6w of 2016 PA 341 for Cloverland Elec. Coop.*, 329 Mich. App. 163, 177 (2019) (citation omitted).  Thus, "[w]hat authority a statute gives an agency is a matter of statutory interpretation." *In re Reliability Plans of Elec. Utilities for 2017-2021*, 949 N.W.2d 73, 86 (Mich. 2020).

Courts interpret statutes according to the words' "plain and ordinary meaning" and to the "common and approved usage of the language."  *People v. Vanderpool*, -- N.W.2d --, 2020 WL 3967817, at *4 (Mich. July 13, 2020) (citation omitted).  Moreover, "every word should be given meaning, and [courts] should avoid a construction that would render any part of the statute surplusage or nugatory."  *Belcher v. Ford Motor Co.*, -- N.W. 2d --, 2020 WL 5580155, at *2 (Mich. Ct. App. Sept. 17, 2020) (citation omitted).

MCL § 333.2253(1) authorizes the MDHHS Director to "prohibit the gathering of people for any purpose" and to "establish procedures to be followed during the epidemic to insure continuation of essential public health services and enforcement of health laws."  The statute thus

authorizes the MDHHS Director to take two different types of actions.  First, he has the power to prohibit assemblies or meetings, such as occur at sporting events, conventions, and parades.  *See* "Gathering," *Random House Webster's College Dictionary* ("Assembly," "Meeting").  Second, he can establish procedures for providers of "public health services"—*i.e.*, local health departments, hospitals, clinics, etc.—that govern how those entities provide services and enforce health laws. The statute does *not* authorize Defendant Gordon to prohibit or otherwise regulate, without legislative approval, the operations of private, religious schools.  Nor does the statute allow Defendant Gordon to create a mandate requiring the wearing of masks during all hours of the school day.  Indeed, this order is neither a prohibition of a gathering, nor does it provide a service. It is a mandate to buy and wear masks carrying civil and criminal penalties for non-compliance.

Defendants' order effectively reinstates the Governor's previous lockdown orders, which were struck down by the Michigan Supreme Court in *In re Certified Questions From U.S. District Court, Western District of Michigan, Southern Division*, No. 161492, 2020 WL 5877599 (Mich. Oct. 2, 2020).   And the canon of constitutional avoidance confirms this plain-language interpretation.  "[A] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score."  *People v. Nyx*, 734 N.W.2d 548, 556 (Mich. 2007) (citation omitted); *see also In re Certified Questions*, 2020 WL 5877599, at *12 ("[A]ssuming that there are two *reasonable* ways of interpreting [a statute]—one that renders the statute unconstitutional and one that renders it constitutional—we should adopt the interpretation that renders the statute constitutional.") (citation omitted).  Reading MCL § 333.2253 as a grant of broad, unrestricted powers to control individuals and businesses would render the statute unconstitutional under the nondelegation doctrine. *See In re Certified Questions*, 2020 WL 5877599, at *12–*19.

Because Defendants' Order is not authorized by statute, it is unlawful.  Furthermore, because the Michigan Supreme Court's decision in *In re Certified Questions* is directly applicable, this Court should not dismiss this claim and instead should exercise supplemental jurisdiction to decide it.

**B.  To the Extent Michigan Compiled Laws § 333.2253 Authorizes Defendant Gordon to Broadly Reorder Citizens' Daily Lives, It Violates the Nondelegation Clause of the Michigan Constitution.**

If, this Court finds that MCL § 333.2253 delegates to Defendant Gordon the unlimited authority to condition and control the inner workings of parochial school education, Defendants' order violates the Nondelegation Clause.

The "legislative power" is the power "to regulate public concerns [ ] and to make law for the benefit and welfare of the state."  *46th Cir. Trial Ct. v. Crawford Cty.*, 719 N.W.2d 553, 559 (Mich. 2006) (quoting Cooley, *Constitutional Limitations* 92 (1886)).  The "power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority." *In re Certified Questions*, 2020 WL 5877599, at *12 (citation omitted).  "[A]s the scope of the powers conferred upon the [Executive] by the Legislature becomes increasingly broad, in regard to both the *subject matter* and their *duration*, the *standards* imposed upon the [Executive's] discretion by the Legislature must correspondingly become more detailed and precise."  *Id*. at *15. MCL § 333.2253—as Defendants interpret it—confers "remarkably broad" powers on the MDHHS Director to indefinitely "reorder social life" in the name of public health, while providing *no* meaningful standards (or limitations) on the exercise of that discretion.  *Id.* at *15–16. Defendants' order illustrates the statute's breathtaking scope by imposing restrictions on *any* activity where *any* number of people are close to each other for *any* purpose *anywhere*.  The subject matter covered by MCL § 333.2253, as Defendants read the statute, includes a broad delegation of

"the police power," which "is legislative in nature." *In re Certified Questions*, 2020 WL 5877599, at *15. What is more, MCL § 333.2253 authorizes the MDHHS Director to exercise these police powers *indefinitely*, which "considerably broadens the scope of authority conferred by that statute." *Id.* at *16.

Where, as here, "the scope of the power delegated increases to immense proportions, the standards must be correspondingly more precise." *Id.* (quotations and citation omitted). Yet the only "standard" by which the Legislature sought to guide the MDHHS Director is through his own "determin[ation]" of what is "necessary." MCL § 333.2253(1). In *In re Certified Questions*, the Court held that the same standard in the EPGA—which authorized the Governor to issue any orders "she consider[ed] necessary to protect life and property or to bring the emergency situation within the affected areas under control," MCL § 10.31(1)—was "insufficient to satisfy the nondelegation doctrine." 2020 WL 5877599, at *17. This is because "contagions, accidents, misfortunes, risks, and acts of God, ordinarily and inevitably associated with the human condition and with our everyday social experiences, are simply too various for ['necessary'] to supply any meaningful limitation upon the exercise of the delegated power." *Id.*, at *17. Indeed, the term "necessary" is "so elastic that it is impossible to imagine what might be done within its extent in almost every field of administration and of jurisprudence." *Id.* (citing *Opinion of the Justices*, 351 Mass. 761, 52 N.E. 2d 974 (1944)). Indeed, MCL § 333.2253, "in setting forth a 'necessary' standard …, neither supplies genuine guidance to the [MDHHS Director] as to how to exercise the authority delegated to [him] by the [statute] nor constrains [his] actions in any meaningful manner." *Id*. Thus, if MCL § 333.2253 permits Defendants' order, then the statute is unlawful under *In re Certified Questions*. Since unlawful statutes cannot provide the basis for the exercise

of authority, *see Brang, Inc. v. Liquor Control Comm.*, 320 Mich. App. 652, 668 -69(2017), this claim likewise should not be dismissed.

Having established the legal justification for the claims at issue, we now proceed to explain why Plaintiffs have standing and the Court has jurisdiction and the duty to hear Plaintiffs' claims.

## IV.    This Court Should Hear and Decide this Case.

### A.  Standard of Review.

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual basis for jurisdiction.  *See Am. Freedom Law Ctr., Inc. v. Nessel*, No. 1:19-cv-153, 2020 U.S. Dist. LEXIS 60622, at *9 (W.D. Mich. Jan. 15, 2020); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  In a facial attack, the court accepts as true all the allegations in the complaint.  *Id*. at 325.  In a factual attack, the allegations are not afforded a presumption of truthfulness and the court weighs competing evidence to determine whether subject matter jurisdiction exists.  *Id.*  Defendants do not identify whether this is a facial or a factual attack. However, it appears to be a facial challenge.

### B.  The Eleventh Amendment Does Not Bar Plaintiffs' Claims.

Defendants Gordon and Nessel begin their motion by arguing that they are immune from this lawsuit.  They are mistaken.  Although State officials generally enjoy Eleventh Amendment immunity, they may be sued in federal court for prospective relief to halt the enforcement of a State law that violates the Constitution, as in this case.  *See Ex parte Young*, 209 U.S. 123 (1908). As stated by the Supreme Court, "In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer *must have some connection with the enforcement of the act*." *Ex parte Young*, 209 U.S. at 157 (emphasis

added).  As the chief law enforcement officer for the State of Michigan, Defendant Nessel is responsible for ensuring compliance with State law.  Similarly, Defendant Gordon, as the chief public health official, is responsible for ensuring compliance with the challenged order.  In short, Defendants "have some connection with the enforcement of the" challenged order.  Consequently, they do not enjoy Eleventh Amendment immunity from the prospective relief sought by Plaintiffs.[4]

### C.  The Court Should Not Abstain from Resolving Plaintiffs' Claims.

Defendants argue that the Court should "refrain from reaching any of Plaintiffs' claims." ECF No. 14, Page ID 249.  Defendants are mistaken.  As this Court has noted, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."  *Hoover Invs., Inc. v. City of Charlotte*, No. 1:04-CV-689, 2005 WL 8172520, at *2 (W.D. Mich. Apr. 26, 2005).  And the Court should make no exception here.

Pursuant to 42 U.S.C. § 1983, Plaintiffs may seek redress for the deprivation of their rights protected by United States Constitution in federal court against State actors who threaten these rights.  Abstaining from hearing Plaintiffs' claims would delay the relief Plaintiffs seek, thereby causing irreparable harm.  *Elrod v. Burns*, 427 U.S. 347 (1976).  The *Pullman* doctrine should not be weaponized in a manner that promotes delay.  *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).  Furthermore, unlike in *Libertas Classical Association v. Whitmer*, the State Defendants have been served, have appeared, and have been afforded a reasonable opportunity to be heard.  No. 1:20-CV-997, 2020 WL 6498761, at *11 (W.D. Mich. Nov. 3, 2020).

---

[4] The same argument applies to county officials enforcing State laws and State mandates, such as Defendant Vail, who is named as a defendant to enjoin her enforcement of the State mandate. *Cady v. Arenac Cty.*, 574 F.3d 334, 343 (6th Cir. 2009).  To the extent Defendant Siemon has claimed absolute immunity, it would not bar Plaintiffs' claims here.  The party seeking immunity must prove its applicability, and here it would involve a factual determination beyond Plaintiffs' complaint.  Prosecutorial decisions to charge a citizen with a crime is a discretionary function not protected by absolute immunity.  *See, e.g., Howell v. Sanders*, 668 F.3d 344, 350 (6th Cir. 2012).

Defendants argue that *Colorado River* abstention applies because "the Michigan Court of Claims has assumed its exclusive jurisdiction" over the issues presented by this case, and this case seeks "identical relief" to that requested in *Semlow Peak Performance Chiropractic v. Whitmer*, No. 20-206-MZ (Mich. Ct. Claims).  ECF No. 14, Page ID 251.  *Semlow*, however, is not even close to "identical," and it would not resolve the constitutional claims raised by Plaintiffs. Furthermore, this Court has noted that "the State Defendants in *Semlow* argue that [the plaintiff] does not have standing to bring that case, so it is possible that the Court of Claims will never reach the merits of the case."  *Mich. Rest. & Lodging Ass'n v. Gordon,* No. 1:20-CV-1104, 2020 WL 7053230, at *2 (W.D. Mich. Dec. 2, 2020).

Lastly, Defendants' argument under *Thibodaux* abstention is misguided as that doctrine pertains to diversity cases, of which this is not.  *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959).  None of the abstention doctrines enumerated by Defendants apply to this case.

### D.  The Court Has Jurisdiction to Hear and Decide this Case.

Article III of the Constitution confines the federal courts to adjudicating actual "cases" or "controversies." U.S. Const. art. III, § 2. As stated by the Supreme Court:

> A justiciable controversy is . . . distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (citations omitted).

Here, there is nothing hypothetical, abstract, academic, or moot about the legal claims advanced.  This case presents a real and substantial controversy between parties with adverse legal

interests, and this controversy can be resolved through a decree of a conclusive character. *Id.*  It will not require the Court to render an opinion advising what the law would be upon a hypothetical state of facts.  *Id.*  In short, this Court has the power to hear and decide this case.  It can determine whether the challenged order infringes Plaintiffs' fundamental rights.  The Court could then declare the measure unconstitutional and enter an appropriate order enjoining its future enforcement.  Thus, this case presents a justiciable controversy in which the judicial function may be appropriately exercised.  *Id.*; *see also Jacobson*, 197 U.S. at 31 (stating that it is the "duty of the courts to so adjudge" the constitutionality of an emergency order that directly impinges fundamental rights).

### E.  Plaintiffs Have Standing.

In an effort to give meaning to Article III's "case" or "controversy" requirement, the courts have developed several justiciability doctrines, including standing.  *See Susan B. Anthony List v. Driehaus,* 134 S. Ct. 2334, 2341 (2014).  "The doctrine of standing gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Id.* (internal quotations and citation omitted).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Consequently, to invoke the jurisdiction of a federal court, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

Plaintiffs satisfy the standing requirement.  As stated by the Supreme Court, "[I]t is not necessary that [Plaintiffs] first expose [themselves] to actual arrest or prosecution to be entitled to challenge [an order imposing criminal penalties] that [they] claim[] deters the exercise of [their]

constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Indeed, "courts have routinely found sufficient adversity between the parties to create a justiciable controversy when suit is brought by the particular plaintiff subject to the regulatory burden imposed by a statute," as in this case. *See Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 282 (6th Cir. 1997). Here, a violation of the challenged order—which directly applies to Plaintiffs, mandating them to enforce and implement their order and wear masks—is a misdemeanor offense with both civil and criminal penalties. Defendant Nessel, the Michigan Attorney General, has made clear that she will use her office to enforce the order, and she has convened a COVID-19 task force to do so. Defendant Siemon, the Ingham County Prosecuting Attorney, is the official responsible for prosecuting violations of the order in the county where Resurrection School is located and where Plaintiffs reside. Standing is not at issue.

## F. The Case Is Ripe.

The basic rationale of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580 (1985) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "The problem is best seen in a twofold aspect, requiring [the courts] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.

This case is ripe. There is nothing abstract or hypothetical about this case. The challenged order was adopted and implemented by Defendant Gordon via a public health order, and a violation of any its provisions is a misdemeanor. Accordingly, the issues are fit for judicial review, and the record is adequate to support an informed decision. *Nat'l Rifle Assoc. of Am.*, 132 F.3d at 290 ("In

considering the fitness of an issue for judicial review, the court must ensure that a record adequate

to support an informed decision exists when the case is heard.").

## CONCLUSION

For the reasons set forth above, this Court should deny Defendants' motions to dismiss.

Respectfully submitted,

GREAT LAKES JUSTICE CENTER

/s/ *Erin Elizabeth Mersino*
Erin Elizabeth Mersino (P70886)
5600 W. Mt. Hope Highway
Lansing, Michigan 48917
Tel: (517) 322-3207; Fax: (517) 322-3208
erin@greatlakesjc.org

AMERICAN FREEDOM LAW CENTER

/s/ *Robert J. Muise*
Robert J. Muise, Esq. (P62849)
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@americanfreedomlawcenter.org

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES**

I hereby certify that this brief contains 9,562 words exclusive of the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits, and is thus within the word limit allowed under Local Civil Rule 7.2(b)(i).  The word count was generated by the word processing software used to create this brief: Word for Microsoft Office 365, Version 1904.

GREAT LAKES JUSTICE CENTER

/s/ *Erin Elizabeth Mersino*
Erin Elizabeth Mersino

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

GREAT LAKES JUSTICE CENTER

*/s/ Erin Elizabeth Mersino*
Erin Elizabeth Mersino

.