# **<u>Exhibit 1</u>**



STATE OF MICHIGAN
DEPARTMENT OF HEALTH AND HUMAN SERVICES
LANSING

GRETCHEN WHITMER
GOVERNOR

ROBERT GORDON
DIRECTOR

**December 18, 2020**

**Emergency Order under MCL 333.2253 – Gatherings and Face Mask Order**

Michigan law imposes on the Michigan Department of Health and Human Services (MDHHS) a duty to continually and diligently endeavor to "prevent disease, prolong life, and promote public health," and gives the Department "general supervision of the interests of health and life of people of this state." MCL 333.2221. MDHHS may "[e]xercise authority and promulgate rules to safeguard properly the public health; to prevent the spread of diseases and the existence of sources of contamination; and to implement and carry out the powers and duties vested by law in the department." MCL 333.2226(d).

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. COVID-19 spreads through close human contact, even from individuals who may be asymptomatic.

In recognition of the severe, widespread harm caused by epidemics, the Legislature has granted MDHHS specific authority, dating back a century, to address threats to the public health like those posed by COVID-19. MCL 333.2253(1) provides that "[i]f the director determines that control of an epidemic is necessary to protect the public health, the director by emergency order may prohibit the gathering of people for any purpose and may establish procedures to be followed during the epidemic to insure continuation of essential public health services and enforcement of health laws. Emergency procedures shall not be limited to this code." See also *In re Certified Questions,* Docket No. 161492 (Viviano, J., concurring in part and dissenting in part, at 20) ("[T]he 1919 law passed in the wake of the influenza epidemic and Governor Sleeper's actions is still the law, albeit in slightly modified form."); *id.* (McCormack, C.J., dissenting, at 12). Enforcing Michigan's health laws, including preventing disease, prolonging life, and promoting public health, requires limitations on gatherings and the establishment of procedures to control the spread of COVID-19. This includes limiting the number, location, size, and type of gatherings, and requiring the use of mitigation measures at gatherings as a condition of hosting such gatherings.

On March 10, 2020, MDHHS identified the first two presumptive-positive cases of COVID-19 in Michigan. As of December 16, 2020, Michigan had seen 446,752 confirmed cases and 11,018 confirmed deaths attributable to COVID-19. Michigan was one of the states most heavily impacted by COVID-19 early in the pandemic, with new cases peaking at nearly 2,000 per day in late March. Strict preventative measures and the cooperation of Michiganders drove daily case numbers dramatically down to less than 200 confirmed cases per day in mid-June, greatly reducing the loss of life. Beginning in October, Michigan again experienced an exponential growth in cases. Daily new cases are now near 5,000, which is roughly three times higher than what was seen in the spring.

On November 15, 2020, MDHHS issued an order to slow the high and rapidly increasing rate of spread of COVID-19. Cases, hospitalizations, and deaths remained high through early December, threatening hospital and public health capacity. On December 7, 2020, MDHHS issued an order sustaining the protections of the prior order.

The State of Michigan presently has a seven-day average of 439 cases per million people, which is nearly five times higher than the case rate on October 1. Test positivity has increased from 3.2% in early October to 10.6% on December 18. A high number of cases creates significant pressure on our emergency and hospital systems. Although complaints of coronavirus-like illness in emergency departments are now starting to decrease for the state, the current rate remains near the all-time high, and is four times higher than early October. An average of 425 daily hospital admissions were seen in Michigan in the last week, with individuals under 60 years old accounting for a third of all new admissions. There are over 3,500 Michiganders hospitalized for COVID-19 and 17.3% of all available inpatient beds are occupied by patients who have COVID-19. The state death rate is 11.7 deaths per million people and continues to increase. The death rate is nine times higher than it was in early October, and there are more than 800 weekly deaths in Michigan. On December 11, 2020, the Food and Drug Administration granted an emergency use authorization for the first vaccine to prevent COVID-19, and more approvals are expected in the coming weeks. There is good reason for hope, but the pandemic is not yet at an end, and many more challenging months lay ahead.

In light of the beginning of vaccination and the recent promising reductions in the rate of spread of COVID-19, we can now begin cautious reopening with close monitoring of impacts. In so doing, however, we must move with care, patience, and vigilance, recognizing the grave harm that this virus continues to inflict on our state and how quickly our progress in suppressing it can be undone. As we reopen, the surest way to maintain our momentum in controlling the spread of COVID-19 is to open lower risk venues first, and gradually, rather than all at once. By taking deliberate steps and closely monitoring the data, we can ensure that Michigan remains on the path to recovery.

Considering the above, and upon the advice of scientific and medical experts, I have concluded pursuant to MCL 333.2253 that the COVID-19 pandemic continues to constitute an epidemic in Michigan. I have also, subject to the grant of authority in 2020 PA 238 (signed into law on October 22, 2020), herein defined the symptoms of COVID-19 based on the latest epidemiological evidence. I further conclude that control of the epidemic is necessary to protect the public health and that it is necessary to restrict gatherings and establish procedures to be followed during the epidemic to ensure the continuation of essential public health services and enforcement of health laws. As provided in MCL 333.2253, these emergency procedures are not limited to the Public Health Code.

I therefore order that:

1. **Definitions.**

    (a) "Child-care organization" means that term as defined by section 1(b) of the Child Care Organizations Act, 1973 PA 116, as amended, MCL 722.111(b)) and day, residential, travel, and troop camps for children (as defined by Rule 400.11101(1)(q) of the Michigan Administrative Code).

    (b) "Employee" means that term as defined in section 2 of the Improved Workforce Opportunity Wage Act, 2018 PA 337, as amended, MCL 408.932, and also includes independent contractors.

    (c) "Lower risk entertainment facility" means: auditoriums; arenas; cinemas; concert halls; performance venues; sporting venues; stadiums; and theaters.

    (d) "Exercise facility" means a location in which individuals participate in individual or group physical activity, including gymnasiums, fitness centers, and exercise studios.

    (e) "Face mask" means a tightly woven cloth or other multi-layer absorbent material that closely covers an individual's mouth and nose.

(f) "Food service establishment" means that term as defined in section 1107(t) of the Food Law, 2000 PA 92, as amended, MCL 289.1107(t).

(g) "Gathering" means any occurrence, either indoor or outdoor, where two or more persons from more than one household are present in a shared space.

(h) "Higher risk recreational facilities" means recreational facilities other than lower risk recreational facilities. This includes: laser tag; night clubs; strip clubs; water parks; and trampoline parks.

(i) "Household" means a group of persons living together in a shared dwelling with common kitchen or bathroom facilities. In dwellings with shared kitchen or bathroom facilities occupied by 20 or more unrelated persons, households are defined by individuals who share a bedroom.

(j) "Indoors" means within a space that is fully or partially enclosed on the top, and fully or partially enclosed on two or more contiguous sides. Additionally, in a space that is fully or partially enclosed on the top, and fully or partially enclosed on two non-contiguous sides, any part of that space that is more than 8 feet from an open side is indoors.

(k) "Lower risk recreational facilities" means recreational facilities where there is not physical contact among participants, there is minimal interaction between households participating in activities, masks can be worn, and, if indoors, activities involve a low degree of exhalation or physical exertion. This means: archery ranges; amusement parks; arcades; bingo halls; bowling centers; casinos; and gun ranges.

(l) "Outdoors" means a space that is not indoors.

(m) "Organized sports" means competitive athletic activity requiring skill or physical prowess and organized by a sports organizer.

(n) "Sports Organizer" means an institution, association, or other organization that sets and enforces rules to ensure the physical health and safety of all participants for an organized sport.

(o) "Principal symptoms of COVID-19" means at least 1 of fever, uncontrolled cough, or atypical new onset of shortness of breath, or at least 2 of the following not explained by a known physical condition: loss of taste or smell, muscle aches, sore throat, severe headache, diarrhea, vomiting, or abdominal pain. Per section 1(h) of 2020 PA 238, this definition represents the latest medical guidance, and serves as the controlling definition.

2. **General capacity limitations at gatherings.**

    (a) Indoor gatherings:

        (1) Are prohibited at residential venues, except where no more than 10 persons from no more than 2 households are gathered. Such gatherings should be held consistent with guidance issued by the Department of Health and Human Services for such gatherings;

        (2) Are prohibited at non-residential venues.

    (b) Outdoor gatherings are permitted only as follows:

    (1) At residential venues, 25 or fewer persons are gathered, comprised of no more than 3 households;

    (2) At non-residential venues:

        (A) 25 or fewer persons are gathered at a venue without fixed seating, and attendance is limited to 20 persons per 1,000 square feet, including within any distinct area within the event space;

        (B) 25 or fewer persons are gathered at a venue with fixed seating, and attendance is limited to 20% of seating capacity of the venue.

(c) The limitations to gatherings in sections 2(a) and 2(b) do not apply to:

    (1) Incidental, temporary gatherings of persons in a shared space, such as frequently occur in an airport, bus station, exercise facility, food service establishment, shopping mall, or public pool, except as prohibited in section 3;

    (2) Gatherings between an employee and a customer for the purpose of receiving services;

    (3) Workplace gatherings that occur consistent with the Emergency Rules issued by MIOSHA on October 14, 2020;

    (4) Voting or official election-related activities;

    (5) Training of law enforcement, correctional, medical, or first responder personnel, insofar as those activities cannot be conducted remotely;

    (6) Education and support services at public, nonpublic, and boarding schools serving students in prekindergarten through grade 8;

    (7) Children in a child-care organization, after school program, or camp setting;

    (8) Persons traveling on a school bus or other public transit;

    (9) Gatherings for the purpose of medical treatment, including mental health and substance use disorder support services;

    (10) Gatherings of up to 25 persons for the purpose of a funeral;

    (11) Residential care facilities, which are subject to the October 21 epidemic order entitled "Requirements for Residential Facilities," or any replacement of that order;

    (12) Cardiopulmonary resuscitation courses and swimming instruction courses;

    (13) Proctored, nationally-administered admissions and certification examinations that are not available remotely, provided that examinees are spaced no less than 12 feet apart;

    (14) Gatherings at lower risk entertainment and lower risk recreational facilities that comply with the restrictions set forth in section 3(a) of this order;

    (15) Gatherings for public health or other emergency purposes.

    (d) As a condition of hosting a gathering under this order, organizers and facilities must design the gathering to encourage and maintain physical distancing, and must ensure that persons not part of the same household maintain 6 feet of distance from one another to the extent possible.

3. **Gathering restrictions for entertainment and food service facilities.**

    (a) Gatherings are permitted at lower risk entertainment facilities and lower risk recreational facilities, provided that:

        (1) Organizers do not permit persons to mingle with others from outside of their household;

        (2) Household groups consist of no more than 6 persons;

        (3) Households are spaced or seated at least 6 feet apart;

        (4) No food or beverages are sold or consumed on the premises;

        (5) Venues comply with the following capacity limits:

            (A) For venues with fixed seating, occupancy must not exceed 20% of the limits established by the State Fire Marshal or a local fire marshal;

            (B) For venues with non-fixed seating, occupancy is limited to 20 persons per 1,000 square feet, including within any distinct space within the venue;

            (C) For all venues, no more than 100 persons may be gathered within any distinct space within the venue, except at stadiums and arenas hosting sporting events as provided in section 6, in which case up to 250 persons may be gathered.

    (b) Gatherings are permitted at food service establishments under the following conditions:

        (1) Persons are not gathered indoors except in custodial settings, medical facilities, school and university cafeterias, shelters, and soup kitchens. If attendees are seated at tables, persons must be 6 feet apart, or members of a household may share a table and tables must be spaced a minimum of 6 feet apart;

        (2) Persons participating in outdoor dining are seated no more than 6 to a table and tables are spaced a minimum of 6 feet apart;

    (c) Nothing in this section shall be construed to prohibit the use of these facilities for public health or other emergency purposes.

4. **Gathering restrictions for other facilities.** In addition to the gathering limitations set forth elsewhere in this order, the following limitations apply to gatherings in the following facilities:

    (a) A gathering at a retail store, library, or museum must not exceed 30% of total occupancy limits established by the State Fire Marshal or a local fire marshal. Nevertheless, a retail store, library, or museum may permit one customer at a time to enter if strict adherence to

5

the 30% total occupancy limit would otherwise result in closure. Spaces for indoor dining, including food courts, must be closed.

    (1) Retail stores must establish lines to regulate entry and checkout, with markings for patrons to enable them to stand at least six feet apart from one another while waiting.

(b) At exercise facilities:

    (1) Gatherings must not exceed 25% of the total occupancy limits established by the State Fire Marshal or a local fire marshal; and

    (2) There must be at least 12 feet of distance between each occupied workout station;

    (3) Indoor gatherings for group fitness activities or classes are prohibited. Outdoor gatherings for group fitness activities or classes are permitted.

(c) Gatherings in waiting rooms at outpatient health-care facilities, veterinary clinics, and other businesses are prohibited unless the facility implements a system to ensure that persons not of the same household maintain 6 feet of distance. To the extent possible, this system must include a policy that patients wait in their cars for their appointments to be called.

(d) Gatherings at an indoor or outdoor pool not otherwise prohibited by this order must not exceed 25% of bather capacity limits described in Rule 325.2193 of the Michigan Administrative Code.

(e) Gatherings at indoor ice and roller rinks are prohibited, except for individual exercise or one-on-one instruction, where occupancy is limited to 2 persons per 1,000 square feet, including within the exercise space. Gatherings at outdoor ice and roller rinks are permitted, except for organized contact sports, provided that occupancy is limited to 2 persons per 1,000 square feet, including within the exercise space. Gatherings for the purpose of non-contact sports and open skating are permitted only at outdoor rinks.

(f) In facilities offering non-essential personal care services, including hair, nail, tanning, massage, traditional spa, tattoo, body art, and piercing services, and similar personal care services, gatherings are only permitted to the extent that services do not involve the removal of face masks. All services must be provided by appointment, and gatherings in waiting areas are prohibited.

5. **Schools, colleges, technical schools, and universities.**

    (a) Gatherings at public, nonpublic, and boarding schools for the purpose of conducting in-person instruction of pupils in prekindergarten through grade 12 are permitted, subject to local health department and school district decisions on remote learning. Gatherings are permitted for the purpose of extracurricular activities except those that involve physical contact among participants, a high degree of exhalation or physical exertion indoors, or where masks cannot be worn.

    (b) Gatherings at public, nonpublic, and boarding schools are permitted for the purpose of child care programs, tutoring and academic support, and for providing services to students in need, including food distribution, access to internet connectivity, and physical and mental health care services.

    (c) Gatherings at colleges and universities, trade schools, and career schools are permitted for the purpose of holding in-person classes and other events sponsored by the educational institution. The limits imposed by section 2(a) and 2(b) do not apply to such gatherings, but they remain subject to all other applicable requirements of this order.

6. **Organized sports gathering restrictions.**

    (a) Gatherings for the purpose of indoor organized sports and contact organized sports are prohibited unless all participants, teams, and venues comply with the enhanced testing regimen specified in the Additional Mitigation Measures for Safer Athletic Practice and Play without the use of Face Coverings section of [MDHHS guidance on Additional Measures for Safer Athletic Practice and Play](#), or a school is participating in an MDHHS testing pilot program. Sports organizers complying with this section may host gatherings for the purpose of practice and competition notwithstanding the gathering prohibitions in section 2.

    (b) Gatherings for the purpose of outdoor, non-contact sports are permitted.

7. **Face mask requirement at gatherings.**

    (a) All persons participating in gatherings are required to wear a face mask.

    (b) As a condition of gathering for the purpose of transportation, transportation providers must require all staff and patrons to use face masks, and must enforce physical distancing among all patrons to the extent feasible.

    (c) Except as provided elsewhere in this order, a person responsible for a business, store, office, government office, school, organized event, or other operation, or an agent of such person, must prohibit gatherings of any kind unless the person requires individuals in such gatherings (including employees) to wear a face mask, and denies entry or service to all persons refusing to wear face masks while gathered.

    (d) A person responsible for a business, store, office, government office, school, organized event, or other operation, or an agent of such person, may not assume that someone who enters the facility without a face mask falls within one of the exceptions specified in section 8 of this order, including the exception for individuals who cannot medically tolerate a face mask. An individual's verbal representation that they are not wearing a face mask because they fall within a specified exception, however, may be accepted.

    (e) A person responsible for a child-care organization or camp, or an agent of such person, must not allow gatherings unless face masks are worn by all staff. Children must wear face masks as indicated below:

        (1) All children 2 years and older when on a school bus or other transportation provided by the child-care organization or camp;

        (2) All children 4 years and older when in indoor hallways and indoor common areas;

        (3) All children 5 years and older when in classrooms, homes, cabins, or similar indoor settings.

8. **Exceptions to face mask requirements.** Although a face mask is strongly encouraged even for individuals not required to wear one (except for children under the age of 2), the requirement to wear a face mask in gatherings as required by this order does not apply to individuals who:

    (a) Are younger than 5 years old, outside of child-care organization setting (which are subject to requirements set out in section 7(e));

    (b) Cannot medically tolerate a face mask;

    (c) Are eating or drinking while seated at a food service establishment or at a private residence;

    (d) Are exercising outdoors and able to consistently maintain 6 feet of distance from others;

    (e) Are swimming;

    (f) Are receiving a medical service for which removal of the face mask is necessary;

    (g) Are asked to temporarily remove a face mask for identification purposes;

    (h) Are communicating with someone who is deaf, deafblind, or hard of hearing and whose ability to see the mouth is essential to communication;

    (i) Are actively engaged in a public safety role, including but not limited to law enforcement, firefighters, or emergency medical personnel, and where wearing a face mask would seriously interfere in the performance of their public safety responsibilities;

    (j) Are at a polling place for purposes of voting in an election;

    (k) Are engaging in a religious service; or

    (l) Are giving a speech for broadcast or to an audience, provided that the audience is at least 6 feet away from the speaker.

9. **Contact tracing requirements for particular gatherings.**

    (a) Gatherings are prohibited at the following facilities unless the facility maintains accurate records, including date and time of entry, names of patrons, and contact information, to aid with contact tracing, and denies entry for a gathering to any visitor who does not provide, at a minimum, their name and phone number:

        (1) All businesses or operations that provide barbering, cosmetology services, body art services (including tattooing and body piercing), tanning services, massage services, or similar personal care services;

        (2) Exercise facilities.

    (b) All businesses or operations that provide in-home services, including cleaners, repair persons, painters, and the like must not permit their employees to gather with clients unless the business maintains accurate appointment records, including date and time of service, name of client, and contact information, to aid with contact tracing.

- (c) Upon request, businesses, schools, and other facilities must provide names and phone numbers of individuals with possible COVID-19 exposure to MDHHS and local health departments to aid in contact tracing and case investigation efforts.

- (d) Data collected under this section:

    - (1) Must not be sold, or used for sales or marketing purposes without the express consent of each patron;

    - (2) Must be protected as confidential information to the fullest extent of the law;

    - (3) Must not be provided to law enforcement or immigration officials except upon receipt of a lawful subpoena from a court or other lawful court order;

    - (4) Must be retained for 28 days by the collecting organization, after which time the data must be destroyed. If facilities use existing data to fulfill this requirement, they may instead follow their own pre-existing data retention and destruction policies at the conclusion of the 28-day retention period.

10. **Implementation.**

    - (a) Nothing in this order modifies, limits, or abridges protections provided by state or federal law for a person with a disability.

    - (b) Under MCL 333.2235(1), local health departments are authorized to carry out and enforce the terms of this order.

    - (c) Law enforcement officers, as defined in the Michigan Commission on Law Enforcement Standards Act, 1965 Public Act 203, MCL 28.602(f), are deemed to be "department representatives" for purposes of enforcing this order, and are specifically authorized to investigate potential violations of this order. They may coordinate as necessary with the appropriate regulatory entity and enforce this order within their jurisdiction.

    - (d) Neither a place of religious worship nor its owner is subject to penalty under this order for allowing religious worship at such place. No individual is subject to penalty under this order for engaging in religious worship at a place of religious worship.

    - (e) Consistent with MCL 333.2261, violation of this order is a misdemeanor punishable by imprisonment for not more than 6 months, or a fine of not more than $200.00, or both.

    - (f) Nothing in this order affects any prosecution or civil citation based on conduct that occurred before the effective date of this order.

    - (g) Nothing in this order should be taken to interfere with or infringe on the powers of the legislative and judicial branches to perform their constitutional duties or exercise their authority, or protections guaranteed by the state or federal constitution under these emergency circumstances.

    - (h) Consistent with any rule or emergency rule promulgated and adopted in a schedule of monetary civil penalties under MCL 333.2262(1) and applicable to this order, violations of this order are also punishable by a civil fine of up to $1,000 for each violation or day that a violation continues.

(i) If any provision of this order is found invalid by a court of competent jurisdiction, whether in whole or in part, such decision will not affect the validity of the remaining part of this order.

(j) It is not a violation of this order for a person to enter a facility otherwise closed for gatherings if they are entering solely for the purpose of using restroom facilities.

This order takes effect on December 21, 2020 at 12:01 AM, at which time the December 7, 2020, order entitled Gatherings and Face Mask Order is rescinded. This order remains in effect through January 15, 2021 at 11:59 PM. Persons with suggestions and concerns are invited to submit their comments via email to COVID19@michigan.gov.

Date: 12/18/2020

*Robert Gordon* (signature)

Robert Gordon, Director

Michigan Department of Health and Human Services