IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RESURRECTION SCHOOL; CHRISTOPHER MIANECKI, individually and as next friend on behalf of his minor children C.M., Z.M., and N.M.; and STEPHANIE SMITH, individually and as next friend on behalf of her minor child F.S., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT GORDON, in his official capacity as the Director of the Michigan Department of Health and Human Services; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan; LINDA S. VAIL, in her official capacity as the Health Officer of Ingham County; and CAROL A. SIEMON, in her official capacity as the Ingham County Prosecuting Attorney, <br><br> Defendants. | Case No. 1:20-cv-01016 <br><br> Hon. Paul L. Maloney <br><br> **DEFENDANTS LINDA S. VAIL AND CAROL A. SEIMON'S REPLY BRIEF** <br><br> * ORAL ARGUMENT REQUESTED * |

Erin Elizabeth Mersino (P70886)
GREAT LAKES JUSTICE CENTER
Counsel for Plaintiffs
5600 W. Mt. Hope Highway
Lansing, MI 48917
(517) 322-3207

Robert J. Muise, Esq. (P62849)
AMERICAN FREEDOM LAW CENTER
Counsel for Plaintiffs Resurrection School,
Stephanie Smith, and F.S.
PO Box 131098
Ann Arbor, MI  48113
(734) 635-3756

Bonnie G. Toskey (P30601)
Sarah K. Osburn (P55539)
COHL, STOKER & TOSKEY, P.C.
Attorneys for Ingham County Defendants
Linda Vail and Carol Siemon
601 N. Capitol Ave.
Lansing, MI 48933
(517) 372-9000

Joseph T. Froehlich (P71887)
Raymond O. Howd (P37681)
Daniel John Ping (P81482)
Michigan Attorney General Office
Attorney for Defendant Robert Gordon
525 W. Ottawa St.
PO Box 30736
Lansing, MI 48933
(517) 335-7573

Ann M. Sherman (P67762)
Deputy Solicitor General
Rebecca A. Berels (P81977)
Assistant Attorney General
Michigan Dep't of Attorney General
Attorneys for Defendant Dana Nessel
P.O. Box 30212
Lansing, MI 48909
(517) 335-7628

**DEFENDANTS LINDA S. VAIL AND CAROL A. SIEMON'S REPLY BRIEF**

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ................................................................................................................. 1

CHILDREN AND COVID-19 ............................................................................................... 1

PLAINTIFFS' FAILURE TO STATE PLAUSIBLE CLAIMS SPECIFICALLY AS TO DEFENDANTS VAIL AND SIEMON.................................................................................. 4

    I.    Immunity ..................................................................................................... 4

    II.    Standing As To Claims Against Defendants Vail And Siemon ................... 5

PLAINTIFFS CANNOT ESTABLISH A VIOLATION OF THEIR CONSTITUTIONAL RIGHTS BY DEFENDANTS VAIL AND SIEMON ........................................................... 6

    I.    Plaintiffs' Claims For Relief Are Not Plausible On Their Face And Should Be Dismissed Pursuant To F.R.Civ.P. 12(b)(6) ............................. 7

    II.    Plaintiffs' First Amended Complaint Does Not Allege Plausible Constitutional Violations............................................................................. 8

        A.    Defendants' Order Does Not Violate Plaintiffs' Free Exercise Of Religion ...................................................................................... 8

            1.    The MDHHS Order Being Generally Applicable Is Not Required To Meet Strict Scrutiny........................................... 8

            2.    Strict Scrutiny Does Not Apply To Any Alleged "Hybrid Claim".................................................................................... 10

        B.    The MDHHS Order Does Not Violate Substantive Due Process ..................................................................................... 13

        C.    The MDHHS Order Does Not Violate The Equal Protection Clause ....................................................................................... 13

    III.    Michigan Law Claims ............................................................................... 13

# **INDEX OF AUTHORITIES**

**Cases:**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 7

*Barsett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ............................ 7

*Bell Atlantic v. Trombly*, 550 U.S. 244 (2007) .................................................................... 7

*Calvary Chapel Dayton Valley v. Sisolak*, 140 S.Ct. 2603 (2020) ..................................... 1

*Commonwealth of Ky. v. Beshear*, --- F.3d ---, 2020 WL 7017858 (6th Cir. Nov. 29, 2020) ........................................................................................................................ 9

*Danville Christian Academy, Inc., v. Beshear*, 981 F.3d 505 (6th Cir. 2020) ................. 8-9

*Danville Christian Academy, Inc. v. Beshear,* No. 20A96, 2020 WL 7395433 (U.S. Dec. 17, 2020) ................................................................................................... 8, 12

*Howell v. Sanders*, 668 F.3d 344 (6th Cir. 2014) ........................................................... 4-5

*In re Omnicare, Inc Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014) ........................................... 7

*Kissinger v. Bd. of Trs. of Ohio State Univ.*, 5 F.3d 177 (6th Cir. 1993) ........................ 11

*Monclova v. Toledo – Lucas County Health Department*, Case No. 3:20-cv-2720, 2020 WL 7334743 (Dec. 14, 2020) ................................................................... 9-10

*Pleasant View Baptist Church v. Beshear*, No. 20-6399, 2020 WL7658397 (6th Cir. Dec. 21, 2020) .......................................................................................................... 12

*Prater v. City of Burnside, Ky.*, 289 F.3d 417 (6th Cir. 2002) ......................................... 12

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 2020 WL 6948354 (Nov. 25, 2020) (per curiam) .................................................................................... 9

*Watchtower Bible & Tract Soc. of New York, Inc. v. Vill. of Stratton, Ohio*, 240 F.3d 553 (6th Cir. 2001), rev'd on other grounds, 536 U.S. 150 (2002) ...................... 12

**Statutes:**

MCL 333.2465 .................................................................................................................... 5

MCL 333.2465(2) ............................................................................................................... 5

**Court Rules:**

F.R.Civ.P. 12(b)(6) ................................................................................................. 7

## INTRODUCTION

Soon after Defendants Linda S. Vail and Carol A. Siemon filed their Motion to Dismiss, Plaintiffs filed their First Amended Complaint (ECF 21, PageID.636). In the First Amended Complaint, Plaintiffs removed all reference to the Local Emergency Order, along with all requests for monetary damages as to Defendant Health Officer Vail. Plaintiffs clarified in Count Four of their First Amended Complaint that they are claiming a violation of substantive due process rights (in their original Complaint they alleged violation of due process rights, without specifying substantive or procedural violations). Additionally, in Count Four Plaintiffs removed all reference to violation of the individual Plaintiffs' privacy rights.  Finally, Plaintiffs abandoned their claims for violations of their rights of free speech and freedom to associate. Defendants Vail and Siemon do not address the abandoned claims in this Reply.

Plaintiffs also appear to have narrowed the relief they are seeking and currently request only relief from the MDHHS Orders that require elementary students to wear masks while seated at their desks and while socially distanced. It appears that Plaintiffs have relinquished their original goal that the entire MDHHS Order be declared invalid.

## CHILDREN AND COVID-19

Plaintiffs continue to ignore the fact that science supports the wearing official masks as a means to prevent spread of COVID-19 and as a means to protect against the contracting of COVID-19. (ECF 16-2, PageID.537-538.) Interestingly, to support their position that the mask requirement is an unreasonable infringement on their constitutional rights, Plaintiffs cite to a quote from Justice Alito in *Calvary Chapel Dayton Valley v. Sisolak*, 140 S.Ct. 2603, 2605 (2020).  In that case Justice Alito stated that "as more

1

medical and scientific evidence becomes available, and as States have time to craft policies in light of that evidence, courts should expect policies that more carefully account for constitutional rights." Contrary to Plaintiffs' arguments, the mask mandate complies with the expectation set forth by Justice Alito.  The wearing of masks is itself a narrowly tailored means to provide protection from COVID-19 while permitting in person educational instruction.

In responding to Defendants' Motions to Dismiss, Plaintiffs continue to minimize the impact of COVID-19 on children. Despite Plaintiffs' unsupported arguments to the contrary, COVID-19 poses risks to all persons including children. The number and rate of diagnosed cases in children in the United States have been steadily increasing since March 2020.  During the period from March 1–September 19, 2020, a total of 277,285 laboratory-confirmed cases of COVID-19 in school-aged children was reported in the United States, including 101,503 (37%) in children aged 5–11 years.

https://www.cdc.gov/mmwr/volumes/69/wr/mm6939e2.htm?s_cid=mm6939e2_w

> "The true incidence of SARS-CoV-2 infection in children is not known due to lack of widespread testing and the prioritization of testing for adults and those with severe illness.  Recent evidence suggests that compared to adults, children likely have similar viral loads in their nasopharynx,7 similar secondary infections rates, and can spread the virus to others."
> https://www.cdc.gov/coronavirus/2019-ncov/hcp/pediatric-hcp.html

In fact, due to community mitigation measures and school closures, transmission of SARS-CoV-2 to and among children may have been reduced in the United States during the early stages of the pandemic in the Spring and early Summer of 2020. "This may explain the low incidence in children compared with adults." *Id.*

Plaintiffs fail to consider the fact that the reported infection rate in children may have been lowered as a result of the mitigation steps that have been taken. Plaintiffs also

2

ignore the fact that even if children do not experience the same severity of symptoms as adults diagnosed with the virus, they can still spread the virus.

Plaintiffs, instead, remain focused on the low death rate among children diagnosed with COVID-19 to support their arguments that masks are unnecessary. Plaintiffs refuse to consider that while children infected with SARS-CoV-2 are less likely to develop severe illness compared with adults,

> "children are still at risk of developing severe illness and complications from COVID-19. Weekly COVID-19 hospitalization surveillance data show that the rate of hospitalization among children is low compared with that of adults, but hospitalization rates among children are increasing. About 1 in 3 children hospitalized with COVID-19 in the United States were admitted to the intensive care unit, similar to the rate among adults." *Id*.

Plaintiffs resist any acknowledgement that the scientific understanding of COVID-19 is evolving and as more knowledge is acquired regarding the virus and the transmission of the virus, methods and means for preventing the spread of the virus must change as well. At the time of the filing of this Reply Brief, a new and more virulent strain of COVID-19 has been identified in the United States. Early indicators show that this strain is even more infectious for children and illustrates why the use of masks is essential in schools for children of all ages. https://www.contemporarypediatrics.com/view/is-the-new-strain-of-covid-19-more-infectious-for-children

Plaintiffs' assertions that COVID-19 poses no risk to children in kindergarten through fifth grade are without merit. The use of masks is a scientifically supported means to prevent the spread of COVID-19.

3

## PLAINTIFFS' FAILURE TO STATE PLAUSIBLE CLAIMS
## SPECIFICALLY AS TO DEFENDANTS VAIL AND SIEMON

Plaintiffs filed one Response Brief in Answer to the two separate Motions to Dismiss filed by the two separate Defendants in this case and generally do not make distinctions between the State of Michigan Defendants and the Ingham County Defendants. Plaintiffs continue to marry all Defendants and wholly ignore the fact that there are no local orders in effect issued by Defendant Vail, that Defendant Vail has not taken enforcement action against Plaintiffs pursuant to the MDHHS Orders, and that Defendant Siemon has neither received complaints nor prosecuted Plaintiffs for any violations of the MDHHS Orders.

**I.     Immunity.**

According to Plaintiffs, Defendants Siemon and Vail are named as parties to this case solely because, as the statutory Ingham County Health Officer and the County Prosecutor, they have authority to enforce the emergency MDHHS Orders. Plaintiffs devoted minimal attention to the specific arguments raised by Siemon and Vail in their Motion to Dismiss.

First, Plaintiffs respond, in a footnote on PageID.738, that Defendants Vail and Siemon have a connection with the enforcement of the Order, and therefore are not entitled to immunity. Specifically, as to the absolute prosecutorial immunity argument raised by Defendant Siemon, Plaintiffs respond that the prosecutorial decision to charge a citizen is a discretionary function not protected by absolute immunity and cite to *Howell v. Sanders*, 668 F.3d 344, 350 (6th Cir. 2014) for support. Plaintiffs misstate or misunderstand the test for absolute prosecutorial immunity, and it is unclear why Plaintiffs would rely on *Howell*, *supra* as this case is contrary to their position. A prosecutor is

4

absolutely immune for actions that are intimately associated with the judicial phase of the criminal process. *Id.* The decision to authorize a warrant is intimately associated with the judicial phase of the criminal process. *Id.* at 351. Defendant Siemon would be immune from liability for any decision to authorize a warrant pursuant to the MDHHS Order at issue here.

Plaintiffs also argue that Defendant Vail is not entitled to 11th Amendment Immunity. Defendant Vail did not argue that she is entitled to absolute immunity. Instead, Defendant Vail argues that she is entitled to immunity pursuant to MCL 333.2465. This defense was asserted because Plaintiffs were initially seeking monetary damages as to Defendant Vail, even though Defendant Vail has taken no enforcement action against Plaintiffs. It appears that Plaintiffs have abandoned their unsupported claim for damages as to Vail in the First Amended Complaint. Plaintiffs do not address Defendant Vail's defense of immunity pursuant to MCL 333.2465(2).

## II.     Standing As To Claims Against Defendants Vail And Siemon.

In response to Defendants Vail and Siemon's arguments for dismissal based on of standing, Plaintiffs respond that "Defendant Nessel, the Michigan Attorney General, has made clear that she will use her office to enforce the Order and she has convened a COVID-19 task force to do so. Defendant Siemon, the Ingham County Prosecuting Attorney, is the official responsible for prosecuting violations of the Order in the County where Resurrection School is located and where Plaintiffs' reside." (PageID.741.) There are very obvious problems with Plaintiffs' argument. Defendant Siemon is not an employee of the Michigan Attorney General's Office and as such, is not subject to orders or instruction regarding which cases to prosecute from the Michigan Attorney General.

5

Siemon does not serve on Defendant Nessel's task force. Instead, Defendant Siemon is the duly elected County Prosecuting Attorney for Ingham County. She has unfettered discretion to determine whether criminal charges should be instituted by her Office. She has not authorized criminal charges against Plaintiffs, or against anyone else, for violation of the subject MDHHS Orders.  For her Office, the "focus has been on education about the orders and compliance, not charging and punishment." (See Exhibit A, Affidavit of Carol Siemon.)

Plaintiffs do not include Defendant Vail in this response and do not explain how they have standing as to the claims asserted against Defendant Vail. Defendant Vail has not initiated enforcement action against Plaintiffs. (PageID.541.)

Plaintiffs lack standing as to all claims asserted against Defendants Vail and Siemon as these claims are not ripe.

**PLAINTIFFS CANNOT ESTABLISH A VIOLATION OF THEIR CONSTITUTIONAL RIGHTS BY DEFENDANTS VAIL AND SIEMON**

Defendants Vail and Siemon incorporate by reference all arguments raised in ECF 19 and 20 and will not restate those arguments herein.[1]  Instead, Defendants will use this Reply to respond to the most egregious arguments raised by Plaintiffs and to highlight new caselaw pertaining to COVID-19 restrictions and constitutional rights violation allegations.

---

[1] Plaintiffs assert that some of the hyperlinks cited in the Linda Vail Affidavit did not work (ECF 16-2, PageID.536-542).  Counsel for Defendants Vail and Siemon tested all hyperlinks while preparing the Brief and found them all to be readily accessible.

### I. Plaintiffs' Claims For Relief Are Not Plausible On Their Face And Should Be Dismissed Pursuant To F.R.Civ.P. 12(b)(6).

Plaintiffs go to great lengths to distinguish this case from *Bell Atlantic v. Trombly*, 550 U.S. 244 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the two cases cited by Defendants Vail and Siemon to establish the Standard of Review for Rule 12(b)(6) motions. Defendants agree to the extent that *Iqbal* and Trombly, are not factually similar to this case. However, these cases set forth the proper standard for reviewing a motion to dismiss pursuant to Rule 12(b)(6). Specifically, in order to survive a Motion to Dismiss, a complaint must set forth sufficient factual allegations that make the asserted claims plausible on their face. *Trombly,* 550 U.S. at 570.

Plaintiffs fail to meet this standard for the reasons set forth in Defendants' Brief in Support of their Motion to Dismiss and as further discussed below.

Plaintiffs also take issue with the fact that Defendants Vail and Siemon attached exhibits to their Motion to Dismiss. Rule 12(b)(6) generally allows a court to consider exhibits relating to matters that are central to the Complaint. *Barsett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Additionally, this Court has recognized that "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can consider them in resolving the Rule 12(b)(6) motion without converting the Motion to Dismiss into a Rule 56 motion for summary judgment." *In re Omnicare, Inc Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). The exhibits attached to Defendants Vail and Siemon's Brief in Support of Motion to Dismiss were the then current MDHHS Emergency Order and an Affidavit from Defendant Vail which provided scientific information regarding

7

COVID-19 to provide context as to the COVID-19 pandemic. This included basic information regarding the nature of COVID-19, how it spreads, and prevention measures.

## II. Plaintiffs' First Amended Complaint Does Not Allege Plausible Constitutional Violations.

### A. Defendants' Order Does Not Violate Plaintiffs' Free Exercise Of Religion.

#### 1. The MDHHS Order Being Generally Applicable Is Not Required To Meet Strict Scrutiny.

Plaintiffs claim that the subject Order expresses animus toward religious schools and that the Order is not generally applicable and as such, must meet the requirements of strict scrutiny. (PageID.726 and 727.) In fact, the Order applies to <u>all</u> schools equally, including public schools, private schools, religious schools and secular schools. As such, it cannot be seriously argued that it is not generally applicable and therefore the highest level of scrutiny does not apply.

Recently, the 6th Circuit Court of Appeals considered this issue in the case of *Danville Christian Academy, Inc., v. Beshear*, 981 F.3d 505 (6th Cir. 2020).[2]

> "Executive Order 2020-969 applies to all public and private elementary and secondary schools in the Commonwealth, religious or otherwise; it is therefore neutral and of general applicability and need not be justified by a compelling governmental interest." *Id.* at 509.

> "We assume that *Danville Christian Academy* is motivated by a 'sincerely held religious belief' regarding in-person schooling, but that is not determinative where there is a neutral rule of general applicability." *Id.*

---

[2] The plaintiffs in *Danville Christian Academy* appealed the 6th Circuit Order granting a stay of the injunction issued by the District Court to the United States Supreme Court. The United States Supreme Court denied the application without prejudice without reaching any of the merits of the case. *Danville Christian Academy, Inc. v. Beshear,* No. 20A96, 2020 WL 7395433 (U.S. Dec. 17, 2020).

8

Further, the *Danville Christian Academy* court noted that the U.S. Supreme Court ruling in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 2020 WL 6948354 (Nov. 25, 2020) (per curiam) does not compel a different result. In *Roman Catholic Diocese of Brooklyn*, the challenged COVID-19 Order restricted attendance at religious services. *Id.*, at 141 S.Ct. 63, 2020 WL 6948354. The order at issue in that case, applying specifically to houses of worship, is distinguishable from an order that applies to all school equally. Moreover, the order at issue in *Roman Catholic Diocese* treated schools, factories, liquor stores, and bicycle repair shops, to name only a few, "less harshly" than houses of worship. *Id.,* 141 S.Ct. 63, 2020 WL 6948354 at *2.   However, "the contours of the order at issue here also in no way correlate to religion, and cannot be plausibly read to contain even a hint of hostility towards religion". *Danville Christian Academy*, 981 F.3d at 509.  The same is true for the MDHHS Order at issue in this case. The MDHHS Order applies equally to all schools without a hint of hostility towards religion.

The Court in *Monclova v. Toledo – Lucas County Health Department*, Case No. 3:20-cv-2720, 2020 WL 7334743 (Dec. 14, 2020) examined an Order issued by the Lucas County Health Department which ordered the closure of only certain schools. The District Court in that case found the *Danville Christian Academy* case to be persuasive. "The TLCHD Resolution expressly applies to '[a]ll Lucas County Schools, including public, private, charter[,] and parochial schools....' (Doc. No. 1-3 at 3). The TLCHD's reasons for suspending in-person instruction apply precisely the same to all schools in Lucas County. *Commonwealth of Ky. v. Beshear*, --- F.3d ---, 2020 WL 7017858, at *3 (6th Cir. Nov. 29, 2020). Therefore, strict scrutiny does not apply." *Id.*

9

As with this case, the Plaintiff in *Monclova*, argued that "the educational courses they offer to their students are inextricably intertwined with their religious beliefs" and "to prohibit Plaintiffs from holding classes in the manner in which they believe is most consistent with the tenets of their faith is to interfere with the free exercise of their faith," The court responded as follows:

> The Sixth Circuit recently addressed this line of argument while considering a substantially-similar school closure order issued by the Governor of Kentucky, making clear that a plaintiff's " 'sincerely held religious belief' regarding in-person schooling...is not determinative where there is a neutral rule of general applicability, as there is here...." *Commonwealth v. Beshear*, 2020 WL 7017858, at *2 (citing *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872 (1990)).
>
> While, as Plaintiffs note, TLCHD has not ordered gyms, tanning salons, or casinos to close, (Doc. No. 1 at 5-6), these are not the relevant "comparable secular activities." Instead, the comparable secular activities are educational classes offered by all other schools in Lucas County. These specific environments have substantially similar groupings and movements of individuals. Emmanuel Christian, St. John's, and Monclova Christian are prohibited from offering in-person instruction to grades 9-12 (or grades 7-12) along with all other Lucas County schools "because the reasons for suspending in-person instruction apply precisely the same to them." *Commonwealth v. Beshear*, 2020 WL 7017858, at *3. The TLCHD's decision to address schools specifically and not a larger universe of public and social activities "in no way correlate[s] to religion." *Id.*

In this case, Plaintiffs point out that the MDHHS Order contains various exceptions for the requirement to wear masks, but both the rules and the exceptions apply equally to all schools and in no way correlate to religion. As such, the Order in this case is generally applicable and strict scrutiny does not apply. Clearly, a mask requirement is rationally related to the goal of preventing the spread of COVID-19.

### 2. Strict Scrutiny Does Not Apply To Any Alleged "Hybrid Claim".

Plaintiffs also argue strict scrutiny applies to a neutral and generally applicable law where that law burdens religion and another constitutionally protected right, such as the

10

right of parents to direct the education of their children. Plaintiffs assert that they have sufficiently pleaded this hybrid claim. This argument is not supported by 6th Circuit caselaw.

The Sixth Circuit Court of Appeals has expressed skepticism regarding a "hybrid-rights" doctrine finding such an outcome to be completely illogical. In fact, this doctrine was rejected in *Kissinger v. Bd. of Trs. of Ohio State Univ.*, 5 F.3d 177, 180 (6th Cir. 1993). In *Kissinger*, a veterinary school student, citing her religious beliefs, objected to the school's required "course for the study of veterinary surgical techniques in which, among other learning activities, healthy animals [we]re anesthetized, operated upon, and then killed." *Id.* at 178. The school refused the student's request to modify its curriculum in order to accommodate her religious beliefs. *Id.* The student filed suit against the school alleging violations of her constitutional rights to freedom of speech, freedom of association, free exercise of religion, due process, and equal protection. *Id.* The Court held that the student's free-exercise claim failed because the school's curriculum was generally applicable to all veterinary students and did not target any religious practice or belief. *Id.* The Court also flatly rejected Kissinger's claims that strict scrutiny must be applied to the free-exercise analysis because that claim was coupled with other alleged constitutional violations. In doing so, the Court held:

> We do not see how a state regulation would violate the Free Exercise Clause if it implicates other constitutional rights but would not violate the [F]ree Exercise Clause if it did not implicate other constitutional rights. In the language relied upon by Kissinger, the Smith court did not explain how the standards under the Free Exercise Clause would change depending on whether other constitutional rights are implicated. In addition, although this court in [ Vandiver v. Hardin County Bd. of Educ., 925 F.2d 927, 932–33 (6th Cir. 1991)], did discuss "hybrid" claims, we did not hold that the legal standard under the Free Exercise Clause depends on whether a free-exercise claim is coupled with other constitutional rights. Such an outcome

11

is completely illogical; therefore, at least until the Supreme Court holds that legal standards under the Free Exercise Clause vary depending on whether other constitutional rights are implicated, we will not use a stricter legal standard than that used in Smith to evaluate generally applicable, exceptionless state regulations under the Free Exercise Clause. *Id.* at 180.

The hybrid theory was also rejected in *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 430 (6th Cir. 2002) (rejecting church's claim that city violated its "hybrid rights" that combined a free exercise claim, a free speech claim, a freedom of assembly claim, and a Fifth Amendment takings claim); *Watchtower Bible & Tract Soc. of New York, Inc. v. Vill. of Stratton, Ohio*, 240 F.3d 553, 562 (6th Cir. 2001), rev'd on other grounds, 536 U.S. 150 (2002) ("Based in part upon the lack of an explanation from the Court, we declined to alter the standard of scrutiny for laws affecting hybrid rights until the Supreme Court provided guidance. The Court has yet to provide such guidance, and therefore, we adhere to our decision in Kissinger and continue to decline to alter the standard of scrutiny."). The U.S. Supreme Court has not established a test for generally applicable laws that involve "hybrid rights," and no other binding authority mandates such a requirement.

Sixth Circuit Judge Bernice Boule Donald recently examined an assertion of hybrid rights in a concurrence in the case *Pleasant View Baptist Church v. Beshear*, No. 20-6399, 2020 WL7658397 (6th Cir. Dec. 21, 2020).

> "The Constitution is not a mixing bowl for rights that when considered in the aggregate are entitled to a higher level of scrutiny compared to when those exact same rights are viewed in isolation. Accordingly, should Christian School Plaintiffs—or any other litigant—attempt to bring a "hybrid-rights" claim, Circuit precedent would appear to compel that they present arguments as to why their claims differ from those we rejected in *Kissinger* or why *Smith's* core holding—as outlined above—is no longer controlling law."

Plaintiffs cite to *Danville Christian Academy v. Beshear,* No. 20A96, 2020 WL 7395433 (U.S. Dec. 17, 2020), to support their hybrid rights claim, but the application was

12

denied in that case so the Court did not reach the merits of the case. *Id.* Defendants are not required to meet the heightened strict scrutiny standard on a hybrid theory. Again, the use of masks meets the standard rational basis test of controlling the spread of COVID-19.

### B. The MDHHS Order Does Not Violate Substantive Due Process.

The Order in question is not arbitrary or irrational as alleged by Plaintiffs. It is well accepted by reputable scientific and medical professionals that masks are an effective means to prevent the spread of COVID-19. Plaintiffs' position that masks are not a useful tool when used in an elementary school setting to prevent the spread of the virus and to keep schools open for in person instruction defies all logic. Defendants will not reiterate the scientific support for the use of masks in this section as it has been addressed above and again in Defendants Vail and Siemon's Brief in Support of their Motion to Dismiss.

### C. The MDHHS Order Does Not Violate The Equal Protection Clause.

The MDHHS Order does not violate the Equal Protection Clause as it treats <u>all</u> schools the same. Plaintiffs are similarly situated with other schools, students and parents of students. Plaintiffs do not address this fact in their Response, and instead continue to cite to exceptions in the mask requirements that either do not impact schools at all or, alternatively, impact all schools equally. Plaintiffs have not pleaded a plausible claim for violation of the Equal Protection Clause.

### III. Michigan Law Claims.

Defendants Vail and Siemon rely on the arguments set forth in their Brief in Support of their Motion to Dismiss with regard to Plaintiffs' Michigan law claims. Further, as this Court determined in ECF 24, PageID.698, "These questions of state law have not yet

13

been considered by the Michigan courts. Thus, rather than interpret a novel question of state law for the first time—particularly a question of state law that might affect every citizen over the age of five in the state of Michigan— this Court declines to address the state lawquestions for the purposes of this motion."  Defendants Vail and Siemon request that this Court follow this same logic in deciding this Motion and decline to resolve the state law claims for the same reasons.

                                                    Respectfully Submitted,

                                                    COHL, STOKER & TOSKEY, P.C.

Dated: January 6, 2021                  By: /s/ Bonnie G. Toskey
                                                    Bonnie G. Toskey (P30601)
                                                    Sarah K. Osburn (P55539)
                                                    Attorneys for Ingham County Defendants
                                                    Linda Vail and Carol Siemon
                                                    601 N. Capitol Ave.
                                                    Lansing, MI 48933
                                                    (517) 372-9000

## **CERTIFICATE OF COMPLIANCE**

Bonnie G. Toskey (P30601) certifies, under L.Civ.R. 7.2(b)(1), that this Brief contains 3,996 words, inclusive of headings, footnotes, citations and quotations, as counted by Microsoft Word 365, the word processing software used to create this Brief.

Date:  January 6, 2021                           By: /s/ Bonnie G. Toskey
                                                                   Bonnie G. Toskey  (P30601)

N:\Client\Ingham\Health_Dept\Litigation\Resurrection School\Pleadings\Reply Brief - Mtn to Dismiss - v1.docx